UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ) <br> DEBORAH SHELDON, as EXECUTRIX ) <br> OF THE ESTATE OF RELATOR TROY ) <br> SHELDON, ) <br> ) <br> Plaintiff, ) <br> ) <br> -v- ) <br> ) <br> ALLERGAN SALES, LLC ) <br> ) <br> Defendant ) <br> ) | Case No. 1:14-cv-02535-ELH <br><br> (Judge Ellen L. Hollander) <br><br> **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REQUEST A STATUS CONFERENCE AND A SCHEDULING ORDER TO COMMENCE DISCOVERY** |

This case was recently remanded from the United States Supreme Court and the Fourth Circuit Court of Appeals [Dkt. 99, 100 and 101]. Ms. Sheldon now seeks a status conference and a scheduling order to commence discovery in this Court.

Mr. Troy Sheldon filed this complaint under the False Claims Act ("FCA") in 2014 [Dkt. 1 (Complaint); Dkt. 16 (Amended Complaint)]. Mr. Sheldon's wife, Deb Sheldon, as the Executrix of the Estate of Troy Sheldon, was substituted as plaintiff when Mr. Sheldon died [Dkt. 31]. After the case was unsealed, the Court granted Defendant's Rule 12(b)(6) motion to dismiss and entered judgment for Defendant [Dkt. 86, 87] before discovery was allowed to proceed.

Ms. Sheldon appealed the Court's opinion and judgment. A Panel of the Fourth Circuit subsequently affirmed the district court's decision in a 2-1 decision. *United States ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340 (4th Cir. 2022). Ms. Sheldon petitioned the Fourth Circuit for *en banc* review, and the Fourth Circuit granted a rehearing *en banc*. After oral argument, the *en banc* court did not come to consensus on any issue, with an equal number of votes to reverse and affirm the district court's decision. As a result, "[o]n rehearing en *banc*, the panel opinions in *United States ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340 (4th Cir. 2022) are vacated, and

the judgment of the district court is affirmed by an equally divided court. *United States ex rel. Sheldon v. Allergan Sales, LLC*, 49 F. 4th 873 (*en banc*).

Ms. Sheldon filed a petition for a writ of certiorari with the United States Supreme Court requesting that the Supreme Court reverse this Court's Rule 12(b)(6) opinion and judgment. On June 30, 2023, the Supreme Court granted Ms. Sheldon's petition for writ of certiorari, vacated this Court's opinion and judgment, and remanded this case for further consideration in light of the Supreme Court's *Schutte* decision [Dkt. 99].[1]

On August 2, 2023, the Fourth Circuit remanded the case to this Court for further consideration in light of the Supreme Court's decision in *Schutte* – with no further action or briefing in the Fourth Circuit [Dkt. 100, 101].

The Supreme Court in *Schutte* made clear that in a False Claims Act case, the focus is on the defendant's subjective intent at the time the claims were made, not what an objectively reasonable person may or may not believe or interpret at a later time.

> Based on the FCA's statutory test and its common-law roots, the answer to the question presented is straightforward; **The FCA's scienter element refers to respondents' knowledge and subjective beliefs – not to what an objective reasonable person may have known or believed.  And, even though the phrase "usual and customary" may be ambiguous on its face, such facial ambiguity alone is not sufficient to preclude a finding that respondents knew their claims were false.**

\* \* \*

> **Under the FCA, petitioner may establish scienter by showing that respondents (1) actually knew that their reported prices were not their "usual and customary" prices when they reported those prices; (2) were aware of a substantial risk that their higher, retail prices were not their "usual and customary" prices and intentionally avoided learning whether their reports**

---

[1] On June 1, 2023, the Supreme Court decided *United States ex rel. Schutte v. Supervalu, Inc.*, 598 U.S. ___, 143 S. Ct. 1391 (2023).

> **were accurate, or (3) were aware of such a substantial and unjustifiable risk but submitted claims anyway. §3729.(b)(1)(A).** If petitioners can make that showing, then it does not matter whether some other, objectively reasonable interpretation of "usual and customary" would point to respondents' higher prices. For scienter, if it is enough if respondents believed that their claims were not accurate.

*Schutte*, 598 U.S. at ___, 143 S. Ct. at 1399, 1404 (emphasis added). A FCA plaintiff can prove scienter even if the underlying statute is ambiguous or subject to more than one interpretation – the focus of the inquiry is the defendant's knowledge and subjective intent. The Supreme Court's *Schutte* decision makes clear that scienter is a factual inquiry and a factual showing.

In this case, Ms. Sheldon alleges in her Complaint that Defendant violated the False Claims Act by failing to properly report its Best Price to the federal government on multiple drug units for extended periods of time, overcharging Medicare and Medicaid for over $680 million. Ms. Sheldon alleges that Defendant failed to include all rebates and discounts when it reported the drug unit's Best Price. Similar to the *Schutte* case, Ms. Sheldon alleges that Defendant had scienter and knew that the claims were false at the time the claims were made [ECF 8 at pp. 1-10 and ¶¶51, 54, 56, 64, 72 and 119-20; *see also* ¶¶29-71 and ¶¶72-118]. Similar to the *Schutte* case, even if the Best Price statute is ambiguous (and Plaintiff does not agree that the statute is ambiguous), "such facial ambiguity alone is not sufficient to preclude a finding that respondents knew their claims were false." *Id.* at 1399. Ms. Sheldon is entitled to conduct fact discovery to further support her allegations to determine what Defendant knew and believed – to determine Defendant's knowledge and subjective beliefs at the time the claims were made (and to conduct discovery on other aspects of the case in addition to scienter). Defendant may file a motion for summary judgment at the conclusion of discovery on the issue of scienter and on other grounds, but Sheldon should be allowed to pursue discovery on her claims at this time.

For the foregoing reasons, Ms. Sheldon respectfully requests that the Court schedule a status conference and issue a scheduling order allowing the parties to commence discovery. Ms. Sheldon believes that fact discovery could be completed in 10-12 months with 3 months of expert discovery to follow.[2]

---

[2] Ms. Sheldon also brings to the Court's attention that CMS announced a proposed rule on May 26, 2023 that explicitly reaffirmed its interpretation of the Best Price statute and explicitly addressed this litigation.

> **I.    D. Proposal To Account for Stacking When Determining Best Price—(§ 447.505)**
>
> Section 1927(c)(1)(C) of the Act defines the term "best price" to mean with respect to a single source drug or innovator multiple source drug of a manufacturer (including the lowest price available to any entity for any such drug of a manufacturer that is sold under a new drug application approved under section 505(c) of the Federal Food, Drug, and Cosmetic Act), the lowest price available from the manufacturer during the rebate period to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity, or governmental entity within the United States, subject to certain exceptions and special rules. The implementing regulations for the determination of best price are at § 447.505.
>
> * * *
>
> **We addressed the question regarding stacking in the response to comments in the COD final rule, specifying that if multiple price concessions are provided to two entities for the same drug transaction, all discounts related to that transaction which adjust the price available from the manufacturer should be considered when determining best price….**
>
> However, in the case *United States ex rel. Sheldon* v. *Allergan Sales, LLC.,* a relator alleged that a drug manufacturer failed to aggregate discounts provided to separate customers for purposes of determining best price, and the manufacturer argued that the stacking requirement was not sufficiently clear. The district court granted Allergan's motion to dismiss, ruling that relator failed to plausibly allege either falsity or knowledge because Allergan's interpretation "is objectively reasonable" and CMS' rule had not specifically warned against it. On appeal, a panel of the United States Court of Appeals for the Fourth Circuit stated that, in that case, the drug manufacturer had not been "warned . . . by the authoritative guidance from CMS" and that CMS had "failed to clarify" the stacking issue. The Government filed an amicus brief supporting the relator's petition for rehearing en banc, which the Fourth Circuit granted. Following argument, the Fourth Circuit issued its

decision with no substantive opinion that vacated the prior panel decision and affirmed the district court by an equally divided court.

As noted, section 1927(c)(1)(C) of the Act defines the term "best price" to mean with respect to a single source drug or innovator multiple source drug of a manufacturer (including the lowest price available to any entity for any such drug of a manufacturer that is sold under a new drug application approved under section 505(c) of the Federal Food, Drug, and Cosmetic Act), the lowest price available from the manufacturer during the rebate period to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity, or governmental entity within the United States. We interpreted this section expansively as the statute refers to a manufacturer's lowest price "available" "to any" entity on this statutory list. That is, if a manufacturer provides a discount to a wholesaler, then a rebate to the provider who dispensed the drug unit, and then another rebate to the insurer who covered that drug unit, CMS has concluded that "best price" must include (or "stack") all the discounts and rebates associated with the final price, even if the entity did not buy the drug directly from the manufacturer. By stacking, best price reflects the lowest realized price at which the manufacturer made that drug unit available. We also note that manufacturers are required to take rebates into account for multiple entities when calculating AMP, and for logical reasons, best price should do so as well, since including them in AMP and not accounting for them in best price could result in AMP being lower than best price.

**Therefore, to remove any potential doubt prospectively, we are proposing to revise § 447.505(d)(3) to add to the existing regulatory statement that the manufacturer must adjust the best price for a covered outpatient drug for a rebate period if cumulative discounts, rebates or other arrangements to best price eligible entities subsequently adjust the price available from the manufacturer for the drug. We are adding the clarifying statement that cumulative discounts, rebates or other arrangements must be stacked to generate a final price realized by the manufacturer for a covered outpatient drug, including discounts, rebates or other arrangements provided to different best price eligible entities.**

https://www.federalregister.gov/documents/2023/05/26/2023-10934/medicaid-program-misclassification-of-drugs-program-administration-and-program-integrity-updates (emphasis added).

5

August 10, 2023                                   Respectfully submitted,

*/s/ Joel D. Hesch*
Joel D. Hesch, Esq. (Md. Bar 1988; D. Md. 06350)
THE HESCH FIRM, LLC
3540 Ridgecroft Dr.
Lynchburg, VA 24503
Phone: (434) 229-8677
Email: joel@howtoreportfraud.com

Joseph M. Callow, Jr. (Ohio Bar No. 0061814)
Gregory M. Utter (Ohio Bar No. 0032528)
CALLOW & UTTER LLC
8044 Montgomery Road, Suite 170
Cincinnati, Ohio 45236
Phone: (513) 378-0141
jcallow@callowandutter.com
gmutter@callowandutter.com

*Attorneys for Deborah Sheldon, as Executrix of the Estate of Relator Troy Sheldon*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed using the Court's ECF system on this August 10, 2023. Parties will receive notice through the ECF system.

*/s/ Joel D. Hesch*
Joel D. Hesch

6