**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES *ex rel.* DEBORAH SHELDON, | ) ) ) | |
| Plaintiff-Relator, | ) ) | |
| vs. | ) ) | Case No. 1:14-cv-02535-ELH |
| FOREST LABORATORIES, LLC, *et al.*, | ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 3

I.      Statutory and Regulatory Framework ................................................................. 3

II.     Relator's Allegations ........................................................................................... 5

III.    Procedural History ............................................................................................... 6

ARGUMENT ................................................................................................................... 8

I.      Legal Standards ................................................................................................... 8

II.     The Amended Complaint Should Be Dismissed Under Rule 12(b)(6) .............. 8

        A.      Relator Has Not Plausibly Alleged Falsity ............................................ 9

                1.      Forest Was Not Required to Aggregate Discounts Separately Provided .... 9

                2.      In Any Event, Forest's Patently Reasonable Reading Cannot Be False ... 21

        B.      Relator Has Not Plausibly Alleged That Forest Acted With the Requisite
                Scienter ................................................................................................ 24

III.    The Amended Complaint Also Should Be Dismissed Under Rule 9(b) Because It Fails
        to Plead Fraud With Particularity ...................................................................... 27

IV.     Relator's State FCA Claims Also Should Be Dismissed .................................. 30

CONCLUSION .............................................................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................................8, 26

*Astra USA, Inc. v. Santa Clara Cnty., Cal.,*
    563 U.S. 110 (2011)..................................................................................3, 22, 28

*Auer v. Robbins,*
    519 U.S. 452 (1997)...........................................................................................20

*BedRoc Ltd., LLC v. U.S.,*
    541 U.S. 176 (2004)...........................................................................................13

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................................8

*Bowen v. Georgetown Univ. Hosp.,*
    488 U.S. 204 (1988)...........................................................................................20

*Broughman v. Carver,*
    624 F.3d 670 (4th Cir. 2010) ...........................................................................11

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
    467 U.S. 837 (1984).....................................................................................15, 20

*Christopher v. SmithKline Beecham Corp.,*
    567 U.S. 142 (2012)...........................................................................................20

*Epic Sys. Corp. v. Lewis,*
    138 S. Ct. 1612 (2018).................................................................................16, 19

*Gallina v. Wilkinson,*
    988 F.3d 137 (2d Cir. 2021)..............................................................................18

*Gibbons v. Malone,*
    703 F.3d 595 (2d Cir. 2013)..............................................................................12

*Gundy v. United States,*
    139 S. Ct. 2116 (2019)......................................................................................10

*Harrison v. Westinghouse Savannah River Co.,*
    176 F.3d 776 (4th Cir. 1999) ...........................................................................27

*Hillman v. I.R.S.*,
   263 F.3d 338 (4th Cir. 2001) ........................................................................................10

*Hunt v. Branch Banking & Tr. Co.*,
   480 F. App'x 730 (4th Cir. 2012) .................................................................................30

*I.N.S. v. Cardoza-Fonseca*,
   480 U.S. 421 (1987) .......................................................................................................13

*In re Constr. Supervision Servs., Inc.*,
   753 F.3d 124 (4th Cir. 2014) ........................................................................................11

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   538 F. Supp. 2d 367 (D. Mass. 2008) ...........................................................................28

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   No. 01-12257, 2004 WL 2387125 (D. Mass. Oct. 26, 2004) .................................28

*K.C. ex rel. Africa H. v. Shipman*,
   716 F.3d 107 (4th Cir. 2013) ........................................................................................22

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
   551 U.S. 644 (2007) .......................................................................................................10

*Pharm. Rsch. & Mfrs. of Am. v. Becerra*,
   No. 21-cv-1395, 2022 WL 1551924 (D.D.C. May 17, 2022) .................................13

*Pharm. Rsch. & Mfrs. of Am. v. Walsh*,
   538 U.S. 644 (2003) .........................................................................................................3

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ...........................................................................................................7

*Sandifer v. U.S. Steel Corp.*,
   571 U.S. 220 (2014) .......................................................................................................10

*Soliman v. Gonzales*,
   419 F.3d 276 (4th Cir. 2005) ........................................................................................12

*St. John LaCorte v. Merck & Co., Inc.*,
   No. 99-3807 (E.D. La. Aug. 26, 2003), *objections overruled*, 2004 WL
   1373276 (June 16, 2004).................................................................................................28

*United States v. AseraCare, Inc.*,
   938 F.3d 1278 (11th Cir. 2019) ...................................................................................21

*United States v. Byrd*,
   No. ELH-11-657, 2022 WL 1120064 (D. Md. Apr. 13, 2022).................................24

*United States v. Moriello*,
    980 F.3d 924 (4th Cir. 2020) ................................................................11

*United States v. Southland Mgmt. Corp.*,
    326 F.3d 669 (5th Cir. 2003) (en banc) ..................................................9

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
    579 U.S. 176 (2016)........................................................................21, 24

*U.S. ex rel. Aryai v. Skanska*,
    No. 09-cv-5456, 2019 WL 1258938 (S.D.N.Y. Mar. 19, 2019)............29

*U.S. ex rel. Becker v. Westinghouse Savannah River Co.*,
    305 F.3d 284 (4th Cir. 2002) ...............................................................26

*U.S. ex rel. Bogina v. Medline Indus., Inc.*,
    809 F.3d 365 (7th Cir. 2016) ...............................................................28

*U.S. ex rel. Complin v. N.C. Baptist Hosp.*,
    818 F. App'x 179 (4th Cir. 2020) .........................................................25

*U.S. ex rel. Complin v. N.C. Baptist Hosp.*,
    No. 09-cv-420, 2016 WL 7471311 (M.D.N.C. Dec. 28, 2016)............27

*U.S. ex rel. Drakeford v. Tuomey*,
    792 F.3d 364 (4th Cir. 2015) ...............................................................22

*U.S. ex rel. Druding v. Care Alts.*,
    952 F.3d 89 (3d Cir. 2020)...................................................................21

*U.S. ex rel. Grant v. United Airlines Inc.*,
    912 F.3d 190 (4th Cir. 2018) ...............................................................27

*U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*,
    816 F. App'x 892 (5th Cir. 2020) .........................................................26

*U.S. ex rel. Lamers v. City of Green Bay*,
    168 F.3d 1013 (7th Cir. 1999) .............................................................21

*U.S. ex rel. Moore v. Cardinal Fin. Co.*,
    No. 12-cv-1824, 2017 WL 1165952 (D. Md. Mar. 28, 2017) .................30

*U.S. ex rel. Morton v. A Plus Benefits, Inc.*,
    139 F. App'x 980 (10th Cir. 2005) .......................................................21

*U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*,
    707 F.3d 451 (4th Cir. 2013) ...........................................8, 27, 28, 29

*U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
   519 F. App'x 890 (5th Cir. 2013) ........................................................29

*U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*,
   612 F.3d 724 (4th Cir. 2010) ........................................................21, 24

*U.S. ex rel. Palmieri v. Alpharma, Inc.*,
   No. 10-1601, 2014 WL 1168953 (D. Md. Mar. 21, 2014) ....................28

*U.S. ex rel. Polansky v. Executive Health Resources, Inc.*,
   599 U.S. 419 (2023)........................................................................30

*U.S. ex rel. Proctor v. Safeway, Inc.*,
   No. 11-3406, 2016 WL 7017231 (C.D. Ill. Dec. 1, 2016)....................26

*U.S. ex rel. Rostholder v. Omnicare, Inc.*,
   745 F.3d 694 (4th Cir. 2014) ..............................................................8

*U.S. ex rel. Schutte v. SuperValu Inc.*,
   598 U.S. 739 (2023)................................................................ *passim*

*U.S. ex rel. Sheldon v. Allergan Sales, LLC*,
   24 F.4th 340 (4th Cir. 2022) .................................................... *passim*

*U.S. ex rel. Sheldon v. Allergan Sales, LLC*,
   49 F.4th 873 (4th Cir. 2022) (en banc) ..............................................7

*U.S. ex rel. Tessler v. City of New York*,
   712 F. App'x 27 (2d Cir. 2017) ........................................................29

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008) .................................................... *passim*

*U.S. ex rel. Keeler v. Esai, Inc.*,
   568 F. App'x 783 (11th Cir. 2014) ....................................................28

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001)........................................................................18

*Winter ex rel. U.S. v. Garden Reg'l Hosp. & Med. Ctr., Inc.*,
   953 F.3d 1108 (9th Cir. 2020) ..........................................................21

## Statutes

31 U.S.C. §§ 3729 *et seq.*..................................................................1

31 U.S.C. § 3729(a)(1)........................................................................24

v

31 U.S.C. § 3729(a)(1)(G) ................................................................................21

42 U.S.C. § 1396r-8 .........................................................................................3

42 U.S.C. § 1396r-8(a)(1) ................................................................................3

42 U.S.C. § 1396r-8(b)(1)(B) ...........................................................................4

42 U.S.C. § 1396r-8(c)(1)(C)(i) ......................................................................4, 9

42 U.S.C. § 1396r-8(c)(1)(C)(ii)(I) ...................................................................4

42 U.S.C. § 1396r-8(k)(1)(A) ..........................................................................12

**Regulations**

42 C.F.R. § 447.505(a) (2007) ......................................................................4, 14

**Rules**

Fed. R. Civ. P. 9(b) .............................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ........................................................................ *passim*

**Other Authorities**

71 Fed. Reg. 77,174 (Dec. 22, 2006) ..............................................................17

72 Fed. Reg. 39,142-01 (July 17, 2007) ....................................................5, 18, 22

81 Fed. Reg. 5170-01 (Feb. 1, 2016) ..........................................................5, 19

88 Fed. Reg. 34,238 (May 26, 2023) ..........................................................19, 20

*Any*, Oxford English Dictionary (3d ed. 2021) ................................................11

*Available*, Merriam-Webster.com Dictionary, Merriam-Webster,
   https://www.merriam-webster.com/dictionary/available (last accessed Oct. 11,
   2023) ........................................................................................................11

H.R. Rep. No. 101-881 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2017 .......................13

Oral Argument Tr., *U.S. ex rel. Schutte v. SuperValu, Inc.*,
   No. 21-1326 (U.S. Apr. 18, 2023) ...............................................................26

*Price*, Black's Law Dictionary (11th ed. 2019) ............................................11, 14

U.S. Br., *Cnty. of Santa Clara v. AstraZeneca Pharms. LP*,
   No. 09-15216, 2009 WL 4089524 (9th Cir. Oct. 27, 2009) ..................................23

U.S. HHS-OIG, *Reasonable Assumptions in Manufacturer Reporting of AMPs and Best Prices* (Sept. 2019), https://bit.ly/3gcQhFi ............................................................23

## INTRODUCTION

Defendants Forest Laboratories, LLC and Forest Pharmaceuticals, Inc. (collectively, "Forest")[1] bring this motion following the Fourth Circuit's order remanding the case for further consideration in light of the Supreme Court's decision in *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749 (2023), which clarified the applicable scienter standard for False Claims Act ("FCA") cases. Relator's principal allegation in this *qui tam* action is that Forest was legally required to aggregate the rebates it paid to separate customers along the distribution chain for purposes of calculating and reporting "Best Price" for its drugs, but Forest failed to do so, which caused the government to overpay for those drugs under Medicaid.[2] The Court previously dismissed Relator's Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to plausibly plead the FCA elements of falsity and scienter. Mem. Op. 31-43 (Feb. 5, 2021) [Dkt. 92]. As discussed more fully below, the Supreme Court's decision in *Schutte* does not change the outcome here. Relator's Amended Complaint suffers from several fundamental, incurable pleading deficiencies and should be dismissed in its entirety with prejudice.

*First*, the Court should dismiss the Amended Complaint because Relator has not plausibly alleged that Forest made a false statement. As this Court observed in granting Forest's first motion to dismiss, Forest advocated for and followed "the plain and natural reading" of the Medicaid Rebate Statute. Mem. Op. 36. A Fourth Circuit panel likewise concluded that Forest's conduct was consistent with the "plain language" of the statutory Best Price definition and "[o]ther provisions in the Rebate Statute confirm this reading." *U.S. ex rel. Sheldon v. Allergan Sales,*

---

[1] As of January 1, 2018, Forest Laboratories, LLC and Forest Pharmaceuticals, Inc. were merged into Allergan Sales, LLC and no longer exist.

[2] Troy Sheldon died after filing this action. On March 19, 2018, Deborah Sheldon, as Executrix of the Estate of Troy Sheldon, was substituted as the plaintiff. Order (Mar. 19, 2018) [Dkt. 31]. Unless otherwise noted, the references to "Relator" throughout this brief are to Troy Sheldon.

*LLC*, 24 F.4th 340, 352 (4th Cir. 2022), *vacated on reh'g en banc*, 49 F.4th 873 (4th Cir. 2022). The panel concluded that the Rebate Statute "cannot be stretched" to support Relator's contention that Forest was "required to aggregate discounts given to separate customers." *Id.* This Court should interpret the Rebate Statute consistent with its plain and natural reading and hold that Forest was not required to aggregate such discounts, and therefore, as a matter of law, its Best Price submissions were not false.

Further, irrespective of whether Forest's interpretation of Best Price was technically correct, its interpretation cannot be *false* under settled Fourth Circuit law. FCA liability attaches only to "objective falsehood[s]." Mem. Op. 31 (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376-77 (4th Cir. 2008)). "[D]ifferences in interpretation growing out of a disputed legal question are [] not false under the FCA." *Id.* at 32 (quoting *Wilson*, 525 F.3d at 377) (additional citations omitted). Because, at best, the Amended Complaint reflects disagreement about whether Forest's interpretation represents the sort of "reasonable assumption" the Rebate Agreement permits manufacturers to make, this Court correctly held that "claims based on Forest's interpretation cannot qualify as objective falsehoods or constitute false statements under the FCA." *Id.* at 41. *Wilson* remains good law and dictates the same conclusion: Relator has failed to plausibly plead falsity.

*Second*, the Court should dismiss the Amended Complaint because Relator also has failed to plausibly plead scienter. The Supreme Court held in *Schutte*, 598 U.S. at 749, that scienter focuses on a defendant's "knowledge and subjective beliefs." To survive a motion to dismiss under *Schutte*, Relator must allege "specific facts," *Wilson*, 525 F.3d at 379, demonstrating either that Forest actually knew its Best Price reports were false or that it was aware of a substantial risk that they were false. *See Schutte*, 598 U.S. at 751. Relator alleges nothing of the sort. The

2

Amended Complaint does not identify a single document, conversation, communication, or other piece of information that suggests Forest knew, or was aware of a risk, that its reading of the Medicaid Rebate Statute was wrong. To the contrary, the only communication Relator references—a letter Forest submitted to government regulators stating that the Best Price definition "has always been interpreted to mean the single lowest price to a particular customer"— unequivocally demonstrates that Forest has always held the same view it advocates today.

*Third*, the Court should dismiss the Amended Complaint because it falls well short of Rule 9(b)'s high bar. Because "[c]alculation of [Best Price] . . . is a complex enterprise requiring recourse to detailed information about the company's sales and pricing," *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 115 (2011), courts have held that a relator asserting a pricing-related FCA theory must plead such "detailed information" with particularity. Relator has not done so. Although he pleads hypotheticals about how the theoretical aggregation of discounts to different customers *could have* resulted in false price reports, he pleads no facts related to Forest's actual prices to particular customers or how those prices *actually* resulted in false price reports.

*Fourth*, Relator's state FCA claims should be dismissed for the same reasons as his federal FCA claims because they are based on the same deficient allegations and incorrect legal theory.

## BACKGROUND

## I.     Statutory and Regulatory Framework

Medicaid authorizes federal financial assistance to states that reimburse certain costs of medical treatment. *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 650 (2003). For drugs to qualify for federal Medicaid reimbursement, a manufacturer must enter into an agreement with the U.S. Secretary of Health and Human Services ("HHS") to provide quarterly rebates to states on Medicaid sales of covered drugs. 42 U.S.C. § 1396r-8(a)(1). The manufacturer reports to the

3

Centers for Medicare and Medicaid Services ("CMS") the "Average Manufacturer Price" ("AMP") and "Best Price" for its covered drugs, after which CMS calculates a quarterly "Unit Rebate Amount." *See id.* § 1396r-8. Federal payments to each state Medicaid plan are reduced by rebates the state receives from manufacturers. *Id.* § 1396r-8(b)(1)(B).

The Medicaid Rebate Statute defines "Best Price" as "the lowest price *available from the manufacturer* during the rebate period *to any* wholesaler, retailer, provider, health maintenance organization, nonprofit entity, *or* governmental entity within the United States." *Id.* § 1396r-8(c)(1)(C)(i) (emphases added). The statute further provides that Best Price must account for "cash discounts, free goods that are contingent on any purchase requirement, volume discounts, and rebates" to a specified entity. *Id.* § 1396r-8(c)(1)(C)(ii)(I).

CMS regulations track the statutory "Best Price" definition: "the lowest price available from the manufacturer . . . to any [specified] entity in the United States." 42 C.F.R. § 447.505(a) (2007). Forest's Medicaid Rebate Agreement similarly provides that "'Best Price' means . . . the lowest price at which the manufacturer sells the [drug] to any purchaser in the United States." Ex. 1, Forest Rebate Agmt. § I(d) (2002).[3] The Medicaid Rebate Agreement further states that "[t]he best price for a quarter shall be adjusted by the manufacturer if cumulative discounts, rebates or other arrangements subsequently adjust the prices actually realized." *Id.*

Recognizing Medicaid's complexity, the Rebate Agreement expressly authorizes manufacturers to "make reasonable assumptions in [their] calculations of . . . Best Price, consistent with the intent of [the Medicaid Rebate Statute], Federal regulations and the terms of [the Agreement]." Ex. 1, Forest Rebate Agmt. § II(i). Since the Medicaid Rebate Statute's enactment

---

[3] This Court correctly took judicial notice of the exhibits attached to Forest's brief in support of its first motion to dismiss and should do so again. *See* Mem. Op. 20-22.

30 years ago, CMS has consistently reaffirmed the need for manufacturers to make reasonable assumptions in calculating Best Price. *See, e.g.*, 72 Fed. Reg. 39,142-01, 39,191 (July 17, 2007); 81 Fed. Reg. 5170-01, 5174 (Feb. 1, 2016).

## II.   Relator's Allegations

Relator worked for Forest as a manager from the 1990s until 2014.  Am. Compl. ¶ 55 [Dkt. 16].  He alleges that Forest paid rebates to separate customers along a drug's distribution chain but failed to account for the combined amount of all rebates in calculating Best Price, which he says resulted in the submission of false pricing reports to the government. *Id.* ¶ 56.  Relator alleges that this improperly reduced the rebates Forest was required to pay to participating states under the Medicaid Rebate Statute, which, in turn, resulted in the federal government paying more for these drugs than it would have had Forest accurately calculated and reported Best Price. *Id.*

Relator alleges that Forest's failure to combine rebates to separate customers in its Best Price submissions has resulted in significant overpayments by Medicaid, which Relator estimates to be approximately $680 million. *Id.* ¶¶ 72, 121 & Exec. Summary at 5.  Relator reaches this estimate by applying variations of the same formula. *See id.* ¶¶ 72-118.  He first pleads, "[u]pon information and belief," the amount of Forest's net sales for a drug in a fiscal year. *E.g.*, *id.* ¶ 72. He then assumes, without identifying the basis for the assumption, that a percentage of the sales were for drugs dispensed to Medicaid patients. *E.g.*, *id.*  Next, he pleads, "[u]pon information and belief," that the rebate Forest paid was, for certain drugs, the statutory rebate percentage, and, for other drugs, based on the Best Price set by the maximum rebate Forest paid on commercial sales. *E.g.*, *id.* ¶ 73.  He then alleges, again "[u]pon information and belief," that the drug was dispensed to patients in Pharmacy Provider Facilities and that Pharmacy Providers and GPOs received the maximum possible discount from Forest. *E.g.*, *id.* ¶ 72.  Based on this series of unsubstantiated

assumptions, Relator then purports to calculate the additional amount that Forest should have paid in Medicaid rebates for each fiscal year between 2005 and 2014.  *Id.* ¶¶ 72-119.

### III.    Procedural History

Relator filed this *qui tam* action under seal on August 11, 2014 [Dkt. 1] and an Amended Complaint on August 30, 2016 [Dkt. 16].  After investigating the allegations, the federal government, all state governments, and the District of Columbia declined to intervene [Dkt. 41].

In February 2021, this Court granted Forest's first motion to dismiss Relator's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to plausibly plead the FCA elements of falsity and scienter.  Mem. Op. 31-43.  After carefully examining the statute and applicable regulations and guidance, the Court concluded that "the plain and natural reading of the [Best Price] provision is that Best Price means the lowest price made available by the manufacturer, including all price concessions, to any one of the listed entities, but not to multiple entities."  *Id.* at 36.  Because Relator advanced the position that the FCA does not "reach those claims made based on reasonable but erroneous interpretations of a defendant's legal obligations," Relator's Mem. in Opp. to Mot. to Dismiss 24 (Apr. 27, 2020) [Dkt. 79], however, this Court did not have occasion to authoritatively interpret manufacturers' obligations under the Rebate Statute. The Court instead held that because Forest's reading was neither objectively false nor objectively unreasonable, Relator failed to plausibly plead that Forest's pricing submissions were false or that it acted with the requisite scienter.  Mem. Op. 35-42.  Having concluded that Relator's Amended Complaint failed under Rule 12(b)(6), the Court did not reach whether the Amended Complaint satisfied Rule 9(b)'s heightened particularity standard.  *Id.* at 43.

A Fourth Circuit panel affirmed on the basis that Relator failed to plausibly plead scienter because Forest's interpretation of Best Price was, "at minimum, . . . objectively reasonable."

*Sheldon*, 24 F.4th at 353.  The panel concluded that "Forest's reading . . . is the best reading of [the statutory] text," expressing its agreement "with [this Court] that the 'plain and natural reading' of the Rebate Statute means that Best Price" "is one offered to a single entity."  *Id.* at 351, 353. The panel further held that "the statute cannot be stretched beyond this singular point" because "[t]here is nothing in the statute to suggest that Best Price requires aggregating discounts given to separate entities."  *Id.* at 352-53.  The Fourth Circuit explicitly stated that, in light of its holding on scienter, it was not "address[ing] the district court's holding as to falsity."  *Id.* at 346 n.2.  Nor did the panel consider the Rule 9(b) issue that this Court did not reach.  An equally divided en banc court later vacated the panel's opinion and affirmed this Court's judgment.  *U.S. ex rel. Sheldon v. Allergan Sales, LLC*, 49 F.4th 873 (4th Cir. 2022) (en banc).  Relator petitioned for a writ of certiorari.

On June 1, 2023, the Supreme Court decided *Schutte*.  The Court held that "[t]he FCA's scienter element refers to [a defendant's] knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed."  598 U.S. at 749.  The Court further held that the "objective reasonableness" scienter standard from *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), does not apply to the FCA.  *Schutte*, 598 U.S. at 754.  The Court made clear that its decision was limited to the narrow scienter question presented and did not address the FCA's separate falsity element.  *Id.* at 749.

On June 30, 2023, the Supreme Court granted Relator's certiorari petition, vacated the Fourth Circuit's judgment, and remanded for further consideration in light of *Schutte*.  Following the Supreme Court's remand, the Fourth Circuit remanded the case to this Court "for further consideration in light of [*Schutte*]."  Remand Order (Aug. 2, 2023) [Dkts. 100, 101].

7

On August 30, 2023, after a telephone conference with the parties, the Court ruled that Forest may file a new motion to dismiss.  Order [Dkt. 111].  Forest now brings that motion.

**<u>ARGUMENT</u>**

## I.      Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a relator's complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that the relator's allegations must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged"; it is not enough for a complaint to raise only the "possibility" that the defendant acted unlawfully.  *Iqbal*, 556 U.S. at 678.  Although this Court must view the allegations in the light most favorable to a relator, it need "not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.'"  *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (citation omitted).  In addition, FCA claims are subject to Rule 9(b)'s heightened pleading requirement, which requires a plaintiff to "state with particularity the circumstances constituting fraud."  *Id.* (quoting Fed. R. Civ. P. 9(b)).

## II.     The Amended Complaint Should Be Dismissed Under Rule 12(b)(6)

"To plead an FCA claim, a relator must plausibly allege four distinct elements:  (1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (*i.e.*, that involved a 'claim')."  *U.S. ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 700 (4th Cir. 2014) (alterations and citation omitted).  The Court should dismiss Relator's Amended Complaint in its entirety under Rule 12(b)(6) because it fails to plausibly allege falsity or scienter.

8

A.        **Relator Has Not Plausibly Alleged Falsity**

"It is only those claims for money or property to which a defendant is not entitled that are 'false' for purposes of the [FCA]."  *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 674-75 (5th Cir. 2003) (en banc) (citation omitted).  Relator's principal allegation is that Forest's pricing reports were false because (1) Forest paid rebates to separate customers along the distribution chain for the same drug provided to the same patient, and (2) Forest was required to aggregate those rebates for purposes of calculating and reporting the Best Price for the drug but did not do so.  Am. Compl., Exec. Summary at 1-5.  Relator is incorrect.  Because the Medicaid Rebate Statute, Medicaid Rebate Agreement, and CMS regulations uniformly required Forest to report as its Best Price only the single lowest price it offered to an individual customer, Forest's failure to aggregate discounts provided to separate customers did not render its pricing submissions false.  Moreover, even if there were some question about whether Forest's price reports were technically correct, "differences in interpretation growing out of a disputed legal question" cannot be *false* under the FCA, *Wilson*, 525 F.3d at 377 (citation omitted), particularly where CMS expressly authorized manufacturers to make "reasonable assumptions" in their Best Price calculations.

1.        **Forest Was Not Required to Aggregate Discounts Separately Provided**

The Medicaid Rebate Statute defines Best Price as "the lowest price *available from* the manufacturer during the rebate period *to any* wholesaler, retailer, provider, health maintenance organization, nonprofit entity, *or* governmental entity."   42 U.S.C.  §  1396r-8(c)(1)(C)(i) (emphases added).  Despite this clear reference to the single lowest price to any individual entity in a single bilateral sale, Relator asks the Court to rewrite the statute so that Best Price instead means a price not actually available to any customer in the marketplace, but instead a hypothetical

net revenue figure that combines all discounts that a manufacturer offers to separate entities along a drug's distribution chain.  Neither the statute itself nor any legislative history or implementing regulation supports Relator's reading, which as the *Sheldon* panel recognized would "stretch[]" the statute beyond its limits.  24 F.4th at 352.

### a.    The Medicaid Rebate Statute Defines Best Price as the Single Lowest Price to an Individual Entity

"[U]nless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language."  *Hillman v. I.R.S.*, 263 F.3d 338, 342 (4th Cir. 2001).   "[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007)).  And any terms that are not defined are "interpreted as taking their ordinary, contemporary, common meaning."  *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (citation omitted).  Here, the unambiguous plain text of the Medicaid Rebate Statute makes clear that a manufacturer's obligation is to report the lowest price it offers to any one of the enumerated customer types.  Nothing in the statutory text requires—or could be read to authorize—aggregation of discounts across two or more different customers.

Both this Court and the Fourth Circuit panel unequivocally concluded that Forest's reading is the best one.  *See* Mem. Op. 35-36 ("[T]he plain and natural reading of the [Medicaid Rebate Statute] is that Best Price means the lowest price made available by the manufacturer, including all price concessions, to any one of the listed entities, but not to multiple entities."); *Sheldon*, 24 F.4th at 352 (statute's "plain language conveys that Forest was not required to aggregate discounts

10

given to separate customers").  For the reasons discussed below, the Court should adopt Forest's reading and hold that its pricing submissions were not false.[4]

**First**, the plain language of the statute can be interpreted as referring only to a single price in a single bilateral transaction.  The statute uses the term "price," which means "consideration . . . given in exchange" for goods—*i.e.*, a sale to a particular customer.  *See Price*, Black's Law Dictionary (11th ed. 2019).  Further, the phrase "available *from* the manufacturer . . . *to* any [customer]" focuses the inquiry on the particular bilateral transaction.  And the term "available" means "present or ready for immediate use."  *Available*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/available (last accessed Oct. 11, 2023); *see In re Constr. Supervision Servs., Inc.*, 753 F.3d 124, 128 (4th Cir. 2014) (courts may consult dictionaries to discern a term's "plain or common meaning" (citations omitted)).  Accordingly, Best Price is an *actual price* that a manufacturer provides to a customer in the marketplace.  Relator's construction of Best Price, by contrast, does not represent a real price but instead a hypothetical composite net revenue figure not "available" as a "price" to any customer.

**Second**, the statute's choice of singular and disjunctive terms confirms that it refers to a single price.  It speaks of "the lowest price," using a definite article to indicate a singular price.

---

[4] Contrary to Relator's assertion, this Court's observation that the Rebate Statute is "susceptible to multiple interpretations"—made at a time when both parties agreed that the existence of an ambiguity was enough to resolve the case, *see* Opp. to Mot. to Dismiss at 24—does not somehow convert a purely legal statutory interpretation question into a factual issue that requires discovery. *See* Response in Support Mot. for Sched. Order 2 (Aug. 24, 2023) [Dkt. 110].  This Court must determine, as a matter of law, what the statute means based on its plain text and other interpretive tools.  *See Broughman v. Carver*, 624 F.3d 670, 674 (4th Cir. 2010) ("[A] question of statutory interpretation [is] a quintessential question of law." (citation omitted)); *United States v. Moriello*, 980 F.3d 924, 934 (4th Cir. 2020) ("Regulatory interpretation is a question of law.").  Moreover, Relator's position contradicts his argument to the Fourth Circuit that this Court should have decided the statutory interpretation question when it ruled on Forest's initial motion to dismiss. *See* Br. of Appellant, *U.S. ex rel. Sheldon v. Allergan Sales, LLC*, No. 20-2330 at 27 (4th Cir. Mar. 18, 2021).

Similarly, the statute's use of "any" and "or" does not somehow make "best price" an aggregated net revenue figure based on all prices offered to multiple entities. "Any" ordinarily means a "single member in a class if used with singular nouns." *Sheldon*, 24 F.4th at 351 (citing *Any*, Oxford English Dictionary (3d ed. 2021)). Moreover, that Congress used "any" with singular nouns and the disjunctive term "or" further reinforces that Best Price does not involve the aggregation of discounts to multiple entities. The disjunctive term "or" is used to separate things; the conjunctive term "and" is used to combine things. As the *Sheldon* panel stated, "[t]his linguistic construction (singular nouns plus the disjunctive) strongly advises against aggregating discounts to multiple entities." *Id.* Thus, the statute is read most naturally to define Best Price as the lowest price available to any one of the listed entities—not the lowest composite revenue figure resulting from combining prices to all of the listed entities for a single drug unit. *See Gibbons v. Malone*, 703 F.3d 595, 600 (2d Cir. 2013) ("Congress's use of the singular term 'any equity security' [under the Securities Exchange Act] supports an inference that transactions involving *different* equity securities cannot be paired"). Had Congress intended Relator's reading, it would have used very different language (by, at minimum, pluralizing the listed customer types and utilizing the conjunctive "and" to tie those customer types together).

**Third**, as this Court and the *Sheldon* panel have already noted, Forest's reading of the statutory "Best Price" definition is reinforced by its stark contrast to the definition of AMP. *See* Mem. Op. 36; *Sheldon*, 24 F.4th at 352. "Where Congress has utilized distinct terms within the same statute, . . . [courts] endeavor to give different meanings to those different terms[.]" *Soliman v. Gonzales*, 419 F.3d 276, 283 (4th Cir. 2005). Here, Congress defined AMP as "the average price *paid to* the manufacturer for the drug." 42 U.S.C. § 1396r-8(k)(1)(A) (emphasis added). "An 'average,' by definition, requires some sort of combination." *Sheldon*, 24 F.4th at 352.

12

Further, unlike the price "available from the manufacturer," the amount "paid to" the manufacturer for a drug unit could conceivably incorporate discounts to different entities along the supply chain. Had Congress intended for Best Price to reflect the lowest amount paid to—in other words, received by—the manufacturer for a drug unit, it would have used language more like that which appears in the definition of AMP. But "Congress enacted a statute that covers only prices available *from* a manufacturer *to* a best-price eligible entity." *Pharm. Rsch. & Mfrs. of Am. v. Becerra*, No. 21-cv-1395, 2022 WL 1551924, at *6 (D.D.C. May 17, 2022). The significant "linguistic difference" between the definitions of Best Price and AMP makes clear that Congress intended for the terms to have different meanings. *See I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987).

### b.    Legislative History Confirms the Statute's Plain Meaning

Because the Medicaid Rebate Statute is clear, the Court need not resort to legislative history. *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 186 (2004). Nonetheless, as this Court previously observed, the Rebate Statute's legislative history "supports [Forest's] reading that the Best Price is the lowest price that a manufacturer makes available to any particular purchaser in order to put Medicaid on the same footing as a manufacturer's lowest paying customer, not a combination of its customers." Mem. Op. 39.

Congress explained that Medicaid "should have the benefit of the same discounts . . . that other large public and private purchasers enjoy." H.R. Rep. No. 101-881 at 96-97 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2017, 2108. The statute's purpose was to "give Medicaid the benefit of the best price for which a manufacturer sells a prescription drug to any public or private purchaser." *Id.* In other words, Congress intended to set Medicaid rebate pricing to ensure that the government was treated on par with the manufacturer's most favored private customer. That is exactly what Forest's interpretation of Best Price does. On the other hand, Relator's view—that

13

manufacturers are required to create and report an artificial composite revenue figure that is not actually offered to any individual customer by combining discounts provided to multiple customers—would result in Medicaid paying a lower price than any customer.  That is flatly contrary to Congress's stated intent, which was to give Medicaid the "same discounts" as the best private customers, not a better discount available to *no* customer.

> **c.** **CMS Regulations and the Medicaid Rebate Agreement Accord with Forest's Reading of the Medicaid Rebate Statute**

Both CMS regulations and the Medicaid Rebate Agreement track the statutory text and thus accord with Forest's reading of the Medicaid Rebate Statute.  CMS regulations define Best Price as "the lowest price available from the manufacturer . . . to any [specified] entity."  42 C.F.R. § 447.505(a) (2007).  The Medicaid Rebate Agreement similarly defines Best Price as "the lowest price at which the manufacturer sells the [drug] to any purchaser."  Ex. 1, Forest Rebate Agmt. § I(d).  Like the statute, in each of these definitions, the terms "price" and "entity" (or a similar noun used to refer to the customer) are singular, referring to the *single* lowest price offered by the manufacturer to any *single* entity.  Again, that is consistent with the ordinary understanding of "price" as the "consideration asked for or given in exchange" for goods, consistent with a sale to a particular customer.  *See Price*, Black's Law Dictionary (11th ed. 2019).  Nothing in these definitions suggests a requirement to aggregate discounts offered to separate customers to generate a composite revenue figure available to no actual customer.

Ignoring the plain meaning of these provisions—and of the Medicaid Rebate Statute to which they are subordinate—Relator's prior briefing has focused almost entirely on two words in the Rebate Agreement: "actually realized."  *See* Opp. to Mot. to Dismiss 3.  The Rebate Agreement states that "[t]he best price . . . shall be adjusted by the manufacturer if cumulative discounts, rebates or other arrangements subsequently adjust the prices actually realized."  Ex. 1, Forest

Rebate Agmt. § I(d).  Relator has argued that this means "the price actually realized by a drug manufacturer for a single drug unit after aggregating any and all price concessions to all entities." Opp. to Mot. to Dismiss 3.  But that view cannot be reconciled with the rest of the Medicaid Rebate Agreement.  Read in context, "price[] actually realized" refers to the price the manufacturer obtains on a sale to an individual customer after accounting for all price concessions provided *to that customer*, whether realized at the time of sale or at a later date.  *Sheldon*, 24 F.4th at 353.  The term "actually realized" cannot expand the Best Price definition to mean the manufacturer's revenue after aggregating all discounts provided to all entities.  *See id.* ("the[] words ['actually realized'] cannot be wrenched out of context or used to subvert the Rebate Statute's natural meaning").

Therefore, by their plain terms, the controlling statute, regulation, and contract all required Forest to report only the lowest of the prices it offered to any one of its customers.  That should end this Court's inquiry.

### d.    CMS Guidance Does Not Support Relator's Interpretation

Despite the plain language of these controlling authorities, Relator "cherry-pick[s]" CMS guidance in an effort to find support for his interpretation of Best Price.  *See* Mem. Op. 40-41.  In particular, Relator relies on (1) CMS guidance documents from the early 1990s; and (2) comments made by CMS during the rulemaking process when implementing provisions of the Deficit Reduction Act of 2007 and the Affordable Care Act of 2016.

As an initial matter, the Court should not consider these sources because the meaning of the Medicaid Rebate Statute is clear on its face.  *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (where statutory text is clear, courts "must give effect to the unambiguously expressed intent of Congress," and may not consider agency interpretations); *Epic*

*Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1630 (2018) (where the canons of statutory construction "supply an answer," the court should not resort to agency interpretations); *see also Sheldon*, 24 F.4th at 353 ("Of course, courts, not agencies, are the ultimate interpreters of statutes."). Regardless, as this Court previously noted, Relator does not provide "a single example [of] CMS explicitly stat[ing] that manufacturers must aggregate discounts to different customers along the supply chain." Mem. Op. 40; *accord Sheldon*, 24 F.4th at 354 (none of Relator's examples "spoke directly to whether manufacturers were required to aggregate discounts given to separate entities on the supply chain"). Nonetheless, to the extent CMS's guidance has any role to play here, it fully aligns with Forest's understanding of its price reporting obligations.

**CMS Program Releases.** Relator cites two CMS Program Releases that use the phrase "actually realized" similarly to the Rebate Agreement. Am. Compl. ¶¶ 36-37. Neither supports his interpretation. The 1991 Program Release explained that Best Price "is not weighted but represents the *single best price* . . . at which any package size of the product was sold." Ex. 2, CMS Manufacturer Release No. 2 at 1 (Aug. 9, 1991) (emphasis added). The 1994 Program Release addressed administrative fees manufacturers paid to individual customers. CMS explained that it "consider[s] administrative fees, incentives, promotional fees, chargebacks and all discounts or rebates . . . to be included in the calculation of . . . best price." Ex. 3, CMS Manufacturer Release No. 14 at 1 (Dec. 21, 1994). CMS then recited the Rebate Agreement's Best Price definition, which focuses on actual sales to any purchaser. *Id*. Nowhere did CMS suggest that manufacturers must aggregate discounts to different customers to create a hypothetical price no actual purchaser would ever receive. Thus, neither of these sources, together or on their own, support Relator's reading of the Medicaid Rebate Statute. That conclusion becomes even clearer in light of CMS's 2006/2007 rulemaking.

**2006/2007 CMS Rulemaking.**   Relator also relies on CMS's commentary during rulemaking to implement the Deficit Reduction Act.  Am. Compl. ¶ 43.  As this Court concluded, this commentary actually "weakens Relator's argument."  Mem. Op. 39.  The proposed rule's "Best Price" definition mirrored the Rebate Agreement's definition:  "Best price means . . . the lowest price available from the manufacturer . . . ."  71 Fed. Reg. 77,174, 77,197 (Dec. 22, 2006).  CMS further stated that "[t]he manufacturer must adjust the best price for a rebate period if cumulative discounts, rebates, or other arrangements subsequently adjust the *prices available from the manufacturer*."  *Id.* at 77,198 (emphasis added).  Notably, CMS substituted the italicized phrase for the Rebate Agreement's phrase, "prices actually realized."  That CMS used these phrases interchangeably refutes Relator's contention that "price actually realized" means an aggregate price that is *not* "available from the manufacturer" to any individual entity.  *See* Mem. Op. 38-39.

Unable to explain the fact that this consistent definition of Best Price is at odds with his theory, Relator instead has resorted to mischaracterizing comments Forest and other manufacturers submitted regarding the 2006 proposed rule and CMS's response to those comments.  Am. Compl. ¶¶ 43-52.  The manufacturers' comments expressed their uniform view that "[t]he statutory definition of best price," which "[t]he proposed rule adopt[ed]," "has always been interpreted to mean the single lowest price to a particular customer."  Ex. 4, Letter from Donna Yesner to CMS at 13 (Feb. 20, 2007) ("Yesner Letter"); *accord* Ex. 5, Letter from Reed Smith to CMS at 9 (Feb. 20, 2007) ("Reed Smith Letter") ("Unlike AMP, which clearly contemplates that prices be aggregated to determine an 'average' amount, the BP is the single lowest price at which the manufacturer sells the product to a single customer."); Ex. 6, Letter from Covington & Burling to CMS at 6 (Feb. 20, 2007) ("Covington Letter") (Rebate Statute makes clear that "it is not appropriate to consider discounts other than the discounts offered to one customer when

determining best price, for those other discounts are never available to that customer."). The manufacturers noted that ambiguous language in the proposed rule's preamble could be read to "suggest[] that CMS views best price as the net amount realized by the manufacturer on a sale rather than the lowest price to a particular customer." Ex. 4, Yesner Letter at 13. The manufacturers asked CMS to "clarify" the preamble language, *id.*, Ex. 5, Reed Smith Letter at 9; Ex. 6, Covington Letter at 6, and explained that, in light of the statutory text, it "must be read to mean that Best Price is the lowest price realized by the manufacturer net of all price concessions to a specific Best Price-eligible customer," Ex. 7, PhRMA Letter to CMS at 17 (Feb. 20, 2007).

Thus, manufacturers advised the agency how they would interpret the rule, and the agency took no action to contradict that interpretation. CMS issued a final rule that adopted in all material respects the proposed rule's Best Price definition, which in turn adopted the Rebate Agreement's definition, which itself essentially adopted the statutory definition. 72 Fed. Reg. at 39,242-43; *see Sheldon*, 24 F.4th at 354 ("final rule['s] . . . language simply reflected the Rebate Statute, which most naturally supports Forest's interpretation"). Had CMS intended to overhaul Best Price as Relator suggests, it would have said so. An agency "d[oes] 'not alter the fundamental details of [its] regulatory scheme'" through "vague and ancillary terms" like ambiguous preamble language; it does not hide "elephants in mouseholes." *Gallina v. Wilkinson*, 988 F.3d 137, 146 (2d Cir. 2021) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).

Relator also relies on "two exemplar situations involving discounts to multiple entities," which he alleges "confirmed that all rebates to multiple entities affecting the price actually realized by the manufacturer for a single drug unit must be aggregated for purposes of best price." Am. Compl. ¶ 44 (emphases removed). Neither example, however, stands for that proposition, as both this Court and the Fourth Circuit panel recognized. *See* Mem. Op. 40 (finding Relator's arguments

"unconvincing"); *Sheldon*, 24 F.4th at 354 ("neither [example] spoke directly to whether manufacturers were required to aggregate discounts given to separate entities on the supply chain").  Relator's arguments fare no better with age.

**2016 CMS Comments.**  Relator's reliance on CMS's comments in the preamble to the 2016 Affordable Care Act final rule is similarly misguided.  *See* Am. Compl. ¶ 53.  This Court correctly disregarded CMS's 2016 commentary "[b]ecause Relator's allegations concern Forest's price reporting between 2005 and 2014."  Mem. Op. 39 n.11; *accord Sheldon*, 24 F.4th at 355 n.4; *see* Am. Compl. ¶¶ 72-118 (calculating alleged damages for 2005 through 2014); *id.* ¶ 55 (acknowledging that Relator was terminated by Forest in 2014).  The Court should do so again here, for the same reason.[5]

**Recent CMS Proposed Rulemaking.**  Since this Court ruled on Forest's initial motion to dismiss, CMS has issued a proposed rule that for the first time seeks to impose a discount aggregation obligation on manufacturers.  88 Fed. Reg. 34,238 (May 26, 2023).  Relator surely will seek to rely on this proposed rule, but it has no bearing on this case because, like the 2016 CMS commentary, it post-dates Relator's allegations about Forest's price reporting.  Mem. Op. 39 n.11.  In fact, CMS itself made clear in the proposed rule preamble that its purpose was to "remove any potential doubt [about the meaning of Best Price] *prospectively*."  88 Fed. Reg. 34,238 at 34,260 (emphasis added).  Nonetheless, even if the Court were to consider the proposed rule, it does not support Relator's position.

Although CMS couches the proposed rule as a mere "clarifying statement," *id.*, it is in fact a radical re-definition of Best Price that is inconsistent with CMS's longstanding view and flatly

---

[5] In any event, as discussed in Forest's initial motion to dismiss, CMS's 2016 commentary does not support Relator's reading.  *See* 81 Fed. Reg. 5170-01, 5351-52 (Feb. 1, 2016); Mem. in Support Mot. to Dismiss 15-16.

contrary to the text, purpose, structure, and history of the governing statute.  The Medicaid Rebate Statute controls, not the proposed rule.  *See Epic Sys. Corp.*, 138 S. Ct. at 1630.  Moreover, the proposed rule underscores why Relator's interpretation of the 2006/2007 rulemaking is wrong.  It shows that CMS knows exactly what it needs to say to attempt to require manufacturers to aggregate discounts to multiple customers:  "Cumulative discounts, rebates or other arrangements *must be stacked* to determine a final price realized by the manufacturer for a [covered drug] . . . , including discounts, rebates, or other arrangements *provided to different best price eligible entities*."  88 Fed. Reg. at 34,292-93 (emphases added).  CMS previously never said anything like that.  *See* Mem. Op. 40.

Further, even if the proposed rule were relevant to this matter, the Court should not afford it any deference.  First, Forest is not aware of any FCA case giving *Chevron* deference to an agency interpretation.  Indeed, *Chevron* deference applies only when a statute is ambiguous, *Chevron*, 467 U.S. at 842-43, and FCA liability does not flow from ambiguous statutes.  *See infra* at 21-24. Second, as the Supreme Court has explained, "deference is . . . unwarranted when there is reason to suspect that [an] agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question,'" such as when the "agency's interpretation conflicts with a prior interpretation" or when "it appears that the interpretation is nothing more than a 'convenient litigating position.'"  *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (quoting *Auer v. Robbins*, 519 U.S. 452, 462 (1997) and *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988)).  CMS's recent proposed rule checks both boxes: it conflicts with CMS's prior interpretations of Best Price, and, given its express reference to, and disagreement with, the *Sheldon* panel's decision, the proposed rule is in effect a "convenient litigating position" designed to affect the outcome of this case and is unlikely to survive judicial scrutiny.

Accordingly, for all of these reasons, Forest was not required to aggregate discounts provided to separate entities along the distribution chain.  The Court should dismiss the Amended Complaint because Forest correctly interpreted Best Price.

## 2.    In Any Event, Forest's Patently Reasonable Reading Cannot Be False

"The FCA is a fraud prevention statute," *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 728 (4th Cir. 2010), not "a vehicle for punishing garden-variety breaches of contract or regulatory violations," *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 194 (2016).  For FCA liability to attach, Forest's pricing submissions must have been "false."  31 U.S.C. § 3729(a)(1)(G).  Consistent with the FCA's limited scope and purpose, the Fourth Circuit squarely held in *Wilson* that "[t]o satisfy [the falsity] element of an FCA claim, the statement or conduct alleged must represent an objective falsehood."  525 F.3d at 376-77. "[D]ifferences in interpretation growing out of a disputed legal question are . . . not false under the FCA."  *Id.* at 377 (citation omitted); *accord United States v. AseraCare, Inc.*, 938 F.3d 1278, 1296-1301 (11th Cir. 2019) (objective falsehood required; "mere difference of reasonable opinion" not sufficient); *U.S. ex rel. Morton v. A Plus Benefits, Inc.*, 139 F. App'x 980, 982 (10th Cir. 2005) (same); *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) ("errors based . . . on . . . flawed reasoning are not false under the FCA").[6]  A "difference of opinion" about whether Forest made a "reasonable assumption" in calculating Best Price is the very best Relator could possibly show (and, as noted above, Forest's position in fact was fully consistent with the statutory text, structure, purpose, and history).  Therefore, even if Relator had a legitimate basis to dispute which party's construction of Best Price is technically correct (and he does not), Relator

---

[6] *But see Winter ex rel. U.S. v. Garden Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1119 (9th Cir. 2020) (rejecting objective falsity standard); *U.S. ex rel. Druding v. Care Alts.*, 952 F.3d 89, 95 (3d Cir. 2020) (same).

still could not plausibly state a claim for fraud under the FCA.  The Court should dismiss the Amended Complaint for failure to plead objective falsity as it did before.  *See* Mem. Op. 41; *Wilson*, 525 F.3d at 377-78 (dismissing FCA action under Rule 12(b)(6) for failure to plead objective falsity).

Relator's attempts to avoid *Wilson*'s clear rule are unavailing.  Relator previously dismissed *Wilson* as "loose language" and instead relied on isolated statements in *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364 (4th Cir. 2015), to argue that *Wilson* does not apply here.  But *Drakeford* stands for the unremarkable proposition that where statutory or regulatory compliance is an "either/or proposition," a defendant's certification of compliance may be false.  792 F.3d at 383-84 & n.14.  It did not distinguish or abrogate *Wilson*; in fact, it expressly reaffirmed *Wilson*'s core holding that the FCA requires "an objective falsehood," and that a relator cannot demonstrate falsity where his allegations "rest . . . 'on Relators' subjective interpretation of [the defendant's]'" legal obligations.  *Id.* at 384 n.14 (quoting *Wilson*, 525 F.3d at 377; brackets in *Drakeford*).

Thus, even if there were a legitimate dispute as to the proper reading of the statute (and there is not), this case still fits squarely within *Wilson*.  The "[c]alculation of a manufacturer's 'average' and 'best' prices . . . is a complex enterprise."  *Astra USA*, 563 U.S. at 115; *cf. K.C. ex rel. Africa H. v. Shipman*, 716 F.3d 107, 119 (4th Cir. 2013) ("Spanning hundreds of regulations across fourteen parts and scores of subparts . . . , Medicaid is—to put it mildly—a complicated program . . . .").  CMS has recognized this complexity and thus has long permitted manufacturers to make "reasonable assumptions" in calculating Best Price.  Ex. 1, Forest Rebate Agreement § II(i); *e.g.*, 72 Fed. Reg. at 39,191.  Indeed, the term "reasonable assumptions" appears a total of *99 times* in the CMS preambles to the 2007 and 2016 final rules.  The Department of Justice and the HHS Office of Inspector General also have acknowledged that "[p]olicing the boundary

22

between 'reasonable' and 'unreasonable' assumptions [in the price reporting context] is not always a simple task."  U.S. Br., *Cnty. of Santa Clara v. AstraZeneca Pharms. LP*, No. 09-15216, 2009 WL 4089524 (9th Cir. Oct. 27, 2009); U.S. HHS-OIG, *Reasonable Assumptions in Manufacturer Reporting of AMPs and Best Prices* Abstract & 3-4 (Sept. 2019), https://bit.ly/3gcQhFi ("The complexities of industry practices and the absence of specific guidance can present difficulties for manufacturers when calculating AMPs and BPs" making "it difficult to determine how to treat certain sales practices when calculating prices").  Rather, "even working within CMS guidance, a number of difficult interpretative questions can arise when making . . . Best Price calculations." U.S. Br., *Cnty. of Santa Clara*, 2009 WL 4089524.  "And discount aggregation in particular raises some of the thorniest issues in government price reporting," *Sheldon*, 24 F.4th at 352, in the face of increasingly complicated customer relationships, data and systems challenges, and industry consolidation.

Accordingly, a manufacturer's obligation under the Rebate Statute is simply to make a "reasonable assumption" in calculating Best Price.  Put another way, as long as the assumption on which the manufacturer's Best Price calculation is based is reasonable, its pricing submissions comply with the applicable legal requirements.   For the reasons discussed above, Forest's interpretation is not only reasonable; it is the proper reading of the statutory text.  Thus, its Best Price submissions are not false.  Moreover, the Rebate Statute's mandate to make a "reasonable assumption" is a far cry from the sort of "either/or proposition" that could constitute an objective falsehood.  Relator cannot point to anything in the statutory or regulatory text or even in CMS guidance to support his interpretation of Best Price, meaning that, *at best*, this case presents a "difference[] in interpretation growing out of a disputed legal question."  *See Wilson*, 525 F.3d at

377.  This Court correctly dismissed the Amended Complaint for failure to plausibly plead an objective falsehood, and it should do so again.  *See* Mem. Op. 41.

Should Relator argue that *Wilson* is no longer good law after *Schutte*, he would be wrong. "[A] district court is bound by the precedent set by its Circuit Court of Appeals, until such precedent is overruled by the appellate court or the United States Supreme Court."  *United States v. Byrd*, No. ELH-11-657, 2022 WL 1120064, at *28 (D. Md. Apr. 13, 2022) (citation omitted). *Schutte* did not overrule *Wilson*; indeed, *Schutte* did not address the FCA's falsity element at all. That was a case entirely about the FCA's separate scienter element.  "[T]he District Court ruled against [the defendant] on the falsity element," and the Supreme Court made clear that it was "not reviewing . . . whether any of [the defendants'] claims were, in fact, inaccurate or otherwise false." *Schutte*, 598 U.S. at 747, 749.  The sole question presented was "whether [the defendants] could have the *scienter* required by the FCA if they correctly understood [the governing legal] standard and thought that their claims were inaccurate."  *Id.* at 743 (emphasis added).  The Supreme Court's holding "that the answer is yes," *id.*, has no bearing on what a relator must show to demonstrate that claims are false.  Accordingly, this Court is bound to follow *Wilson*'s objective falsity rule, and as the Court previously held, the Amended Complaint fails under that rule.

**B.     Relator Has Not Plausibly Alleged That Forest Acted With the Requisite Scienter**

The FCA imposes liability only where the defendant acts "knowingly."   31 U.S.C. § 3729(a)(1).  This scienter requirement is "rigorous," *Escobar*, 579 U.S. at 192, and intended to ensure that the FCA is not used to "punish honest mistakes," *Owens*, 612 F.3d at 728 (citations and quotations omitted).  Although scienter allegations are not subject to Rule 9(b)'s heightened pleading requirements, *see supra* at 8, an FCA plaintiff still must "'set forth specific facts that

support an inference' of scienter." *U.S. ex rel. Complin v. N.C. Baptist Hosp.*, 818 F. App'x 179, 183 (4th Cir. 2020) (quoting *Wilson*, 525 F.3d at 379).  Relator has not done so here.

Relator alleges that Forest contracted with a firm called Data Niche & Associates in 2008 to conduct an audit of its commercial business to identify claims for which two rebates were paid for the same drug dispensed to the same patient to ensure that only one rebate was paid.  Am. Compl. ¶¶ 69-70.  Relator asserts that Forest initiated this audit because it was aware that paying multiple rebates on the same drug unit would set a new Best Price.  *Id.*  But Relator pleads no facts to support his conclusory allegation that the audit was driven by price reporting concerns, as opposed to the company's desire, for entirely legitimate business reasons, to eliminate duplicate rebate payments to customers.  Nor does Relator plead any facts to support his assertion that Forest "deliberately chose not to institute [an audit] process [to identify payment of double rebates] on the Pharmacy Provider/GPO side" of its business to avoid a "Best Price problem."  *See id.* ¶ 71 & Introduction at 8.  Relator does not identify a single document, conversation, communication, or other piece of information that suggests Forest's implementation of the audit was in any way related to price reporting, let alone that shows Forest knew it was required to aggregate rebates in calculating Best Price.  Relator also does not allege any facts of the sort that the Fourth Circuit has held might support an inference of scienter.  There is no allegation "that [Forest's] employees had conversations about regulatory violations, for instance, or that [Forest] instructed [its] employees to ignore concerns about potential violations, or anything else to indicate that [Forest] w[as] aware even of the potential for a violation."  *Complin*, 818 F. App'x at 183.  Because Relator's allegations regarding the audit are at least as consistent with "a legal and obvious alternative explanation" as they are with "the claimed misconduct," his fraud allegation is "merely conceivable and not

plausible." *See U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 897-98 & n.12 (5th Cir. 2020) (citing *Iqbal*, 556 U.S. at 682).

Relator's attempt to plead scienter based on comments Forest submitted to CMS also fails. *See* Am. Compl. ¶ 51. Those comments do not show that Forest, or any of the other manufacturers on whose behalf comments were submitted, knew that manufacturers were required to aggregate discounts in calculating Best Price. The comment letters show precisely the opposite—that Forest understood Best Price "to mean the single lowest price to a particular customer." Ex. 4, Yesner Letter at 13; *see also supra* at 17-19. That Forest communicated the position Relator now alleges is fraudulent directly to CMS negates any inference of fraudulent intent. *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 289 (4th Cir. 2002) ("[T]he government's knowledge of the facts underlying an allegedly false record or statement can negate the scienter required for an FCA violation."); *see also* Oral Argument Tr. 36:21-37:8, *U.S. ex rel. Schutte v. SuperValu, Inc.*, No. 21-1326 (U.S. Apr. 18, 2023) (government counsel conceding that if defendant "laid . . . out" its position to government regulators, "there wouldn't have been anything deceitful and there wouldn't have been any real danger that the [government] would be deceived").

Moreover, Relator is wrong that scienter "cannot be addressed at the motion to dismiss stage" post-*Schutte*. Response in Support Mot. for Sched. Order 2. *Schutte*'s holding that the FCA's scienter element focuses on a defendant's "knowledge and subjective beliefs," 598 U.S. at 749, does not relieve Relator of his burden at the pleading stage to plausibly plead scienter.[7] Relator must allege "specific facts," *Wilson*, 525 F.3d at 379, supporting his allegation that Forest

---

[7] Moreover, Relator's allegations stand in stark contrast to those in *Schutte*'s companion case, *U.S. ex rel. Proctor v. Safeway, Inc.*, where the complaint included specific details about communications between specific individuals that supported its allegation of scienter. *See U.S. ex rel. Proctor v. Safeway, Inc.*, No. 11-3406, 2016 WL 7017231, at *10-12 (C.D. Ill. Dec. 1, 2016).

either knew or was aware of a substantial risk that it was required to aggregate discounts provided to different customers, *see Schutte*, 598 U.S. at 751.  For the reasons discussed above, he has not done so.  The Amended Complaint should be dismissed for that reason.  *See U.S. ex rel. Complin v. N.C. Baptist Hosp.*, No. 09-cv-420, 2016 WL 7471311, at *20 (M.D.N.C. Dec. 28, 2016) (dismissing FCA claim where relator "fail[ed] to allege any factual content from which the Court could plausibly infer that the [defendants] possessed awareness of any information that disqualified these costs"), *aff'd*, 818 F. App'x 179 (4th Cir. 2020).

## III.    The Amended Complaint Also Should Be Dismissed Under Rule 9(b) Because It Fails to Plead Fraud With Particularity

In addition to Rule 12(b)(6)'s requirements, FCA claims must be pleaded with particularity under Rule 9(b).  *Nathan*, 707 F.3d at 455.  "Rule 9(b) requires the plaintiff to plead 'the who, what, when, where, and how of the alleged fraud' before the parties can proceed to discovery." Mem. Op. 23 (quoting *Wilson*, 525 U.S. at 379).  The Fourth Circuit "adhere[s] firmly" to the exacting "strictures of Rule 9(b)" in the FCA context, *Nathan*, 707 F.3d at 456, given "[t]he gravity of FCA liability," *U.S. ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200 (4th Cir. 2018).

Because the FCA imposes liability "not [for] the underlying fraudulent activity or [for] the government's wrongful payment, but [for] the 'claim for payment'" itself, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999) (citation omitted), a relator must plead with particularity both the "existence of a fraudulent scheme" *and* the actual submission of false claims, *Nathan*, 707 F.3d at 456-57.  More specifically, a relator must allege either "that *specific* false claims actually were presented to the government for payment," or "a pattern of conduct that would '*necessarily* have led to submission of false claims.'"  *Grant*, 912 F.3d at 197 (first emphasis added) (quoting *Nathan*, 707 F.3d at 457).  In other words, "when a defendant's actions . . . *could* have led, but *need not necessarily* have led, to the submission of

false claims," a relator must identify specific false claims (or here, a specific false price report) actually submitted to the government. *Nathan*, 707 F.3d at 457. Further, allegations made "on information and belief" generally are insufficient to satisfy Rule 9(b). *U.S. ex rel. Palmieri v. Alpharma, Inc.*, No. 10-1601, 2014 WL 1168953, at *11 (D. Md. Mar. 21, 2014), *vacated on other grounds*, 647 F. App'x 166 (4th Cir. 2016); *U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016) ("'[O]n information and belief' can mean as little as 'rumor has it.'"). The Amended Complaint should be dismissed because it falls well short of Rule 9(b)'s high bar.

As discussed, calculation of Best Price "is a complex enterprise requiring recourse to detailed information about the company's sales and pricing." *Astra USA*, 563 U.S. at 115. A relator asserting a pricing-related theory of FCA liability must plead such "detailed information" with particularity. Indeed, courts have repeatedly held that a relator must identify the actual price that was allegedly false and what the price should have been had the defendant properly factored in discounts or rebates. *See U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 791, 800 (11th Cir. 2014) (affirming dismissal of FCA pricing claim under Rule 9(b) because "the Complaint fails to allege with specificity what data was submitted . . . to the Government that was false or fraudulent"; "[t]here is no discussion of any particular pricing report and any assertions that discounts were not reported are conclusory and unsupported by specific facts"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 538 F. Supp. 2d 367, 382-85 (D. Mass. 2008) (relator's allegation "'on information and belief' that Defendant 'did not accurately and fully report the lower prices resulting from [a] hospital rebate program as required by the Medicaid and other government funded programs' . . . would . . . fail to satisfy the specificity requirements under [Rule] 9(b)"); *In re Pharm. Indus. Average Wholesale Price Litig.*, No. 01-12257, 2004 WL 2387125, at *3 (D. Mass. Oct. 26, 2004) (similar); Report & Recommendation at 7, *St. John LaCorte v. Merck & Co.,*

*Inc.*, No. 99-3807 (E.D. La. Aug. 26, 2003), *objections overruled*, 2004 WL 1373276 (June 16, 2004) (dismissing pricing-related claims where complaint "alleges no particular dates of report submissions and does not refer to a single instance where [defendant] submitted prices to the government that was distinct from those paid by the hospitals").

Here, although Relator offers hypotheticals about how the theoretical aggregation of discounts to different customers *could have* resulted in false pricing submissions, he pleads no facts related to Forest's actual prices to particular customers, nor does he plead how those prices actually resulted in false submissions. *See, e.g.*, Am. Compl. ¶¶ 67-68, 70. The complaint "must be supported by more than . . . 'hypotheses.'" *U.S. ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017) (citation omitted). "[C]onjecture about the hypothetical submission of a false claim . . . falls well short of the heightened pleading requirements of Rule 9(b)." *U.S. ex rel. Aryai v. Skanska*, No. 09-cv-5456, 2019 WL 1258938, at *9 (S.D.N.Y. Mar. 19, 2019); *see U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013) (affirming dismissal under Rule 9(b) where "[t]he sole 'specificity' in the complaint is an 'example' of an agreement to charge physicians $3.60 for a blood test, while later charging Medicare $10.60 for the same test" and relator did not allege "that these amounts are real rather than hypothetical").

Further, although Relator purports to calculate the alleged Medicaid overpayment for various drugs, his "calculations" are based on a series of unsupported assertions made on "information and belief," not on any facts of which Relator has personal knowledge. *See* Am. Compl. ¶¶ 72-118. Indeed, the phrase "information and belief" appears *190 times* in the Amended Complaint. Such "inherently speculative" and conclusory allegations are insufficient under Rule 9(b). *See Nathan*, 707 F.3d at 461 (where false claims were not "necessary result" of alleged

misconduct, relator's allegations that "some claims must have been presented to the government for payment" were insufficient); *see also U.S. ex rel. Moore v. Cardinal Fin. Co.*, No. 12-cv-1824, 2017 WL 1165952, at *13 (D. Md. Mar. 28, 2017) (dismissing FCA claims under Rule 9(b) that were supported only on "information and belief").

## IV.    Relator's State FCA Claims Also Should Be Dismissed

As this Court observed, "because the states construe their FCA statutes in accordance with the federal FCA standards, Relator's state-based FCA claims fail for the same reasons that his federal FCA claim fails." Mem. Op. 43.  Alternatively, if the Court dismisses Relator's federal FCA claims, it should decline to exercise supplemental jurisdiction over any remaining state claims. *See Hunt v. Branch Banking & Tr. Co.*, 480 F. App'x 730, 732 (4th Cir. 2012).[8]

## <u>CONCLUSION</u>

For these reasons, the Court should dismiss the Amended Complaint with prejudice.[9] Relator has already amended his complaint and failed to cure basic pleading deficiencies.  Further amendment will not change the text of the Medicaid Rebate Statute.  Moreover, it would be impossible for the factual gaps in the complaint to be filled given that Relator had been separated from Forest for four years at the time of his death and this matter is being litigated by his estate. Accordingly, further amendment would be futile. *See Wilson*, 525 F.3d at 376.

---

[8]  Relator conceded his FCA conspiracy claim (Count III) should be dismissed.  Mem. Op. 25.

[9] As Justice Thomas noted in dissenting from the Supreme Court's decision in *U.S. ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 449 (2023), "[t]here are substantial arguments that the [FCA's] qui tam device is inconsistent with Article II [of the U.S. Constitution] and that private relators may not represent the interests of the United States in litigation."  Forest does not raise a constitutional challenge to the FCA here but intends to assert a constitutional defense should it be required to file an answer.  Forest reserves its right to ask this Court to adjudicate the constitutional question on a subsequent motion for judgment on the pleadings.

Respectfully submitted,

*/s/ Emily Reeder-Ricchetti*
Emily Reeder-Ricchetti (No. 20605)
Christian D. Sheehan (*pro hac vice*)
Jayce L. Born (*pro hac vice*)
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-6000
(202) 942-5999 (facsimile)
emily.reeder-ricchetti@arnoldporter.com
christian.sheehan@arnoldporter.com
jayce.born@arnoldporter.com

Michael A. Rogoff (*pro hac vice*)
Paula R. Ramer (*pro hac vice*)
ARNOLD & PORTER
   KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000
(212) 836-8689 (facsimile)
michael.rogoff@arnoldporter.com
paula.ramer@arnoldporter.com

*Attorneys for Defendants Forest*
*Laboratories, LLC and Forest*
*Pharmaceuticals, Inc.*

October 16, 2023

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 16th day of October, 2023, I caused the foregoing to be served

by email through the Court's Electronic Case Filing system upon all attorneys of record.


*/s/ Emily Reeder-Ricchetti*
Emily Reeder-Ricchetti