# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES *ex rel.* DEBORAH SHELDON, | ) | |
| | ) | |
| Plaintiff-Relator, | ) | |
| | ) | |
| vs. | ) | Case No. 1:14-cv-02535-ELH |
| | ) | |
| FOREST LABORATORIES, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.    Relator Cannot Plausibly Allege Falsity ........................................................... 2

        A.    Forest Was Not Required to Aggregate Discounts Provided to Separate Customers .................................................................................... 2

        B.    Forest's Reasonable Interpretation of Best Price Cannot Be False Under the FCA .................................................................................. 10

II.    Relator Has Not Plausibly Alleged That Forest Acted With the Requisite Scienter ........ 12

III.    Relator Fails to Plead an Actual False Claim With Particularity ..................................... 14

CONCLUSION .......................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

<u>Cases</u>

*Am. Iron & Steel Inst. v. EPA,*
   886 F.2d 390 (D.C. Cir. 1989) ................................................................................8

*Astra USA, Inc. v. Santa Clara Cnty., Cal.,*
   563 U.S. 110 (2011) ..............................................................................................11

*Auer v. Robbins,*
   519 U.S. 452 (1997) ................................................................................................9

*Bowen v. Georgetown Univ. Hosp.,*
   488 U.S. 204 (1988) ................................................................................................9

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
   467 U.S. 837 (1984) ................................................................................................4

*Christopher v. SmithKline Beecham Corp.,*
   567 U.S. 142 (2012) ................................................................................................9

*Clay v. Johnson,*
   264 F.3d 744 (7th Cir. 2001) ..................................................................................7

*Commodity Futures Trading Comm'n v. Schor,*
   478 U.S. 833 (1986) ................................................................................................7

*Friends of Everglades v. S. Fla. Water Mgmt. Dist.,*
   570 F.3d 1210 (11th Cir. 2009) ..............................................................................3

*Gallina v. Wilkinson,*
   988 F.3d 137 (2d Cir. 2021) ....................................................................................7

*Hillman v. I.R.S.,*
   263 F.3d 338 (4th Cir. 2001) ..................................................................................4

*Hirschfeld v. ATF,*
   14 F.4th 322 (4th Cir. 2021) ..................................................................................3

*Howard Hughes Co. v. Comm'r,*
   805 F.3d 175 (5th Cir. 2015) ..................................................................................7

*N.J. Dep't of Env't Prot. v. EPA,*
   626 F.2d 1038 (D.C. Cir. 1980) ..............................................................................8

*Nat'l Ass'n of Clean Water Agencies v. EPA*,
    734 F.3d 1115 (D.C. Cir. 2013) ..........................................................................8

*S. Walk at Broadlands Homeowners Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
    713 F.3d 175 (4th Cir. 2013) ............................................................................14

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ............................................................................15

*U.S. ex rel. Aryai v. Skanska*,
    No. 09-cv-5456, 2019 WL 1258938 (S.D.N.Y. Mar. 19, 2019) .........................15

*U.S. ex rel. Drakeford v. Tuomey*,
    792 F.3d 364 (4th Cir. 2015) ............................................................................12

*U.S. ex rel. Folliard v. Comstor Corp.*,
    308 F. Supp. 3d 56 (D.D.C. 2018) ......................................................................5

*U.S. ex rel. Schutte v. SuperValu Inc.*,
    598 U.S. 739 (2023) .........................................................................2, 11, 12, 13

*U.S. ex rel. Seal 1 v. Lockheed Martin Corp.*,
    429 F. App'x 818 (11th Cir. 2011) ......................................................................4

*U.S. ex rel. Sheldon v. Allergan Sales, LLC*,
    24 F.4th 340 (4th Cir. 2022) .................................................................... *passim*

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ..............................................................1, 11, 12, 15

*United States v. Byrd*,
    No. ELH-11-657, 2022 WL 1120064 (D. Md. Apr. 13, 2022) .........................12

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
    579 U.S. 176 (2016) ............................................................................................1

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001) ............................................................................................7

## **Statutes**

42 U.S.C. § 1396r-8(c)(1)(C)(i) ...................................................................................2

## **Regulations**

42 C.F.R.
    § 447.505(a) (2007) ............................................................................................2

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................1, 15

**Other Authorities**

72 Fed. Reg. 39,142-01, 39,191 (July 17, 2007) ........................................................10

72 Fed. Reg. at 39,242-43 ...........................................................................................14

77 Fed. Reg. 5318 (Feb. 2, 2012) .................................................................................8

81 Fed. Reg. 5170-01, 5174 (Feb. 1, 2016) ...............................................................10

81 Fed. Reg. 5170-01, 5252 (Feb. 1, 2016) .................................................................6

81 Fed. Reg. 5209-14 ....................................................................................................8

88 Fed. Reg. 34,238 (May 26, 2023) ............................................................................7

88 Fed. Reg. at 34,292-93 .............................................................................................5

88 Fed. Reg. 34238 .......................................................................................................9

H.R. Rep. No. 101-881 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2017 .......................10

## INTRODUCTION

The plain text of the Medicaid Rebate Statute clearly defines Best Price to be the single lowest price available to any individual customer.  Straining to transform the straightforward statutory inquiry to require a composite aggregate-discount figure that is not a "price" available to *any* entity, Relator urges the Court to look at everything *but* the statutory text, which he does not even quote.  Relator points to a supposed "trifecta of adversity" long post-dating Forest's actions at issue (and Relator's complaint): a *proposed* CMS rule, a Department of Justice amicus brief, and the Supreme Court's vacatur in this case.  Relator Opp. to Forest Mot. to Dismiss 1-2 [Dkt. 117] ("Opp.").  But these recent post-hoc collateral sources, taken together or separately, have no bearing on the calculation of Best Price in general, let alone on *this case in particular*, which involves allegations from 2014 and earlier.  Forest's conduct at issue in this case was in full accord with the plain text of the Rebate Statute.

Even if there were a basis for Relator to dispute Forest's interpretation, Forest's submissions still were not false, because this Court already concluded Forest's interpretation was at a minimum reasonable.  That is fatal to Relator's claims for two reasons.  First, CMS *told* manufacturers that in the absence of specific guidance, they should make "reasonable assumptions" in calculating best price.  Second, Relator cannot demonstrate, as he must under Fourth Circuit precedent, that Forest's claims were objectively false.  At most, this case presents a "difference[] in interpretation growing out of a disputed legal question," *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 377 (4th Cir. 2008) (citation omitted), in a highly technical and complex area of law.  It is precisely the type of dispute in which the "essentially punitive" FCA has no place.  *See Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 182 (2016) (citation omitted).

Relator's arguments regarding scienter and Rule 9(b) likewise fail.  To adequately plead scienter, Relator must allege "specific facts," *Wilson*, 525 F.3d at 379, demonstrating either that Forest actually knew, or was aware of a substantial risk, that its Best Price reports were false, *see U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023).  Relator alleges nothing of the sort.  Forest—indeed, the whole pharmaceutical industry—told CMS how it understood Best Price, and CMS did not dispute it.  Further, Relator's reliance on a series of "information and belief" hypotheticals, without pleading any facts suggesting that they reflect reality, falls woefully short of Rule 9(b)'s high bar.  Lastly, because he fails to plead Forest's actual prices to actual customers, Relator cannot adequately plead that Forest's alleged misinterpretation of Best Price reports affected the rebates Forest paid under Medicaid.

For all of these reasons, the Court should dismiss the Amended Complaint.

## ARGUMENT

### I.  Relator Cannot Plausibly Allege Falsity

#### A.  Forest Was Not Required to Aggregate Discounts Provided to Separate Customers

The Medicaid Rebate Statute is clear: Best Price is "the lowest price *available from the manufacturer* during the rebate period *to any* wholesaler, retailer, provider, health maintenance organization, nonprofit entity, *or* governmental entity within the United States."  42 U.S.C. § 1396r-8(c)(1)(C)(i) (emphases added).  CMS regulations track the statutory definition: "the lowest price available from the manufacturer . . . to any [specified] entity in the United States."  42 C.F.R. § 447.505(a) (2007).  Forest's Medicaid Rebate Agreement similarly provides that "'Best Price' means . . . the lowest price at which the manufacturer sells the [drug] to any purchaser in the United States."  Forest Br. in Support of Mot. to Dismiss ("Forest Br."), Ex. 1, Forest Rebate Agmt. § I(d) (2002) [Dkt. 112-2].

As this Court and the Fourth Circuit panel concluded, the "plain and natural reading" of these provisions "is that Best Price means the lowest price made available by the manufacturer . . . to any one of the listed entities, but not to multiple entities."  Mem. Op. 35-36 (Feb. 5, 2021) [Dkt. 92]; *see U.S. ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340, 352 (4th Cir. 2022) (statute's "plain language conveys that Forest was not required to aggregate discounts given to separate customers"), *vacated on reh'g en banc*, 49 F.4th 873 (4th Cir. 2022).[1]  Unable to contest the statute's plain meaning, Relator instead opts to largely ignore the statutory text.

Aside from a few conclusory assertions that the statute "clear[ly]" means what Relator says, *e.g.*, Opp. 20, the entirety of Relator's statutory interpretation argument consists of a three-sentence paragraph focusing on the word "any."  *Id.* at 21.  But as this Court recognized, the Rebate Statute's use of the word "any" is not dispositive for either reading.  *See* Mem. Op. 37-38.  The Fourth Circuit panel went a step further, reasoning that the word "any," when used together with singular nouns as it is in the Rebate Statute, ordinarily means "a single member in a class," and therefore undermines Relator's position.  *Sheldon*, 24 F.4th at 351.  Read in totality, the statute's meaning is clear: by specifying a price "available from the manufacturer" "to any" specified entity, it describes only a bilateral transaction—*not* a hypothetical composite calculated by aggregating discounts to many separate entities and unavailable as a price to any actual entity.  *See* Mem. Op.

---

[1] Relator accuses Forest of misleading this Court by citing the Fourth Circuit panel's opinion without disclosing that it later was vacated.  Opp. 18.  Relator apparently overlooked the first seven pages of Forest's brief, *see* Forest Br. 2, 7, and Forest's briefing on Relator's request to commence discovery, *see* Dkt. 105 at 2, which clearly stated that the panel's decision was vacated by the *en banc* court (a fact of which this Court surely is already aware in any event).  Moreover, there is nothing improper, let alone "dangerous," Opp. 18, about considering the panel majority's statutory interpretation.  Although that decision is not binding, it reflects the well-reasoned views of two Fourth Circuit judges with respect to the meaning of Best Price—confirming, at minimum, that the reading is objectively reasonable.  *See, e.g.*, *Hirschfeld v. ATF*, 14 F.4th 322, 328 (4th Cir. 2021) (vacated panel opinions "remain available as a persuasive source"); *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009) (similar).

35-36; *Sheldon*, 24 F.4th at 351-53.  Because there is no "ambiguity in the language of [the Medicaid Rebate Statute], [this] court's analysis must end with the statute's plain language." *Hillman v. I.R.S.*, 263 F.3d 338, 342 (4th Cir. 2001); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) (where statutory text is clear, courts "must give effect to the unambiguously expressed intent of Congress").

Relator takes the opposite approach.  Undeterred by the lack of textual support for his position, Relator dedicates nearly the entirety of his brief to collateral sources that he says support his atextual, even *counter*-textual, reading of Best Price.  In particular, Relator relies on a recent CMS *proposed* rule regarding the definition of Best Price.  Relator's near-total reliance on this proposed rulemaking is misguided for several reasons.

*First*, CMS's proposed rule has no bearing on this case because it long post-dates Relator's allegations.  Relator's allegations concern Forest's price reporting between 2005 and 2014.  *See* Mem. Op. 39 n.11; *see also* Am. Compl. ¶¶ 72-118 [Dkt. 16] (calculating alleged damages for 2005 through 2014); *id.* ¶ 55 (acknowledging that Relator was terminated by Forest in 2014).  Post-2014 CMS guidance therefore has no import here.  The current proposed rule did not exist to inform Forest's interpretation of the Medicaid Rebate Statute at the time it submitted its pricing reports at issue in this case.  Nor did it exist to inform Relator's allegations in the Amended Complaint.  Thus, whatever value the proposed rule may or may not have in disputes going forward, it has no place in this case concerning conduct that occurred long ago.  Seemingly recognizing this, Relator argues that the relevant timeframe is "FY2005 through the present."  Opp. 4.  The Amended Complaint's two conclusory references to Forest's conduct continuing "to the present" are apparent vestiges of the original 2014 complaint; they are no basis for concluding that Relator (who left Forest in 2014 and passed away in 2018) can legitimately allege that Forest

submitted any false claims "to the present." *See U.S. ex rel. Seal 1 v. Lockheed Martin Corp.*, 429 F. App'x 818, 821 (11th Cir. 2011) (affirming dismissal of claim that defendant submitted false claims for "period after the end of [relator's] employment and continuing . . . to the present" because relator "failed to allege a single specific false statement" but instead "alleged based on information and belief that [defendant] continued to [make] misrepresent[ations]"); *U.S. ex rel. Folliard v. Comstor Corp.*, 308 F. Supp. 3d 56, 92 (D.D.C. 2018) (dismissing relator's claims for particular period because complaint provided no details "cover[ing] [that] time period").

*Second*, the proposed rule underscores that at the time of Forest's submissions—and the time Relator filed the Amended Complaint—CMS provided no specific guidance refuting Forest's plain-language reading.  The proposed rule demonstrates that CMS knows exactly how to convey the view that manufacturers are required to aggregate discounts provided to multiple customers: "Cumulative discounts, rebates or other arrangements *must be stacked* to determine a final price realized by the manufacturer for a [covered drug], including discounts, rebates, or other arrangements *provided to different best price eligible entities*."  88 Fed. Reg. at 34,292-93 (emphases added).  Although Relator claims the proposed language merely "reinforc[es] and reconfirm[s] [CMS's] position from the past 30 years," Opp. 11, CMS never previously said anything of the sort.  As this Court observed, CMS's prior guidance never "explicitly state[d] that manufacturers must aggregate discounts to different customers along the supply chain in a given sale."  Mem. Op. 40; *accord Sheldon*, 24 F.4th at 354 (concluding that CMS had not "spoke[n] directly to whether manufacturers were required to aggregate discounts given to separate entities

on the supply chain").[2]  To the contrary, as discussed at length in Forest's opening brief, CMS's prior guidance fully aligns with Forest's interpretation of Best Price.  *See* Forest Br. 15-19.

Relator points to CMS's statements in the preamble to the 2016 Affordable Care Act final rule, asserting that Forest "concede[d], as [it] must," that those statements are consistent with the most recent proposed rule.  Opp. 11.  Forest's opening brief actually said precisely the opposite. *See* Forest Br. 19 n.5.  In fact, the 2016 rulemaking does not support Relator's position.

In response to CMS's proposal for what would become its 2016 final rule, commenters noted that, unlike the Average Manufacturer Price ("AMP") rule, which stated that "manufacturers must 'stack' price concessions provided to any single best price-eligible entity on a single unit of a product," neither the preamble nor the text of the Best Price proposed rule addressed discount aggregation.  *See* 81 Fed. Reg. 5170-01, 5252 (Feb. 1, 2016).  Those commenters requested that CMS require manufacturers to combine price concessions for purposes of calculating Best Price only if the manufacturer had knowledge that the price concessions would flow to a single entity. *Id.*  Commenters also requested guidance as to the "degree of relationship" separate entities must have to be deemed a "single entity" for Best Price stacking purposes.  *Id.*  CMS responded:

> If a manufacturer offers multiple price concessions to two entities for the same drug transaction, *such as rebates to a [Pharmacy Benefit Manager] where the rebates are designed to adjust prices at the retail or provider level and discounts to a retail community pharmacy's final drug price*, all discounts related to that transaction which adjust the price *available from the manufacturer* should be considered in the manufacturer's final price of that drug when determining the best price to be reported for the drug.

---

[2] This Court's and the Fourth Circuit panel's construction of the prior CMS guidance belies Relator's assertion that "*[n]o reasonable person* can read CMS's comments and conclude that CMS is proposing a different interpretation" now than it previously did.  Opp. 11 (emphasis added).

*Id.* at 5252-53 (emphases added).  Although CMS declined to specify how related entities must be to trigger the requirement to aggregate discounts, it made clear that aggregation was required only when "price concessions or discounts . . . are *passed on*" from one entity to another.  *Id.* at 5253 (emphasis added).  Thus, at most, CMS suggested that discounts directed to separate entities should be aggregated in calculating Best Price only when they cumulatively adjust the price "available from the manufacturer" to a single entity at the aggregate-discount price.  That is not the meaning that Relator urges the Court to adopt, and it is not the one that CMS has now proposed.

Had CMS intended in 2016 (or any time before) to overhaul Best Price in the way it now suggests, it would have said so.  *See Gallina v. Wilkinson*, 988 F.3d 137, 146 (2d Cir. 2021) (an agency "d[oes] 'not alter the fundamental details of [its] regulatory scheme'" through "vague and ancillary term[s]" (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001))).  But it did not.  Instead, CMS issued guidance that "simply mirror[ed] the statutory language," *Sheldon*, 25 F.4th at 353, and "did not actually clarify whether there is a requirement to aggregate concessions from multiple entities in separate arrangements," Mem. Op. 40.  Thus, neither Forest nor any other manufacturer could have been expected to interpret CMS's prior guidance to adopt Relator's interpretation of Best Price.[3]

*Third*, CMS's proposed rulemaking is just that: a *proposal*.  88 Fed. Reg. 34,238 (May 26, 2023).  "It goes without saying that a proposed regulation does not represent an agency's considered interpretation of its statute . . . ."  *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845 (1986).  Relator is flat wrong that the proposed rule "confirmed to the entire industry that manufacturers have been required, and will continue to be required, to aggregate rebates."

---

[3] Nor could Congress have reasonably read the guidance in such a way.  Thus, Relator's argument regarding Congress's failure to amend the Medicaid Rebate Statue despite knowledge of CMS's rulemaking misses the mark.  *See* Opp. 23.

Opp. 1.  Proposed rules "confirm" nothing; they are merely one step in the process by which the agency arrives at a final position, and, as such, they are entitled to no deference.  *See, e.g.*, *Howard Hughes Co. v. Comm'r*, 805 F.3d 175, 185 (5th Cir. 2015) ("proposed regulations are entitled to no deference until final" (citation omitted)); *Clay v. Johnson*, 264 F.3d 744, 750 (7th Cir. 2001) ("a proposed regulation does not represent an agency's considered interpretation of its statute, and therefore is not entitled to deference" (citation omitted)).

A final rule may differ from the proposed rule, or the agency may decide not to issue a new rule at all.  *See, e.g.*, *Am. Iron & Steel Inst. v. EPA*, 886 F.2d 390, 400 (D.C. Cir. 1989) ("One logical outgrowth of a proposal is . . . to refrain from taking the proposed step.").  One key purpose of the notice-and-comment process is to allow agencies to consider the views of stakeholders before developing a final policy position.  *Nat'l Ass'n of Clean Water Agencies v. EPA*, 734 F.3d 1115, 1148 (D.C. Cir. 2013) ("A purpose of notice-and-comment provisions under the APA . . . is 'to ensure that affected parties have an opportunity to participate in and influence agency decision making at an early stage, when the agency is likely to give real consideration to alternative ideas.'" (quoting *N.J. Dep't of Env't Prot. v. EPA*, 626 F.2d 1038, 1049 (D.C. Cir. 1980))).  It is not uncommon for that process to cause the agency to change course.  For example, in 2012, CMS issued a proposed rule that would have fundamentally transformed how AMP is calculated under the Medicaid Rebate Statute.  *See* 77 Fed. Reg. 5318 (Feb. 2, 2012).  After considering numerous comments objecting to that drastic change, CMS decided not to implement the proposed change in its final rule.  *See* 81 Fed. Reg. 5209-14.

A similar course-correction could very well happen here, where CMS is again seeking to radically overhaul government price reporting requirements under Medicaid.  In response to CMS's proposed rulemaking, the agency received more than fifty comments addressing the new

proposed interpretation of Best Price.  *See* Posted Comments on Proposed Rule, Regulations.gov (last visited Jan. 19, 2024), http://tinyurl.com/38xh5wkn (browsing the phrase "Best Price"). Numerous stakeholders, from pharmaceutical manufacturers and wholesalers to pharmacy benefit managers, pharmacies, and payors, raised precisely the concerns discussed in Forest's opening brief.  *See, e.g.*, Ex. A, Comment of Johnson & Johnson at 3-6 (July 25, 2023); Ex. B, Comment of McKesson at 2-3 (July 25, 2023); Ex. C, Comment of PhRMA at 4-9 (July 25, 2023); Ex. D, Comment of Association for Accessible Medicines and its Biosimilars Council at 1-3 (July 25, 2023).  The sheer number of manufacturers that objected to CMS's proposed rule either on their own or through trade associations underscores that Forest's reading of Best Price is, and always has been, shared by the industry.  Following the close of the comment period, CMS extended the deadline to issue its final rule.  Unified Agenda for Docket ID CMS-2023-0092, Regulations.gov (last visited Jan. 19, 2024), http://tinyurl.com/yuph9h6b.   In addition, the U.S. House of Representatives passed a resolution that seeks to delay CMS's implementation of the proposed rule indefinitely.  *See* H.R. 5894, Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, 2024 ("[p]revents funds from being used to finalize, implement, or enforce" 88 Fed. Reg. 34238).  Accordingly, there is significant uncertainty about whether CMS will ever issue a new final rule along the lines of the current proposal.

*Finally*, even if a proposed rule were eligible for deference, it should receive none because, as discussed in Forest's opening brief, it essentially reflects the government's litigation position. *See* Forest Br. 20.   Relator does not even address, let alone contest, that "deference is . . . unwarranted when there is reason to suspect that [an] agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question,'" such as when the "agency's interpretation conflicts with a prior interpretation" or when "it appears that the interpretation is

nothing more than a 'convenient litigating position.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (quoting *Auer v. Robbins*, 519 U.S. 452, 462 (1997) and *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988)). Nor does he contest that CMS's proposed rule, in fact, reflects the litigating position of the real party in interest. For the same reasons, another "authority" Relator offers to support his preferred reading of Best Price—DOJ's amicus brief on appeal—is also entitled to no deference.

Relator's attempt to rewrite the Rebate Statute's legislative history to support his reading of Best Price also fails. Relator asserts that "Congress passed the Rebate Statute to ensure that manufacturers *did not profit more* from selling prescription drugs to Medicaid than they did from selling the same drugs to private entities." Opp. 5 (emphasis added). The legislative history, however, says nothing about a manufacturer's profit. Instead, it reflects that Congress's intent was to "give Medicaid the benefit of the best price for which a manufacturer sells a prescription drug to any public or private purchaser." H.R. Rep. No. 101-881 at 96-97 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2017, 2108-09. For that reason, this Court correctly concluded that the legislative history "supports [Forest's] reading that the Best Price is the lowest price that a manufacturer makes available to any particular purchaser in order to put Medicaid on the same footing as a manufacturer's lowest paying customer, not a combination of its customers." Mem. Op. 39.

For all of these reasons, Forest was not required to aggregate discounts provided to separate entities along the distribution chain. The Court should dismiss the Amended Complaint because Forest correctly interpreted Best Price.

## B.    Forest's Reasonable Interpretation of Best Price Cannot Be False Under the FCA

Even if Relator had offered a legitimate basis to dispute Forest's interpretation of Best Price, that still would not be enough to state a claim for fraud under the FCA. At most, this case

presents a dispute over the interpretation of a legal provision that *expressly permits* manufacturers to make "reasonable assumptions." *See* Forest Br., Ex. 1., Forest Rebate Agmt. § II(i); *see also, e.g.*, 72 Fed. Reg. 39,142-01, 39,191 (July 17, 2007); 81 Fed. Reg. 5170-01, 5174 (Feb. 1, 2016). This Court already held that Forest's reading of the Rebate Statute was reasonable, Mem. Op. 35-42, and thus Forest's pricing submissions founded upon that reading cannot be false.[4]

A pharmaceutical manufacturer's obligation under the Rebate Agreement is to calculate and report Best Price according to the Rebate Statute. *See* Forest Br., Ex. 1, Forest Rebate Agmt. § II(i). To guide manufacturers in that "complex enterprise," *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 115 (2011), the Rebate Agreement provides that "[i]n the absence of specific guidance in [the Rebate Statute], Federal regulations[,] and the terms of this agreement, the Manufacturer may make reasonable assumptions in its calculations of AMP and Best Price," Forest Br., Ex. 1, Forest Rebate Agmt. § II(i). Here, at a minimum, there was an "absence of specific guidance" that aggregation of discounts to separate customers was required. *See Sheldon*, 24 F.4th at 354-55 (noting that CMS guidance did not "sp[eak] directly to whether manufacturers were required to aggregate discounts given to separate entities on the supply chain"); *accord* Mem. Op. 40, 42. Therefore, by the express terms of the Rebate Agreement, Forest was permitted to make a reasonable assumption in determining how multiple discounts should be treated in calculating Best Price. So long as Forest's assumption—that it was not required to aggregate discounts provided to separate Best Price-eligible customers—was reasonable, its pricing submissions complied with the applicable legal requirements and were not false under the FCA.

---

[4] Relator did not seek Supreme Court review of this Court's falsity determination, and the Supreme Court remanded the case for further consideration in light of *Schutte*, which addressed only scienter. Therefore, there is no reason for this Court even to reconsider its prior ruling on falsity. Nonetheless, Forest discusses below why the Court's prior decision was correct.

Even if the regulatory scheme itself did not dictate this outcome, the law in this circuit would, because "imprecise statements or differences in interpretation growing out of a disputed legal question are . . . not false under the FCA." *Wilson*, 525 F.3d at 377 (citation omitted). Relator argues that *Wilson*'s objective falsehood requirement is "defunct" in light of *Schutte* and *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364 (4th Cir. 2015). Opp. 24-25. But that plainly is not the case. *Schutte* was not about the FCA's falsity requirement at all; the case was entirely about scienter. *See* Forest Br. 24. And *Drakeford* addressed a situation in which there was no ambiguity regarding whether the defendant had violated the statute. 792 F.3d at 383-84 & n.14 (rejecting defendant's reliance on *Wilson* because *Wilson* was about a disputed legal question, not an "either/or" proposition). As a result, *Drakeford* did not analyze whether the provision at issue was subject to another interpretation (and therefore could not be false).[5] In short, *Wilson* remains good law and this Court must continue to follow it. *See United States v. Byrd*, No. ELH-11-657, 2022 WL 1120064, at *28 (D. Md. Apr. 13, 2022) ("[A] district court is bound by the precedent set by its Circuit Court of Appeals, until such precedent is overruled by the appellate court or the United States Supreme Court." (citation omitted)). *Wilson* requires dismissal of the Amended Complaint today for the same reasons the Court articulated in its prior opinion.

## II.     Relator Has Not Plausibly Alleged That Forest Acted With the Requisite Scienter

As an initial matter, Relator cites nothing to support his assertion that scienter is "not appropriate for resolution at the motion to dismiss stage," Opp. 25, and *Schutte* said no such thing. *Schutte*'s holding that the FCA's scienter element focuses on a defendant's "knowledge and subjective beliefs," 598 U.S. at 749, does not relieve Relator of his burden at the pleading stage to

---

[5] Additionally, neither case addressed a legal regime in which the government explicitly told the defendants to make reasonable assumptions about the operation of the governing statute, like Forest was instructed to do here.

plausibly plead scienter.  To satisfy that burden, Relator must allege "specific facts," *Wilson*, 525 F.3d at 379, supporting his allegation that Forest either knew or was aware of a substantial risk that its pricing submissions were false, *see Schutte*, 598 U.S. at 751.  Relator has not done so, *see* Forest Br. 24-27, and his efforts to defend his threadbare scienter allegations are unavailing.

Relator first seems to conflate falsity with scienter, arguing that Forest had actual knowledge that its Best Price submissions were false, or at least acted with reckless disregard as to their falsity, because the text of the Rebate Statute and/or Rebate Agreement required Forest to aggregate discounts to separate entities.  Opp. 26, 28-29.  Of course, if that were all that were required to prove actual knowledge—the most stringent of the FCA's scienter standards—there would be no need for a scienter requirement at all.  As for reckless disregard, Relator's assertion that Forest acted recklessly in light of the text of the Rebate Agreement effectively asks this Court to adopt an "objective recklessness" standard.  In *Schutte*, the Supreme Court explicitly declined to weigh in on whether such a theory is viable under the FCA, *see* 598 U.S. at 751 n.5, and there is no need for this Court to reach that question because this Court rightfully concluded that Forest's reading of the Rebate Statute was objectively *reasonable* (i.e., not objectively reckless), Mem. Op. 35-42; *Sheldon*, 24 F.4th at 353.

Relator also argues that Forest's internal audit of its commercial business, and its communications about that audit, show that Forest acted with scienter.  But as discussed in Forest's opening brief, Relator does not identify a single document, conversation, communication, or other information that suggests Forest's implementation of the audit was driven by, or in any way related to, price reporting, let alone how an audit designed to eliminate duplicate rebates demonstrates Forest's knowledge that it was required to aggregate discounts to separate entities in calculating Best Price.  *See* Forest Br. 25.

Finally, Relator continues to blatantly mischaracterize statements made in connection with 2006/2007 CMS rulemaking.  Relator asserts that CMS rejected Forest's interpretation of Best Price and, "when [Forest] did not get the response [it] wanted, [Forest] simply cut off all communications with CMS."  Opp. 27-28.  Both assertions are verifiably false.

CMS did not reject Forest's reading of the Rebate Statute.  Although Forest and other pharmaceutical manufacturers asked CMS to "clarify" *preamble language* in its 2006 proposed rule, no one "asked CMS to change the regulations."  Opp. 27.  The manufacturers' comments stated that the preamble language "must be read" consistent with the longstanding interpretation of Best Price "to mean that Best Price is the lowest price realized by the manufacturer net of all price concessions to a specific Best Price-eligible customer."  Forest Br., Ex. 7, PhRMA Letter to CMS at 17 (Feb. 20, 2007) [Dkt. 112-8].  The 2007 final rule did not reject that position.  To the contrary, the 2007 final rule adopted in all material respects the proposed rule's Best Price definition, which itself adopted the Rebate Agreement's definition.  72 Fed. Reg. at 39,242-43.  That, in turn, essentially adopted the statutory definition, which this Court recognized is "natural[ly]" read to refer to "the lowest price made available by the manufacturer . . . to any one of the listed entities, but not to multiple entities."  Mem. Op. 36.

Further, the Amended Complaint did not allege that Forest "cut off all communications with CMS," Opp. 28, let alone identify any specific facts to support such an assertion.  Relator cannot salvage his deficient scienter allegations through briefing.  *S. Walk at Broadlands Homeowners Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184-85 (4th Cir. 2013).

## III.    Relator Fails to Plead an Actual False Claim With Particularity

Relator does not meaningfully address Forest's argument that the Amended Complaint fails to allege the actual submission of a false claim with particularity.  *See* Opp. 30.  Nor does he address the cases cited in Forest's opening brief holding that, in a drug pricing-related FCA case,

the relator must identify the actual price that was allegedly false and what the price should have been.  Instead, he simply points to the length of his complaint and asserts that it "identifies examples of specific drugs and specific calculations for specific years." *Id.*  But "[a] complaint can be long-winded, even prolix, without pleading with particularity.  Indeed, such a garrulous style is not an uncommon mask for an absence of detail." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (citation omitted).  As for the supposed examples, they do not refer to actual drug prices or actual pricing submissions; they are hypotheticals that have no basis in knowledge or fact. *See* Opp. 2-3.  "[C]onjecture about the hypothetical submission of a false claim . . . falls well short of the heightened pleading requirements of Rule 9(b)." *U.S. ex rel. Aryai v. Skanska*, No. 09-cv-5456, 2019 WL 1258938, at *9 (S.D.N.Y. Mar. 19, 2019).  Accordingly, the Court should dismiss the Amended Complaint under Rule 9(b).

## CONCLUSION

For these reasons and those discussed in Forest's opening brief, the Court should dismiss the Amended Complaint with prejudice because further amendment would be futile.  *See* Forest Br. 30 (citing *Wilson*, 525 F.3d at 376).

[Signature Block on Next Page]

Respectfully submitted,

*/s/ Emily Reeder-Ricchetti*
Emily Reeder-Ricchetti (No. 20605)
Christian D. Sheehan (*pro hac vice*)
Jayce L. Born (*pro hac vice*)
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-6000
(202) 942-5999 (facsimile)
emily.reeder-ricchetti@arnoldporter.com
christian.sheehan@arnoldporter.com
jayce.born@arnoldporter.com

Michael A. Rogoff (*pro hac vice*)
Paula R. Ramer (*pro hac vice*)
ARNOLD & PORTER
   KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000
(212) 836-8689 (facsimile)
michael.rogoff@arnoldporter.com
paula.ramer@arnoldporter.com

*Attorneys for Defendants Forest*
*Laboratories, LLC and Forest*
*Pharmaceuticals, Inc.*

January 23, 2024

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 23rd day of January, 2024, I caused the foregoing to be served by email through the Court's Electronic Case Filing system upon all attorneys of record.


*/s/ Emily Reeder-Ricchetti*
Emily Reeder-Ricchetti