# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ) <br> DEBORAH SHELDON, as EXECUTRIX ) <br> OF THE ESTATE OF RELATOR TROY ) <br> SHELDON, ) <br> ) <br> Plaintiff, ) <br> ) <br> -v- ) <br> ) <br> FOREST LABORATORIES, LLC, et al. ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:14-cv-02535-ELH <br><br> (Judge Ellen L. Hollander) |

# PLAINTIFF/RELATOR DEBORAH SHELDON'S
# RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY
# (Dkt. 121)

Plaintiff/Relator Deborah Sheldon ("Plaintiff") submits this Response to Defendants' Notice of Supplemental Authority (Dkt. 121). Respectfully, CMS' delay in issuing additional, confirmatory rule-making does nothing to change Plaintiff's Opposition (Dkt. 117) to Defendants Motion to Dismiss (Dkt. 112) and the existing statutory and regulatory framework outlined in the Opposition.

Regardless of a delay in additional rulemaking, the "Best Price" Rebate Statute is still the same (42 U.S.C. § 1396r-8(c)(1)(C); 56 Fed. Reg. 7049 (Feb. 21, 1991)); the Rebate Statute still requires the amount of rebate owed by Forest be calculated as AMP as a dollar minus the Best Price as a dollar amount; and the Rebate Statute still requires that the manufacturer calculate Best Price as "the lowest price available from the manufacturer to any wholesaler, retailer, nonprofit entity, or governmental entity" and still requires that Best Price "shall be inclusive of cash discounts, free goods, volume discounts, and rebates….." 42 U.S.C. § 1396r-8(c)(1)(C) (1991); *see also* 42 U.S.C. § 1396r-8(c)(1)(C) (2020).

Regardless of a delay in additional rulemaking, the legislative intent of the Rebate Statute remains the same: the Rebate Statute is intended to ensure that manufacturers do not profit more from selling prescription drugs to Medicaid than they did from selling the same prescription drugs to private entities. *See* 136 Cong. Rec. S 12954 (1990).

Regardless of a delay in additional rulemaking, the Rebate Agreement that effectuates the Rebate Statute, signed by Defendants, is still the same, and Section I(d) of the Rebate Agreement still specifies that a manufacturer's Best Price should be "calculated to include *all* sales and associated rebates, discounts and other price concessions: "The best price for a quarter shall be adjusted by the Manufacturer if cumulative discounts, rebates or other arrangements subsequently adjust the prices actually realized." 56 Fed. Reg. 7049 (Feb. 21, 1991); s*ee Astra USA, Inc. v.*

*Santa Clara County*, 563 U.S. 110, 118 (2011) (The Rebate Statute's obligations and the "contractual obligations, in short, are one and the same").

Regardless of a delay in additional rulemaking, CMS's 30 prior years of guidance and promulgated regulations through rulemaking are also still the same and continue to confirm that "Best Price" under the Rebate Statute and Rebate Agreement means the price actually realized by a drug manufacturer for a single drug unit after aggregating any and all price concessions to all entities. *See* Medicaid Drug Rebate Program Release No. 2 (Aug. 9, 1991); Medicaid Drug Program Release No. 14 (Dec. 21, 1994); 71 Fed. Reg. 77174 (Dec. 22, 2006); 72 Fed. Reg. at 39199 (July 17, 2007); 81 Fed. Reg. 5170, 5252–53 (Feb. 1, 2016) (emphasis added). CMS still said during the 2016 rulemaking and adoption of the 2016 rule: "[a] manufacturer is responsible for including all price concessions that *adjust the price realized by the manufacturer* for the drug in its determination of best price," including when price concessions are given to "two entities." *Id.* (emphasis added).

When CMS proposed its current rulemaking, CMS specifically stated:

We interpreted this section expansively as the statute refers to a manufacturer's lowest price "available" "to any" entity on this statutory list. That is, if a manufacturer provides a discount to a wholesaler, then a rebate to the provider who dispensed the drug unit, and then another rebate to the insurer who covered that drug unit, CMS has concluded that "best price" must include (or "stack") all the discounts and rebates associated with the final price, even if the entity did not buy the drug directly from the manufacturer. By stacking, best price reflects the lowest realized price at which the manufacturer made that drug unit available. We also note that manufacturers are required to take rebates into account for multiple entities when calculating AMP, and for logical reasons, best price should do so as well, since including them in AMP and not accounting for them in best price could result in AMP being lower than best price.

**Therefore, <u>to remove any potential doubt prospectively</u>, we are proposing to revise § 447.505(d)(3) <u>to add to the existing regulatory statement</u> that the manufacturer must adjust the best price for a covered outpatient drug for a rebate period if cumulative discounts, rebates or other arrangements to best price eligible entities subsequently adjust the price available from the**

2

> **manufacturer for the drug. We are adding the clarifying statement that cumulative discounts, rebates or other arrangements must be stacked to generate a final price realized by the manufacturer for a covered outpatient drug, <u>including discounts, rebates or other arrangements provided to different best price eligible entities.</u>**

https://www.federalregister.gov/documents/2023/05/26/2023-10934/medicaid-program-misclassification-of-drugs-program-administration-and-program-integrity-updates (emphasis added).

CMS was not proposing a new or different interpretation of the Rebate Statute in the current rulemaking process – it was seeking to clarify and confirm its 30 years of consistent interpretation in response to this Court's ruling several years ago. CMS was seeking to "add to the existing regulatory statement" and "to remove any doubt prospectively" – not create a prospective-only interpretation of the Rebate Statute. And we know this because Defendants conceded that CMS' current rulemaking is consistent with CMS' 2016 CMS commentary (Dkt. 112, Defs. Memo. at 19). A delay in the rulemaking process to "add to the existing regulatory statement" does not change the relevance of the 30 year existing regulatory statement, and a delay in the rulemaking process does not undermine the existing statutory and regulatory framework outlined extensively in Plaintiffs' Opposition (Dkt. 117).

It is critical to remind the Court – this is not an academic exercise in statutory interpretation. The Court is not required to game out every potential rebate scheme for every manufacturer under the Rebate Statute – the Court is required to look at the Rebate Statute, and the Rebate Agreement and the regulatory framework, and apply it to the facts and schemes outlined in Plaintiffs' Amended Complaint. The Court must accept Plaintiff's factual allegations as true and must draw all reasonable inferences in favor of the plaintiff. *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576, 587-88 (D. Md. 2019). It is not enough to generically discuss the Rebate Statute – the Court is required to assume that the factual allegations in Plaintiffs' Amended

3

Complaint are true and determine whether Plaintiff has asserted viable claims for the violation of the Rebate Statute, and the Rebate Agreement and the regulatory framework, that are reasonably plausible at the motion to dismiss stage. And after *United States ex rel. Schutte v. SuperValu, Inc.*, 598 U.S. 739 (2023), it is more important than ever for the Court to look specifically to the allegations in the Amended Complaint regarding Forest's scienter, and not to the scienter of any other manufacturer or hypothetical "reasonable manufacturer." To date, neither Forest in its briefs nor this Court has actually applied the facts of this case to the Rebate Statute, Rebate Agreement and 30 years of CMS rulemaking.

In Plaintiff's 117 page Amended Complaint, Plaintiff alleges that Defendants, with actual knowledge of their Best Price obligations, failed to comply with their obligations and defrauded the Government of more than $680 million (Dkt. 16, Am. Comp. at 1-10, ¶¶ 54-121). Plaintiff alleges falsity, scienter, and a relevant timeframe. Plaintiff specifically alleges that Defendants provided two rebates for a particular pill dispensed to a patient at a long term care facility ((a) an 20 cent rebate to Humana or the commercial insurer of the patient; and (b) an 12 cent rebate to the pharmacy at the long term care facility (Pharmerica)); that this actual price realized for the particular pill was therefore 68 cents (not the original $1 price and not 80 cents or 88 cents); and that Defendants did not report this actual price realized and did not include both discounts/rebates in calculating their Best Price for the particular drug, knowing that this was wrong and a violation of the Rebate Statute. The Rebate Statute itself required Forest to calculate the States' Medicaid rebate as **"the difference between the average manufacturer price and the best price."** 42 U.S.C.A. § 1396r-8(c) (emphasis added). In other words, the Court must calculate both AMP and Best Price as dollar amounts. (Dkt. 117, Opp. at 14-17). Under Forest's scheme alleged in the Complaint, the Court must combine prices of at least two unrelated entities to calculate Best Price

4

as a dollar amount because Forest paid rebates to Humana and Pharmerica to make a single sale of a single pill.  No amount of rulemaking can change the *statutory formula* or the fact that Forest underpaid rebates to the States using the *statutory formula*.  Assuming the factual allegations in Plaintiff's Amended Complaint are true, Plaintiff has adequately pled FCA claims that cannot be dismissed at the motion to dismiss stage.[1]

Plaintiff's Opposition was not a "near-total reliance on the proposed rulemaking." (Dkt. 121).  Far from it.  Plaintiff's Opposition relied on the Rebate Statute; the Rebate Agreement; 30 years of CMS regulatory guidance and rulemaking; 879 paragraphs in her 117 page Amended Complaint; the Supreme Court's recent decision in *Schutte*; and additional case law.  A delay in the most recent CMS rule-making process does not diminish the strength of relying on these other authorities, including the past 30 years of consistent CMS rule-making.

For the foregoing reasons and the reasons identified in Plaintiff's Opposition (Dkt. 117), Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss at its earliest opportunity.

May 28, 2024                               Respectfully submitted,

                                           */s/ Joel D. Hesch*
                                           Joel D. Hesch, Esq. (Md. Bar 1988; D. Md. 06350)
                                           THE HESCH FIRM, LLC
                                           3540 Ridgecroft Dr.
                                           Lynchburg, VA 24503
                                           Phone: (434) 229-8677
                                           Email: joel@howtoreportfraud.com

                                           Joseph M. Callow, Jr. (Ohio Bar No. 0061814)
                                           Gregory M. Utter (Ohio Bar No. 0032528)

---

[1] The position of the United States (who remains the real party in interest even in a declined case) cannot be more clear from its Fourth Circuit amicus brief – Plaintiff has adequately pled falsity and scienter such that dismissal at the motion to dismiss stage was, and is, inappropriate. *See Mar. 25, 2021 United States Amicus Brief in the Fourth Circuit at* 15-19 (emphasis added).

>CALLOW + UTTER LAW GROUP
>8044 Montgomery Road, Suite 170
>Cincinnati, Ohio 45236
>Phone: (513) 378-0141
>jcallow@callowandutter.com
>gmutter@callowandutter.com
>
>*Attorneys for Deborah Sheldon, as Executrix of the Estate of Relator Troy Sheldon*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was electronically filed using the Court's ECF system on May 28, 2024. Parties will receive notice through the ECF system.

*/s/ Joel D. Hesch*
Joel D. Hesch
