**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

UNITED STATES *ex rel.* DEBORAH
SHELDON,

    *Plaintiffs*,

    *v.*

ALLERGAN SALES, LLC

    *Defendant*.

Civil Action No. ELH-14-2535

**MEMORANDUM OPINION**

This *qui tam* case concerns an alleged fraudulent reporting scheme under the Medicaid Rebate Statute of 1990 (the "Rebate Statute"). *See* 42 U.S.C. § 1396r-8.[1] Medicaid "provides health care to millions of low-income Americans through a cooperative federal and state program. 42 U.S.C. § 1395 *et seq.*" *United States ex rel. Sheldon v. Allergan Sales, LLC*, 170 F.4th 227, 234 (4th Cir. 2026) (*Sheldon VII*); *see id.* at 232; *see also Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 650 (2003).

Congress enacted the Rebate Statute in order "[t]o make sure that Medicaid programs receive 'the benefit of the best price for which a manufacturer sells a prescription drug to any public or private purchaser.'" *United States ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340, 345 (4th Cir. 2022) (*Sheldon II*) (citation omitted); *see* ECF 16, ¶ 26. It requires drug manufacturers "to report rebates and other discounts they provide to private companies" so as "to ensure that Medicaid receives the benefit of the lowest prices that [drug] manufacturers charge private companies." *Sheldon VII*, 170 F. 4th at 232. In other words, Congress "tied the cost of

---

[1] "Qui tam is short for *'qui tam pro domino rege quam pro se ipso in hac parte sequitur,'* which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 463 n.2 (2007).

drugs prescribed to Medicaid patients to the lowest price offered by the manufacturers for drugs on the private market." *Id.* at 234; *see* 42 U.S.C. § 1396r-8.

Pursuant to the Rebate Statute, a drug manufacturer seeking coverage under Medicaid "must enter into a Rebate Agreement with the Secretary of HHS [*i.e.*, Department of Health and Human Services] in order for its covered outpatient drugs" to qualify for payment under Medicaid. ECF 16, ¶ 29 (citing 42 U.S.C. § 1396r-8(a)(1)); *see* Drug Rebate Agreement, 56 Fed. Reg. 7049, 7050 (Feb. 21, 1991) ("Rebate Agreement").  The Rebate Agreement obligates the manufacturer to adjust the "Best Price" if "cumulative discounts, rebates, or other arrangements subsequently adjust the prices actually realized." 56 Fed. Reg. at 7050; *see Sheldon VII,* 170 F.4th at 234–35.

"Best Price" is at the center of this litigation, which was initiated almost twelve years ago, on August 11, 2014, pursuant to the False Claims Act ("FCA" or the "Act"), 31 U.S.C. § 3729 *et seq.*, and analogous State statutes.  Troy Sheldon, as Relator,[2] on behalf of the United States as well as numerous states and the District of Columbia (collectively, the "*Qui Tam* States"),[3] filed suit against his former employer, Forest Laboratories, LLC, as well as Forest Pharmaceuticals, Inc. and Allergan, PLC, alleging that defendants had engaged in fraud in calculating Best Price. ECF 1.

---

[2] Mr. Sheldon died on November 10, 2017.  His wife, Deborah Sheldon, as Executrix of the Estate of Troy Sheldon, was substituted as the plaintiff on March 19, 2018.  ECF 31 (Order Granting Motion to Substitute Party).  I shall refer to the plaintiff generically as "Sheldon," the "Relator," or the "plaintiff."  I shall refer to Troy Sheldon as "Mr. Sheldon."

[3] The *qui tam* states are California; Colorado; Connecticut; Florida; Georgia; Hawaii; Illinois; Indiana; Iowa; Louisiana; the Commonwealth of Massachusetts; Michigan; Minnesota; Montana; Nevada; New Hampshire; New Jersey; New Mexico; New York; North Carolina; Oklahoma; Rhode Island; Tennessee; Texas; Vermont; the Commonwealth of Virginia; Washington; and Wisconsin.  The District of Columbia is also a *qui tam* plaintiff.  Maryland and Delaware were *qui tam* plaintiffs, but withdrew from the suit.  *See Docket*; ECF 46.

That same year, Forest Laboratories, LLC was acquired by Actavis, PC, an entity that subsequently changed its name to Allergan Sales, LLC ("Allergan"). *Sheldon VII*, 170 F.4th at 235 n.3. By Order of March 3, 2020 (ECF 75), Allergan, PLC was dismissed from the case.[4] In addition, Allergan was substituted for the Forest entities as the sole defendant. *See also* ECF 71.[5]

The Amended Complaint, which is the operative pleading, was filed on August 30, 2016. ECF 16. In the 179-page pleading, Sheldon alleges that between 2005 and 2014, Allergan, "a leading manufacturer of pharmaceutical drugs," defrauded the government and the *Qui Tam* States of more than $680 million. *Id.* at 6. In particular, Sheldon claims that Allergan failed to include certain customer price concessions in its calculation of "Best Price,"[6] as that term is used in 42 U.S.C. § 1396r-8(b)(3)(A)(i)(II) and related regulations. *Id*.

The Rebate Statute defines "Best Price" as follows, 42 U.S.C. § 1396r-8(c)(1)(C)(i):

The term "best price" means, with respect to a single source drug or innovator multiple source drug of a manufacturer (including the lowest price available to any entity for any such drug of a manufacturer that is sold under a new drug application approved under section 505(c) of the Federal Food, Drug, and Cosmetic Act), the lowest price available from the manufacturer during the rebate period to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity, or governmental entity within the United States . . . .

According to the Relator, defendant "paid rebates to two separate customers on the same dispensed drug units provided to the same patient." ECF 16 at 6; *see also id.* ¶¶ 60, 61, 66–68.

---

[4]  According to the parties, as of January 1, 2018, Forest Laboratories, LLC and Forest Pharmaceuticals, Inc. merged into Allergan and "no longer exist." ECF 71, ¶ 3. Allergan is the successor in interest to the two Forest entities. *Id.*

[5] This Court previously referred to the defendant as "Forest." *See*, *e.g.*, ECF 92 at 1; ECF 135 at 1. But, I have decided to adopt the terminology used by the defendant. *See*, *e.g.*, ECF 147 at 5; ECF 150 at 1; ECF 152 at 1. Therefore, I shall refer to the defendant as Allergan, not Forest, except for an occasional quotation.

[6] Following the example of Sheldon in the Amended Complaint, I shall capitalize "Best Price," unless the term appears otherwise in quoted material.

The Relator argues that Allergan was obligated to calculate "Best Price" by aggregating, or adding, the two rebates. *Id.* at 6–7.

The government conducted a lengthy investigation to determine whether to intervene in the case. Ultimately, on September 17, 2019, the government declined to intervene. ECF 41. Since then, the defense has filed two motions to dismiss, which led to two rulings by this Court and multiple appeals. ECF 72; ECF 86; ECF 87; ECF 88; ECF 92; ECF 112; ECF 130; ECF 131; ECF 132; ECF 135.

This Memorandum Opinion addresses a motion filed by defendant, pursuant to Fed. R. Civ. P. 54(b). *See* ECF 150. There, the defendant asks the Court to reconsider its Order of May 7, 2026 (ECF 148), in which the Court denied the defense's request to submit a third motion to dismiss. The motion (ECF 150) is supported by a memorandum (ECF 150-1) (collectively, the "Motion") and three exhibits. ECF 150-2; ECF 150-3; ECF 150-4. Plaintiff opposes the Motion. ECF 151. Defendant replied. ECF 152.

No hearing is necessary to decide the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I.    Factual and Procedural Summary

The parties are familiar with the factual and procedural history. Therefore, I need not recount it in detail. Instead, I incorporate by reference the factual and procedural summaries as set forth by the Fourth Circuit in *Sheldon VII* and in my prior opinions. *See* ECF 92; ECF 135. I shall restate the factual and procedural summary only to the extent necessary for context.

Mr. Sheldon worked for Forest from the 1990s until he was terminated in 2014. ECF 16, ¶ 55. He claimed that he was "directly involved" in negotiating discounts, rebates, and other incentives to drug purchasers. *Id.*

"The rebates and discounts that drug manufacturers provide play a significant role in generating sales." *Sheldon VII,* 170 F.4th at 236. By way of example, in the commercial market, Allergan may bargain with a private insurance company to place its drugs on a "list of the company's preferred drugs." *Id.* "In exchange, [Allergan] pays the insurance company a rebate or other discount for each drug that the private insurance company purchases from [Allergan]." *Id.* Allergan, as a drug manufacturer, "is then required to account for these rebates and other discounts in its calculation of the Best Price for each drug." *Id.*

Sheldon claims that Allergan "routinely conducted business with multiple entities on a single drug transaction." *Id.* Therefore, "[m]ultiple rebates and discounts . . . were often provided for a single drug[.]" *Id.* According to Relator, "through these multiple transactions to different purchasers, [Allergan] essentially 'stacked' rebates and other discounts for the same drug." *Id.* But, "[w]hen reporting its Best Price to CMS [*i.e.*, Centers for Medicare and Medicaid Services]," Allergan "would report only the highest rebate or other discount it gave to a single entity for each individual drug, rather than combining the total amount of rebates and discounts provided to all entities on the same drug." *Id.*

In *Sheldon VII,* the Fourth Circuit provided a helpful illustration of Allergan's use of these rebates in its drug sales. It said, *id.* at 236–37 (emphasis in original; alterations added):

> [A] patient with private insurance was staying at a care facility ("Pharmacy Provider Facility"). The Pharmacy Provider Facility determined that the patient needs an antidepressant. To incentivize both the Pharmacy Provider Facility and the patient's private health insurer to prescribe and pay for an antidepressant manufactured by [Allergan] rather than a competitor, [Allergan] provided rebates to both the Pharmacy Provider Facility and to the private insurance company. [Allergan] gave the Pharmacy Provider Facility a 15% rebate for the drug and then paid an additional 18% rebate to a private insurance company for the *same* drug prescribed to the *same* patient. Thus, all told, [Allergan] provided 33% worth of rebates for the same drug. The price "actually realized" by [Allergan] for the individual drug was therefore only 67% of the total market price. In reporting its Best Price for that drug to CMS, however, [Allergan] reported the price after

5

applying only the larger of the two rebates (i.e., the 18% rebate). Because [Allergan] reported its Best Price to Medicaid based on this calculation, Medicaid received only an 18% rebate, not the combined rebate of 33% of the total market price.

Accordingly, "Sheldon alleges that [Allergan] submitted false claims under the FCA by reporting its Best Prices to CMS without stacking rebates and other discounts provided to different entities on the same drug." *Id.* at 237.

As noted, after suit was filed in 2014, the government conducted a lengthy investigation of Sheldon's allegations, and the suit remained sealed during that time. *See* ECF 17; ECF 21; ECF 23; ECF 24; ECF 26; ECF 30; ECF 33; ECF 35; ECF 37; ECF 39. On September 17, 2019, the United States and the *Qui Tam* States declined to intervene. ECF 41. Thereafter, on October 16, 2019, more than five years after Sheldon instituted suit, the case was unsealed. ECF 42.

Defendant moved to dismiss the suit, pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b). ECF 72. By Memorandum Opinion and Order of November 6, 2020, I dismissed the Amended Complaint for failure to state a claim. *See* ECF 86; ECF 87; ECF 92; *United States ex rel. Sheldon v. Forest Labs., LLC*, 499 F. Supp. 3d 184 (D. Md. 2020) (*Sheldon I*).[7]

In *Sheldon I*, 499 F. Supp. 3d 184, I considered whether plaintiff plausibly alleged a claim under the FCA. Applying an objective standard, I determined that Allergan's interpretation of the Rebate Statute was objectively reasonable, and Relator did not plausibly allege that Allergan

---

[7] Consistent with my practice, I did not designate the Memorandum Opinion for publication. Nevertheless, the Court's Memorandum Opinion was selected for publication in the Federal Supplement. In the course of reviewing the Memorandum Opinion for purposes of print publication, I made a handful of minor, non-substantive corrections. *See* ECF 91; *compare* ECF 86 *with* ECF 92. The Order was unchanged.

Accordingly, I cite to the revised version of the Memorandum Opinion, docketed at ECF 92. In addition, I refer to ECF 92 as the Memorandum Opinion of November 6, 2020, although it was not docketed until February 6, 2021.

acted with the requisite scienter. *Id.* at 212. But, I rejected defendant's claim that the public disclosure bar of the FCA warranted dismissal. ECF 92 at 25–31.[8] Because I also concluded that Relator failed to plead the existence of a false statement for an FCA claim, I did not address Allergan's alternate argument that Relator did not meet the heightened pleading standard under Rule 9(b). *Id.* at 213.

Defendant noted an appeal to the Fourth Circuit. ECF 88. For nearly three years thereafter, the suit worked its way through the appellate process. The judgment of dismissal was affirmed twice by the Fourth Circuit, first by a divided panel, *see Sheldon II*, 24 F.4th 340,[9] and then, after a rehearing *en banc*, it was affirmed "by an equally divided court." *United States ex rel. Sheldon v. Allergan Sales, LLC*, 49 F.4th 873 (4th Cir. 2022) (per curiam) (*Sheldon III*). Sheldon petitioned the Supreme Court for a writ of certiorari. *See* ECF 99. While Sheldon's petition was pending, the Supreme Court decided *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023).

In *Schutte*, the Supreme Court provided an exegesis of the FCA's scienter element. The Supreme Court began with the text of the FCA. *Id.* at 750. The Court observed that under 31 U.S.C. § 3729(b)(1)(A)(i)–(iii), "either actual knowledge, deliberate ignorance, or recklessness . . . suffice" for liability under the FCA. *Schutte*, 598 U.S. at 750. According to the Court, this "three-part test largely tracks the traditional common-law scienter requirement for claims of fraud." *Id.* (citations omitted). Therefore, the Court determined that scienter under the FCA, like scienter under common law fraud, "ordinarily 'depends on a subjective test' and the

---

[8] The Relator conceded that the federal conspiracy claim (Count III) and claims under New Hampshire's FCA were subject to dismissal. *See* ECF 79 at 43 n.16; ECF 92 at 25.

[9] In *Sheldon II*, 24 F.4th at 348, the Fourth Circuit majority applied an objective standard to determine scienter.

defendant's 'culpable state of mind.'"  *Id.* at 752 (quoting Restatement (Third) of Torts § 10, Comment *a*).  In other words, "[t]he FCA's scienter element refers to [a defendant's] knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed."  *Schutte*, 598 U.S. at 749.

Less than a month after *Schutte* was decided, the Supreme Court granted certiorari in *Sheldon*, vacated the Fourth Circuit's judgment of dismissal, and remanded the case to the Fourth Circuit for further consideration in light of *Schutte*.  *United States, ex rel. Sheldon v. Allergan Sales, LLC*, 143 S. Ct. 2686 (2023) (*Sheldon IV*).  About two months later, the Fourth Circuit remanded the case to the District Court to reconsider plaintiff's allegations in light of *Schutte*.  ECF 100 (*Sheldon V*).

On remand, Allergan filed its second motion to dismiss the Amended Complaint.  ECF 112.  By Memorandum Opinion and Order of July 23, 2024, the District Court again dismissed the Amended Complaint for failure to state a claim.  ECF 130; ECF 131; ECF 135; *United States ex rel. Sheldon v. Forest Lab'ys, LLC*, 754 F. Supp. 3d 615 (D. Md. 2024) (*Sheldon VI*).[10]

In particular, the District Court considered the sufficiency of the Relator's allegations concerning scienter, applying a subjective standard, as required by *Schutte*, 598 U.S. at 749.  *See Sheldon VI*, 754 F. Supp. 3d at 645.  I determined that, "to evaluate the sufficiency of Sheldon's allegation that [defendant] acted with culpable 'subjective beliefs,' I must conduct an unmistakably *objective* inquiry into the meaning of the Rebate Statute, Rebate Agreement, and

---

[10] The Court's Memorandum Opinion dismissing Relator's suit for a second time was also selected for publication in the Federal Supplement.  Therefore, I made several minor, non-substantive corrections. *See* ECF 135-1; *compare* ECF 130 *with* ECF 135.  The Order remained the same.

I shall cite to the revised version of the Memorandum Opinion, docketed at ECF 135.  In addition, I refer to ECF 135 as the Memorandum Opinion of July 23, 2024, although it was not docketed until October 22, 2024.

related regulations." *Id.* at 645–46 (citation omitted; emphasis in original). After applying the tools of statutory interpretation, the Court concluded that the "Best Price" provisions of the Rebate Statute and the Rebate Agreement are ambiguous. *Id.* at 649. Therefore, the Court found that the allegation that Allergan was familiar with the terms of the Rebate Statute, the Rebate Agreement, and related regulatory pronouncements did not provide a basis on which to ascribe to Allergan a culpable mental state under *Schutte*. *Id.* at 651. Nor did the Court find that Sheldon had alleged scienter based on the various documents presented regarding the company's own understanding of the Rebate Statute and the Rebate Agreement. *Id.* at 651–54. In sum, the Court determined that Relator had failed to allege that defendant acted with the requisite scienter. *Id.* at 654.

Turning to the question of falsity, the District Court concluded that "there is considerable ambiguity in the definitions of 'Best Price' contained in the materials that have been brought to the Court's attention." *Id.* at 656. Accordingly, the Court determined that defendant "did not act in violation of the Rebate Statute" because the "Rebate Statute, as interpreted, does not affirmatively establish that [defendant] was required to aggregate price concessions to different entities in the distribution chain[.]" *Id.* Therefore, the Court was of the view that Allergan's "failure to aggregate price concessions to different entities in the chain of distribution did not render false its price reports to the government." *Id.* at 657. Because the District Court concluded that the Relator failed to plead the existence of scienter or falsity, the Court did not address Allergan's alternative argument for dismissal under Rule 9(b). *Id.* at 658. Relator noted another appeal to the Fourth Circuit. ECF 132.

In a two-to-one decision, the Fourth Circuit reversed and remanded. *Sheldon VII*, 170 F.4th 227. The Court elucidated the FCA scienter standard and the pleading requirements for scienter under Fed. R. Civ. P. 9(b). *Id.* at 241–42. It stated: "Like most claims arising under the

9

FCA, Sheldon's claims are fraud-based and therefore must also satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard." *Id.* at 242. And, of import, it noted: "Even in these fraud-based claims, scienter may be alleged generally." *Id*. The Fourth Circuit observed: "The FCA does not require scienter to be pled with specificity for good reason. As the district court correctly observed, direct proof of scienter is often unavailable. This is particularly true at the pleading stage before the parties have had an opportunity to engage in discovery. Courts must not impose a higher bar for pleading scienter." *Id.* (internal quotation marks and citation omitted).

Further, the Fourth Circuit said: "Under the FCA, the scienter standard is a subjective one that focuses on the defendant's thoughts and beliefs. Ambiguities in the law are therefore not dispositive." *Id.* at 241 (internal citation omitted). Nevertheless, it recognized the "complexity of the Medicaid statute" and also observed that "the requirements for the Best Price calculation are 'less than perfectly clear.'" *Id.* at 242 (quoting *Schutte*, 598 U.S. at 752).

Applying "the subjective standard," the Court said that "'ambiguity' in the language of a statute 'does not preclude [a company] from having learned [the statute's] correct meaning–or, at least, becoming aware of a substantial likelihood of the terms' correct meaning.'" *Sheldon VII,* 170 F.4th at 241 (quoting *Schutte,* 598 U.S. at 753) (alterations in *Sheldon VII*). The Court also stated: "Companies should not be held liable for making honest mistakes in interpreting ambiguous statutory language." *Sheldon VII,* 170 F.4th at 242. But, it added: "*Schutte* counsels . . . that a company cannot exploit such ambiguities by relying on an objectively reasonable interpretation if the company is subjectively aware of the risk that such an interpretation is incorrect." *Id.* (citing *Schutte*, 598 U.S. at 753–54). Indeed, the Court's majority said: "The subjective scienter standard prevents wrongdoers from taking advantage of arguable ambiguity in a statute to exploit the public fisc for private gain." *Sheldon VII,* 170 F.4th at 245.

10

With respect to the sufficiency of Sheldon's pleading, the Fourth Circuit said that, "[t]o survive a motion to dismiss, Sheldon need only have plausibly alleged facts to support an inference that [defendant] possessed such a scienter." *Id.* at 243. And, the Court said, *id.*: "We find that Sheldon has done so." Indeed, the Court made clear: "The allegations contained in Sheldon's amended complaint ably allege what is required." *Id.* at 244.

In particular, the Court determined that Sheldon plausibly alleged that Allergan "was subjectively aware of a substantial risk that CMS interpreted the Rebate Statute to require drug manufacturers to aggregate rebates and other discounts provided to multiple entities on the same drug in reporting Best Price," and that defendant "acted with reckless disregard under the FCA scienter requirement in continuing to report its Best Price pursuant to its own interpretation." *Id.*

Regarding the issue of statutory ambiguity, the Fourth Circuit explained that although "the ambiguity of a statute may be a defense to scienter," it is not "generally appropriate to consider such defenses at the motion to dismiss stage . . . unless the plaintiff fails to allege facts beyond the plain text of the statute to support an inference of the requisite scienter." *Id.* at 245. But, said the Court, "[t]hat is not the case here." *Id.* The Fourth Circuit concluded that plaintiff had cleared the pleading hurdle for scienter. *Id.*

The Court then turned to the issue of falsity, "a distinct element of an FCA claim." *Id.* It said that "ambiguity in a statute is not a defense to the falsity of the claim." *Id.* Explaining that "falsity is an objective inquiry," *id.*, the Court stated, *id.*: "When considering whether a plaintiff sufficiently alleges the element of falsity, the district court must determine whether the claims were objectively false by interpreting the relevant statute. Because the district court has yet to reach this issue, we remand for consideration in the first instance.[]"

In its conclusion, the Fourth Circuit provided the following summation, *id.*:

The subjective scienter standard prevents wrongdoers from taking advantage of arguable ambiguity in a statute to exploit the public fisc for private gain. Sheldon adequately alleged that his former employer Forest acted with reckless disregard when it reported its Best Prices without aggregating rebates and other discounts after becoming aware that CMS interpreted the Rebate Statute to require such aggregation. These allegations suffice to withstand [defendant's] motion to dismiss.

The mandate issued on April 22, 2026. ECF 142; *see United States v. Montgomery*, 262 F.3d 233, 239 (4th Cir. 2001) ("'A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals.'") (quoting *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996)). On the same date, I asked counsel to submit a joint status report, including a proposed schedule to govern the case. *See* ECF 143.

The parties subsequently submitted a joint status report, presenting opposing positions as to how the case should proceed. ECF 147. Relator argued that the case should proceed to discovery. *Id.* at 1. In contrast, defendant sought to file a third motion to dismiss. *Id.* at 5. Allergan claimed that the Fourth Circuit remanded the case to this Court to make a "threshold determination" as to "whether Relator has adequately pled falsity" and to adjudicate the defendant's "outstanding" argument that Relator failed to plead fraud with the requisite particularity required under Fed. R. Civ. P. 9(b). *Id.* at 5, 11.

Upon review of the parties' positions, I issued an Order on May 7, 2026 (ECF 148), declining to entertain a third motion to dismiss. I also asked counsel to confer regarding a proposed scheduling order so as to begin discovery in this case. *See id.* In another joint status report (ECF 149), the parties proposed a scheduling order. *Id.* at 3–4. Although the Court has not yet entered a Scheduling Order, *see* Docket, the parties have advised that they have "started discovery[.]" ECF 151 at 1; *see also* ECF 154 at 2; ECF 155 at 2.[11]

---

[11] Defendant points out that "discovery has not officially commenced" but states that "Allergan has no objection to a mutual exchange of initial disclosures" and it "intends to continue

As to my Order of May 7, 2026, defendant has filed a motion to reconsider (ECF 150), pursuant to Fed. R. Civ. P. 54(b), asking this Court to permit Allergan to file a third motion to dismiss. Defense counsel represents that the third motion to dismiss would be "limited to arguing that the Amended Complaint [Dkt. 16] fails to (i) allege falsity as a matter of law; and (ii) adhere to Federal Rule of Civil Procedure 9(b)." ECF 150 at 1.

## II. Legal Standard

Pursuant to Fed. R. Civ. P. 54(b), defendant moves this Court to reconsider its Order of May 7, 2026 (ECF 148), in which the Court declined to entertain a third motion to dismiss. ECF 150; ECF 150-1. Rule 54(b) provides: An order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *See also Mateti v. Activus Fin., LLC*, DKC 2008-0540, 2009 WL 3633339, at *4 (D. Md. Oct. 27, 2009) ("Federal Rule of Civil Procedure 54(b) governs reconsideration of orders . . . that adjudicate[ ] fewer than all the claims or the rights and liabilities of fewer than all the parties.").

The Fourth Circuit has explained that Rule 54(b) is flexible to account for new facts and arguments as the litigation unfolds. *See Clear Touch Interactive, Inc. v. Ockers Co.*, 171 F.4th 715, 728 (4th Cir. 2026) ("[A] district court has much more flexibility in reconsidering its *nonfinal* orders under Rule 54(b)[.]") (emphasis in original); *see also Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017); *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). However, the Fourth Circuit has admonished that "the discretion afforded by Rule 54(b) 'is not limitless,'" and the Court has "'cabined revision pursuant to Rule 54(b) by treating

---

to cooperate with Relator regarding relevant preliminary matters, such as drafting the protective order and ESI protocol." ECF 154 at 2.

13

interlocutory rulings as law of the case.'"   *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 256 (4th Cir. 2018) (quoting *Carlson*, 856 F.3d at 325); *see Clear Touch Interactive, Inc.*, 171 F.4th at 729.

The law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"   *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)); *accord Arizona v. California*, 460 U.S. 605, 618 (1983); *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019); *Carlson*, 856 F.3d at 325; *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009).   The doctrine's effect is to bar a party from resurrecting issues that were previously decided or "'decided by necessary implication.'"   *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)).   In so doing, the law of the case doctrine advances the interests of efficiency, judicial economy, and finality.   *See Christianson v. Colt Indus. Oper. Corp.*, 486 U.S. 800, 816 (1988) (observing that the doctrine safeguards the "efficiency of the judicial process by protecting against the agitation of settled issues"); *United States v. Philip Morris USA Inc.*, 801 F.3d 250, 257 (D.C. Cir. 2015) (noting that the law of the case "reflects the understanding that 'inconsistency is the antithesis of the rule of law'") (citation and alteration omitted).

A motion for reconsideration may be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."   *Keen v. LoanCare, LLC*, RDB-22-0149, 2023 WL 9472295, at *1–2 (D. Md. Dec. 21, 2023) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)).   "[T]he evidentiary standard under Rule 54(b) 'departs from [the final order]

14

standard by accounting for potentially *different* evidence discovered during litigation as opposed to the discovery of *new* evidence not available at trial.'" *Clear Touch Interactive, Inc.*, 171 F.4th at 729 (emphases and alteration in original) (citation omitted).

In addition, a motion for reconsideration may be granted "if one of the following is present: '(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief.'" *Jahn v. Tiffin Holdings, Inc.*, SAG-18-1782, 2020 WL 4559927, at *2 (D. Md. May 13, 2020) (quoting *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018)).

"Although there may be many valid reasons to reconsider an order, 'a motion to reconsider is not a license to reargue the merits or present new evidence' that was previously available to the movant." *Carrero*, 310 F. Supp. 3d at 583–84 (quoting *Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 142 F.Supp.2d 676, 677 n.1 (D. Md. 2001)) (internal citation omitted).  In the context of law of the case, the Fourth Circuit has cautioned that the movant must meet a "high burden" of demonstrating that the court's prior ruling "was clearly erroneous and would work a manifest injustice." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009); *see Int'l Painters & Allied Trades Indus. Pension Fund v. Union Grp., Ltd.*, RDB-23-3239, 2025 WL 2967156, at *3 (D. Md. Oct. 21, 2025).

The Fourth Circuit has colorfully reiterated: "A prior decision does not qualify for this third exception by being 'just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *TFWS*, 572 F.3d at 194 (citations omitted). In other words, "[i]t must be 'dead wrong.'" *Id.* (citation omitted); *see Peckey v. Bank of Am.*,

RDB-14-433, 2016 WL 6951940, at *1 (D. Md. Nov. 28, 2016); *Siple v. First Franklin Fin. Corp.*, RDB-14-2841, 2015 WL 6163791, at *2 (D. Md. Oct. 19, 2015).

### III.  Contentions

Allergan claims that this Court's decision to move this case to discovery "was both clearly erroneous and manifestly unjust[.]" ECF 150-1 at 3.  In particular, defendant contends that the Fourth Circuit "directed this Court to determine as a matter of law whether Relator's argument that 'the Medicaid Rebate Statute obligates a manufacturer to report stacked discounts to multiple entities' is correct." *Id.* (citing *Sheldon VII*, 170 F.4th at 245 n.9); *see* ECF 150-1 at 7.  According to defendant, "the correct course is to decide the statute's meaning – and to evaluate Relator's compliance with Rule 9(b) – before permitting discovery." ECF 150-1 at 3.  Defendant posits: "Deferring the statutory interpretation question to the summary judgment stage is not a fair substitute, as a Rule 56 motion tests the sufficiency of a plaintiff's claim based on the facts developed in discovery, not the sufficiency of her allegations." *Id.* at 6.

According to Allergan, it would be manifestly unjust for it to be forced to undertake discovery at this juncture.  *Id.*  Defendant asserts: "Motions to dismiss are particularly important in the False Claims Act ('FCA') context, so that a party is not required to face potentially punitive liability without first having a court determine that the claims against it are legally viable and do not represent an improper fishing expedition." *Id.* at 3.  Further, defendant argues: "Permitting Allergan to file a renewed motion to dismiss would . . . promote judicial economy and have substantial benefits for the many entities that could otherwise be dragged into wide-ranging discovery." *Id.* at 7.  Defendant adds: "Because the court has not entered a scheduling order,

'discovery [has] not commence[d],' regardless of any premature discovery requests Relator has served." ECF 152 at 5 (alterations in original) (quoting Local Rule 104.4).[12]

In addition, Allergan asserts: "A pre-discovery evaluation of Relator's allegations is also necessary to uphold the purposes of Federal Rule of Civil Procedure 9(b)." ECF 150-1 at 8. Defendant emphasizes that it has "twice argued (and this Court has twice declined to address) that Relator's complaint fails to 'state with particularity the circumstances constituting fraud.'" *Id.* (quoting Fed. R. Civ. P. 9(b)).

Defendant indicates that the Court's ruling should not be predicated on a concern about further delay. I agree that Allergan should not be penalized "for a delay that [was] not of its making." ECF 150-1 at 9. Nevertheless, as to any concern regarding the age of the case and further delay due to a third motion to dismiss, defendant suggests that it will take "relatively short additional time for the parties to brief and for the Court to decide the falsity and Rule 9(b) issues[.]" ECF 150-1 at 9 n.3. This bald assertion is not founded on fact.[13]

Sheldon posits: "The Fourth Circuit reversed the Court's dismissal of Plaintiff's Amended Complaint and concluded that Plaintiff's Amended Complaint plausibly pled FCA claims." ECF 151 at 2. Moreover, Relator asserts: "[T]he Court has the discretion to decide how and when to consider" the Rebate Statute. *Id.* Indeed, Relator maintains that "Allergan can raise the statutory interpretation issue at the dispositive motion stage" and the Court may address the issue at that juncture. *Id.* at 3.

---

[12] As noted, the parties agreed to a proposed Scheduling Order and discovery has commenced. *See* ECF 149 at 3–4; ECF 151 at 1; ECF 154 at 2; ECF 155 at 2.

[13] Even a motion as simple as the one at issue here requires hours of the Court's time. And, however long briefing might take, once it is completed the Court will have other matters that also require attention. A significant delay from a third motion to dismiss is likely.

Further, Relator claims "that this case in particular does not and cannot turn on an abstract legal question to be resolved in a third round of motion to dismiss briefing." ECF 147 at 2. According to Relator, "the issue turns on whether the Defendant's reporting of Best Prices reflected the prices that it actually realized in light of the rebates and concessions it used to effectuate sales to numerous downstream customers in its particular pricing practices." *Id.* at 3. Relator contends that this "determination cannot be made without understanding more specifics regarding how those arrangements operated in practice as well as in light of regulations, rulings or guidance." *Id.*

Plaintiff also emphasizes that "any future motion to dismiss should be converted to a dispositive motion, and Plaintiff may file a Rule 56(d) affidavit and ask for time and discovery before filing an opposition to any future motion to dismiss depending on what arguments are raised in a third motion to dismiss." *Id.* at 3–4. As to particularity under Fed. R. Civ. P. 9(b), Relator contends: "The Court should not delay discovery by reconsidering Rule 9(b) arguments after the Fourth Circuit has already determined that Plaintiff has plausibly alleged FCA claims that should proceed beyond a motion to dismiss." *Id.* at 4.

## IV. Discussion

"The FCA requires a relator—a private individual who brings a lawsuit on behalf of the United States—to adequately allege four elements: 1) the defendant made a false statement or engaged in a fraudulent course of conduct; 2) such statement or conduct was carried out with the requisite scienter; 3) the statement or conduct was material; and 4) the statement or conduct caused the government to pay out money or to forfeit money due." *Sheldon VII,* 170 F.4th at 233; *see also United States ex rel. Kyer v. Thomas Health Sys., Inc.,* __ F.4th __, 2026 WL 1595887, at *4 (4th Cir. June 4, 2026); *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 188 (4th Cir.

18

2022); *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 700 (4th Cir. 2014); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999).

In short, a "defendant can only be held liable under the FCA . . . if the defendant possessed the requisite scienter and the claim submitted was objectively false." *Sheldon VII,* 170 F.4th at 233. "Sheldon alleges that [defendant] submitted false claims under the FCA by reporting its Best Prices to CMS without stacking rebates and other discounts provided to different entities on the same drug." *Sheldon VII,* 170 F.4th at 237.

In particular, Relator contends that Allergan engaged in a practice that fraudulently inflated the Best Price it reported to the Secretary of HHS, in violation of its reporting obligation under the Rebate Statute and the Rebate Agreement. ECF 16, ¶ 66. The Fourth Circuit has opined "that Sheldon's allegations that [Allergan] acted with reckless disregard in reporting its lowest prices under the Medicaid Rebate statute satisfy the requisite pleading standards." *Sheldon VII*, 170 F.4th at 232.

The Fourth Circuit explained that "the scienter standard is a subjective one that focuses on the defendant's thoughts and beliefs." *Id.* at 241. And, a defendant is liable if it submitted an objectively false claim to the government "with actual knowledge, with deliberate ignorance, or with reckless disregard of the truth or the falsity of the information contained in the claims." *Id.* The Court analyzed the sufficiency of Relator's allegations of scienter under that standard. *Id.* It said: "To survive a motion to dismiss, Sheldon need only have plausibly alleged facts to support an inference that [defendant] possessed such a  scienter." *Id.* at 243. The Fourth Circuit concluded that Relator "had done so." *Id.* Indeed, the Court reiterated: "The allegations contained in Sheldon's amended complaint ably allege what is required." *Id.* at 244.

19

Allergan seems to contend that the Fourth Circuit remanded the case to this Court for the purpose of adjudicating a third motion to dismiss.  This position is largely premised on three paragraphs and two footnotes at the end of the Fourth Circuit's opinion.  *See* ECF 150-1 at 5; *see Sheldon VII,* 170 F.4th at 245, 245 n.8, 245 n.9.  There, the Fourth Circuit reiterated that "Sheldon sufficiently alleges" that defendant "was subjectively aware of the risk that it was reporting false claims."  *Sheldon VII,* 170 F.4th at 245.

Moreover, the Court disagreed that Allergan could not have submitted false claims because the statute is ambiguous.  *Id.* at 244.  As indicated, the Court explained that "ambiguity of a statute may be a defense to scienter," *id.* at 245, but "ambiguity in a statute is not a defense to the falsity of the claim."  *Id.*  Instead, said the Court, "falsity is an objective inquiry."  *Id.* Indeed, "reasonable interpretations of a regulation can be false as a matter of law for purposes of the FCA."  *Id.*

The Fourth Circuit instructed: "When considering whether a plaintiff sufficiently alleges the element of falsity, the district court must determine whether the claims were objectively false by interpreting the relevant statute."  *Id.*  The Court observed that the parties' "dispute turns on the objective meaning of a statute . . . ."  *Id.* at 245 n.8.  It said, *id.* at 245: "Because the district court has yet to reach this issue, we remand for consideration in the first instance.[]"  In a footnote, it clarified that "the district court must determine whether reporting Best Price without aggregating all rebates and other discounts was false as a matter of law."  *Id.* at 245 n.8.  Although the Fourth Circuit could have answered the question, it left "this question in the district court's able hands for consideration in the first instance."  *Id.* at 245 n.9.

Of import, as to these issues, the Fourth Circuit did not dictate at which stage of the litigation the Court must address any unresolved questions. And, I see no reason to answer the question before proceeding with discovery.

The mandate rule, which flows from the hierarchal nature of our judicial system, provides that "'once a case has been decided on appeal and a mandate issued, the lower court may not deviate from that mandate but is required to give full effect to its execution.'" *Mangum v. Hallembaek*, 910 F.3d 770, 776 (4th Cir. 2018) (quoting *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005)); *see United States v. Castellano*, 172 F.4th 295, 303 (4th Cir. 2026); *see also Edd Potter Coal Co., Inc. v. Dir., Off. of Workers' Comp. Programs*, 39 F.4th 202, 210 (4th Cir. 2022) ("By its operation, the mandate rule serves the 'key interests' of 'hierarchy and finality.'") (quoting *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007)). "The mandate 'rule operates as a specific application of the law of the case doctrine,' 'govern[ing] what issues the lower court is permitted to consider on remand.'" *United States of America v. Battle*, 2026 WL 1650992, at *3 (4th Cir. June 8, 2026) (per curiam) (citation omitted).

As its name suggests, the mandate rule is mandatory; the trial court cannot depart from the appellate court's ruling, "'except in rare circumstances.'" *Mangum*, 910 F.3d at 776 (quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)). Although the District Court must resolve the issues identified by the Fourth Circuit, that Court did not command resolution by way of a third motion to dismiss. Rather, it instructed this Court to address the issue in the first instance.

Defendant is not foreclosed from presenting its interpretation of the Rebate Statute at the summary judgment stage. Indeed, district courts regularly consider purely legal questions on summary judgment. *See Snell v. Reid*, 2024 WL 2815061, at *1 (4th Cir. June 3, 2024) (per curiam) ("The district court was empowered to resolve

21

these purely legal questions on summary judgment."); *Ray v. Roane*, 948 F.3d 222, 228 (4th Cir. 2020) ("[T]he purely legal question . . . is always capable of decision at the summary judgment stage or on a motion to dismiss[.]") (cleaned up); *Carter v. Shires*, 56 F.3d 60, at *2 (4th Cir. 1995) (per curiam) ("As a pure question of law, the . . . issue is appropriately resolved at the summary judgment stage.").[14]

As I see it, a third motion to dismiss would unduly delay and prolong this case. Conversely, there are several benefits that would flow from allowing this case to proceed to discovery. In sum, this Court would benefit from a more fulsome record before returning to the language of the Rebate Statute for the third time to determine what it requires.

In the Court's two previous opinions, it considered the meaning of "Best Price" in the Rebate Statute. *See* ECF 92 at 35–43; ECF 135 at 43–56, 58–60. In both opinions, the Court found the statute ambiguous as to the meaning of Best Price. ECF 92 at 39; ECF 135 at 45. The Fourth Circuit acknowledged the "well-recognized" "complexity of the Medicaid statute[.]"

---

[14] Defendant cites *Loc. 391, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Ward*, 501 F.2d 456 (4th Cir. 1974), to support its position. *See* ECF 150-1 at 5, 6 n.1. The case is inapposite.

In that case, the Fourth Circuit issued a writ of mandamus to the lower court to hear and determine motions to dissolve a preliminary injunction. *Loc. 391*, 501 F.2d at 459. The Fourth Circuit issued this remedy "because our previous mandate implicitly decides that the injunction should be continued only as long as arbitration was pending[.]" *Id.* at 458. The Court explained: "Whatever may be the general discretion of a district judge to withhold consideration of a motion to dissolve an injunction until he has determined whether the person enjoined should be held in contempt for failure to obey the injunction, we have no doubt that in the context of a labor injunction in a federal court the district judge . . . is obliged to hear and decide the motion to dissolve as a first order of business, except in . . . rare circumstances[.]" *Id.* The Court issued a writ of mandamus not "to correct persistent, improper practices on the part of a district court", but rather because the petitioners had no other remedy to obtain appellate review without use of a writ of mandamus. *Id.* at 458–59.

To state the obvious, the Fourth Circuit did not issue its mandate in this case in the context of a labor injunction. The decision whether to consider defendant's interpretation of the Rebate Statute in a motion to dismiss or at summary judgment remains in the Court's discretion.

*Sheldon VII,* 170 F.4th at 242.  Indeed, it observed: "As evidenced by the lengthy procedural history of this case, the requirements for the Best Price calculation are 'less than perfectly clear.'" *Id.* (quoting *Schutte,* 598 U.S. at 752).  "If statutory language is ambiguous, [the] court may turn to other sources of meaning such as canons of construction or background principles of law to determine meaning." *Pharm. Coal. for Patient Access v. United States*, 126 F.4th 947, 953 (4th Cir. 2025).  And, "it is well established that a court can, and should, interpret the text of one statute in the light of text of surrounding statutes, even those subsequently enacted." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 786 n.17 (2000).

As the Fourth Circuit explained in *Sheldon VII*, "at the pleading stage" the parties have not had "an opportunity to engage in discovery." *Sheldon VII,* 170 F.4th at 242.  The Fourth Circuit observed that, in adjudicating the previous motion to dismiss, "the district court took judicial notice of and considered as part of its analysis information contained in several voluminous documents beyond the amended complaint[.]" *Id.* at 244 n.7.  Moreover, it stated: "When materials outside the pleadings are considered in ruling on a 12(b)(6) motion, unless the materials are integral to and explicitly relied on in the complaint, the court must generally convert that motion to 'one for summary judgment under Rule 56' and provide all parties 'a reasonable opportunity to present all material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

Interpretation of the Rebate Statute at summary judgment will allow the parties to present their arguments, while also allowing the Court to consider all relevant sources that shed light on the meaning of this complex statute, without the evidentiary constraints referenced by the Fourth Circuit that pertain to the adjudication of a motion to dismiss.  That is the approach I will utilize.

I turn to defendant's arguments regarding Fed. R. Civ. P. 9(b).  Allergan asserts: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  This is a "heightened pleading standard[.]"  *United States ex rel. Wheeler v. Acadia Healthcare Co., Inc.*, 127 F.4th 472, 485 (4th Cir. 2025)

To be sure, "the Federal Rules demand greater detail when alleging fraud."  *Kyer*, 2026 WL 1595887, at * 4.  The *Kyer* Court said, *id.*: "Because [relator] asserts a fraud claim under the False Claims Act, she must clear a higher hurdle than the one Rule 8 sets[.]"  Indeed, "[f]ailure to comply with the particularity standard is a failure to state a claim under Rule 12(b)(6)."  *Id.*

Under the Rule 9(b) pleading standard, a plaintiff alleging a claim that sounds in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *United States ex rel. Nathan v. Takeda Pharms. N.A., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (citation omitted); *see Kyer*, 2026 WL 1595887, at * 4; *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010); *Harrison*, 176 F.3d at 784.  In other words, the "court must be satisfied that the complaint gives notice to the defendants 'of the particular circumstances for which [they] will have to prepare a defense at trial,' and that 'plaintiff has substantial prediscovery evidence of those facts.'"  *Kyer*, 2026 WL 1595887, at * 4 (quoting *Harrison*, 176 F.3d at 784, 789) (alterations in original).

The Fourth Circuit was surely aware of the contention of the defendant in regard to Rule 9(b).  Indeed, in *Sheldon VII*, the Court addressed the heightened pleading standard under Rule 9(b).  *Sheldon VII*, 170 F.4th at 242-43.  And, it determined that Relator's "allegations suffice to withstand [defendant's] motion to dismiss."  *Id.* at 244.  The Court did not direct this Court to

24

consider, on remand, the question of plaintiff's compliance with Rule 9(b).  This stands in stark contrast to the Fourth Circuit's instruction to this Court to consider, at an unspecified time, the legal question of the meaning of the Rebate Statute.  *See id.* at 245 n.9.

Moreover, although Fed. R. Civ. P. 9(b) is a pleading standard, in the context of a motion for summary judgment, defendant can readily look to information gleaned from discovery to argue that Relator cannot or did not establish fraud.  The Court would have the benefit of a developed factual record.

## V.  Conclusion

As stated, this case is fast approaching its twelfth year.  The Court has twice considered, at length, two motions to dismiss.  Twice, the parties and the Court have invested considerable time in regard to the matter of the parties' contentions and the applicable law.  The Fourth Circuit and the Supreme Court have done the same.  This case has twice been remanded to this Court and, as before, factual and legal questions remain unresolved.

Proceeding to discovery after twelve years of litigation hardly constitutes manifest injustice.  In regard to defendant' second motion to dismiss, the Fourth Circuit was unpersuaded that plaintiff's suit merits dismissal based on deficient pleadings. As to falsity, the Fourth Circuit directed this Court to "determine whether the claims were objectively false by interpreting the relevant statute."  *Sheldon VII*, 170 F.4th at 245.  This Court will do so at the appropriate time. For now, it is time to move this case forward.

An Order follows.

Date:  June 29, 2026

_____/s/_____
Ellen Lipton Hollander
United States District Judge

25