**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES *ex rel.* DEBORAH SHELDON,<br>*Plaintiffs*,<br>*v.*<br>ALLERGAN SALES, LLC<br>*Defendant*. | Civil Action ELH-14-2535 |

**MEMORANDUM OPINION**

In this qui tam case,[1] defendant Allergan Sales, LLC has asked the Court to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). ECF 160. The motion, supported by a memorandum (ECF 160-1) (collectively, the "Motion"), concerns an Order of this Court dated June 29, 2026, declining to entertain a third, prediscovery motion to dismiss that Allergan seeks to file. *See* ECF 158 (the "Order").

Plaintiff opposes the Motion. ECF 170. Defendant has replied (ECF 172) and has also filed a "Notice of Supplemental Authority." ECF 173.

No hearing is necessary to decide the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

---

[1] "Qui tam is short for *'qui tam pro domino rege quam pro se ipso in hac parte sequitur,'* which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 463 n.2 (2007).

Troy Sheldon, as Relator,[2] on behalf of the United States as well as numerous states and the District of Columbia (collectively, the "Qui Tam States"),[3] filed suit in August 2014, under seal, against his former employer, Forest Laboratories, LLC ("Forest Laboratories"), as well as Forest Pharmaceuticals, Inc. ("Forest Pharmaceuticals") and Allergan, PLC. ECF 1. The suit, filed pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, alleged a fraudulent reporting scheme under the Medicaid Rebate Statute of 1990 (the "Rebate Statute"). *See* 42 U.S.C. § 1396r-8.

In 2014, Forest Laboratories was acquired by Actavis, PC, an entity that subsequently changed its name to Allergan Sales, LLC ("Allergan"). *United States ex rel. Sheldon v. Allergan Sales, LLC*, 170 F.4th 227, 235 n.3 (4th Cir. 2026) (*Sheldon VII*).[4] And, as of January 1, 2018, Forest Laboratories and Forest Pharmaceuticals merged into Allergan and "no longer exist." ECF 71, ¶ 3. Therefore, Allergan is the successor in interest to the two Forest entities. *Id.* Accordingly, by Order of March 3, 2020 (ECF 75), Allergan, PLC was dismissed from the case, and Allergan was substituted for the Forest entities as the sole defendant.[5]

---

[2] Mr. Sheldon died on November 10, 2017. ECF 29-1 at 1. His wife, Deborah Sheldon, as Executrix of the Estate of Troy Sheldon, was substituted as the plaintiff on March 19, 2018. *See* ECF 29 (Motion to Substitute); ECF 31 (Order Granting Motion to Substitute). I shall refer to the plaintiff generically as "Sheldon," the "Relator," or the "plaintiff." I shall refer to Troy Sheldon as "Mr. Sheldon."

[3] The Qui Tam States are California; Colorado; Connecticut; Florida; Georgia; Hawaii; Illinois; Indiana; Iowa; Louisiana; the Commonwealth of Massachusetts; Michigan; Minnesota; Montana; Nevada; New Hampshire; New Jersey; New Mexico; New York; North Carolina; Oklahoma; Rhode Island; Tennessee; Texas; Vermont; the Commonwealth of Virginia; Washington; and Wisconsin. The District of Columbia is also a qui tam plaintiff. Maryland and Delaware were qui tam plaintiffs, but withdrew from the suit. *See Docket*; ECF 46.

[4] *Sheldon VII* was decided on March 13, 2026. Curiously, plaintiff's opposition, filed July 28, 2026, provides only the Lexis citation to the case. *See* ECF 170 at 2.

[5] This Court initially referred to the defendant as "Forest." *See, e.g.*, ECF 92 at 1; ECF 135 at 1. But, the Court subsequently adopted the terminology used by defendant. *See, e.g.*, ECF

The Amended Complaint (ECF 16), filed on August 30, 2016, is 184 pages in length and is the operative pleading. Sheldon alleges that between 2005 and 2014, Forest, "a leading manufacturer of pharmaceutical drugs," defrauded the government and the Qui Tam States of more than $680 million. *Id.* at 6. In particular, Sheldon claims that Allergan failed to include certain customer price concessions in its calculation of "Best Price,"[6] as that term is used in the Rebate Statute. *Id.* *See* 42 U.S.C. § 1396r-8(b)(3)(A)(i)(II) and related regulations.

In September 2019, after a lengthy investigation, the government and the Qui Tam States declined to intervene in the case. ECF 41. On October 16, 2019, more than five years after suit was filed, the case was unsealed. ECF 42. Since then, as discussed below, the case has been mired in prediscovery motions and appeals.

## I. Factual and Procedural Summary

### A.

The case has a long procedural history. *See United States ex rel. Sheldon v. Forest Labs., LLC*, 499 F. Supp. 3d 184 (D. Md. 2020) (*Sheldon I*); *United States ex rel. Sheldon v. Allergan Sales, LLC*, 24 F.4th 340 (4th Cir. 2022) (*Sheldon II*); *United States ex rel. Sheldon v. Allergan Sales, LLC*, 49 F.4th 873 (4th Cir. 2022) (en banc) (per curiam) (*Sheldon III*); *United States ex rel. Sheldon v. Allergan Sales, LLC*, 143 S. Ct. 2686 (2023) (*Sheldon IV*); *United States ex rel. Sheldon v. Allergan Sales, LLC*, ECF 100 (en banc); ECF 101 (Aug. 2, 2023) (*Sheldon V*); *United States ex rel. Sheldon v. Forest Labs., LLC*, 754 F. Supp. 3d 615 (D. Md. 2024) (*Sheldon VI*); *Sheldon VII*, 170 F.4th 227; *United States ex rel. Sheldon v. Allergan Sales, LLC*, ELH-14-2535,

---

147 at 5; ECF 150 at 1; ECF 152 at 1. On occasion, I refer to the defendant as Forest. But, for the most part, I will refer to the defendant as Allergan.

[6] Following the example of Sheldon in the Amended Complaint, I shall capitalize "Best Price," unless the term appears otherwise in quoted material.

2026 WL 1868781 (D. Md. June 29, 2026) (*Sheldon VIII*). Because the parties are familiar with the factual allegations and the procedural history, it is not necessary to spill more ink here, restating the same background. Instead, I shall incorporate by reference the factual and procedural summaries as set forth in the prior opinions of both this Court and the Fourth Circuit. However, I will recount the factual and procedural summary to the extent it is helpful for context and where pertinent to the analysis.

Forest manufactured, sold, and distributed prescription drug products in the United States. ECF 16, ¶ 10. As noted, Allergan, a pharmaceutical company, *id.* ¶ 11, is the successor in interest to the Forest entities. ECF 71, ¶ 3.

Defendant participated in the Rebate Program (ECF 16, ¶ 12), which is a mechanism established by Congress to give "'Medicaid the benefit of the best price for which a manufacturer sells a prescription drug to any public or private purchaser.'" *Id.* ¶ 26 (citation omitted). Mr. Sheldon worked for Forest beginning in the 1990s until he was terminated in 2014. *Id.* ¶ 55. He claimed that he was "directly involved" in negotiating discounts, rebates, and other incentives to drug purchasers. *Id.*

Pursuant to the Rebate Statute, a drug manufacturer seeking coverage under Medicaid "must enter into a Rebate Agreement with the Secretary of HHS [*i.e.*, Department of Health and Human Services] in order for its covered outpatient drugs" to qualify for payment under Medicaid. *Id.* ¶ 29 (citing 42 U.S.C. § 1396r-8(a)(1)); *see* Drug Rebate Agreement, 56 Fed. Reg. 7049, 7050 (Feb. 21, 1991) ("Rebate Agreement"). The Rebate Agreement obligates the manufacturer to adjust the Best Price if "cumulative discounts, rebates, or other arrangements subsequently adjust the prices actually realized." 56 Fed. Reg. at 7050; *see Sheldon VII,* 170 F.4th at 234–35.

The meaning of "Best Price" is at the center of this litigation. The Rebate Statute defines Best Price as follows, 42 U.S.C. § 1396r-8(c)(1)(C)(i):

> The term "best price" means, with respect to a single source drug or innovator multiple source drug of a manufacturer (including the lowest price available to any entity for any such drug of a manufacturer that is sold under a new drug application approved under section 505(c) of the Federal Food, Drug, and Cosmetic Act), the lowest price available from the manufacturer during the rebate period to any wholesaler, retailer, provider, health maintenance organization, nonprofit entity, or governmental entity within the United States . . . .

The Rebate Statute requires drug manufacturers to report both the Best Price and the "Average Manufacturer Price" of its drugs to the government. *Sheldon VII*, 170 F.4th at 234. These prices are then used to calculate the rebate that drug manufacturers must provide to the government through its Medicaid program. *See id.* (citing 42 U.S.C. § 1396r-8(b)(1)(A)). This ensures that "Medicaid receives the benefit of the lowest prices that [drug] manufacturers charge private companies." *Sheldon VII,* 170 F. 4th at 232. In other words, Congress "tied the cost of drugs prescribed to Medicaid patients to the lowest price offered by the manufacturers for drugs on the private market." *Id.* at 234; *see* 42 U.S.C. § 1396r-8.

"The rebates and discounts that drug manufacturers provide play a significant role in generating sales." *Sheldon VII,* 170 F.4th at 236. To illustrate, in the commercial market, defendant "negotiates with [a] private insurance compan[y] to have its drugs placed on . . . a list of the company's preferred drugs." *Id.* (first two alterations in *Sheldon VII*; third alteration added). "In exchange, Forest pays the insurance company a rebate or other discount for each drug that the private insurance company purchases from Forest." *Id.* Defendant, as a drug manufacturer, "is then required to account for these rebates and other discounts in its calculation of the Best Price for each drug." *Id.*

Sheldon claims that Allergan "routinely conducted business with multiple entities on a single drug transaction." *Id.* Therefore, "[m]ultiple rebates and discounts . . . were often provided for a single drug[.]" *Id.* According to Relator, "through these multiple transactions to different purchasers, Forest essentially 'stacked' rebates and other discounts for the same drug." *Id.* But, "[w]hen reporting its Best Price to CMS [*i.e.*, Centers for Medicare and Medicaid Services]," defendant "would report only the highest rebate or other discount it gave to a single entity for each individual drug, rather than combining the total amount of rebates and discounts provided to all entities on the same drug." *Id.*

According to Sheldon, defendant "paid rebates to two separate customers on the same dispensed drug units provided to the same patient." ECF 16 at 6; *see also id.* ¶¶ 60, 61, 66–68. Sheldon alleges that Allergan was obligated to calculate "Best Price" by aggregating, or adding, the two rebates. *Id.* at 6–7. And, "Sheldon alleges that Forest submitted false claims under the FCA by reporting its Best Prices to CMS without stacking rebates and other discounts provided to different entities on the same drug." *Sheldon VII*, 170 F.4th at 237.

In *Sheldon VII,* the Fourth Circuit provided a helpful illustration of defendant's use of these rebates in its drug sales. It said, *id.* at 236–37 (emphasis in original; alteration added):

> [A] patient with private insurance was staying at a care facility ("Pharmacy Provider Facility"). The Pharmacy Provider Facility determined that the patient needs an antidepressant. To incentivize both the Pharmacy Provider Facility and the patient's private health insurer to prescribe and pay for an antidepressant manufactured by Forest rather than a competitor, Forest provided rebates to both the Pharmacy Provider Facility and to the private insurance company. Forest gave the Pharmacy Provider Facility a 15% rebate for the drug and then paid an additional 18% rebate to a private insurance company for the *same* drug prescribed to the *same* patient. Thus, all told, Forest provided 33% worth of rebates for the same drug. The price "actually realized" by Forest for the individual drug was therefore only 67% of the total market price. In reporting its Best Price for that drug to CMS, however, Forest reported the price after applying only the larger of the two rebates (i.e., the 18% rebate). Because Forest reported its Best Price to Medicaid

based on this calculation, Medicaid received only an 18% rebate, not the combined rebate of 33% of the total market price.

The question remains as to whether the Rebate Statute "requires a manufacturer, when reporting Best Price, to aggregate discounts provided to different entities." ECF 160 at 1. But, this Court has deferred its ruling on this issue, and it is that determination that has spawned the Motion.

**B.**

As noted, the case was unsealed in October 2019. ECF 44. Allergan subsequently moved to dismiss the suit, pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b). ECF 72. By Memorandum Opinion and Order of November 6, 2020, I dismissed the Amended Complaint for failure to state a claim. *See* ECF 86; ECF 87; ECF 92; *Sheldon I*, 499 F. Supp. 3d 184.[7]

In *Sheldon I*, I considered whether plaintiff plausibly alleged a claim under the FCA. Applying an objective standard, I determined that Allergan's interpretation of the Rebate Statute was objectively reasonable, and Relator did not plausibly allege that Allergan acted with the requisite scienter. *Id.* at 212. But, I rejected defendant's claim that the public disclosure bar of the FCA warranted dismissal. *Id.* at 203–06.[8] Further, I concluded that Relator failed to plead the existence of a false statement for an FCA claim. *Id.* at 213. Therefore, it was not necessary

---

[7] Consistent with my practice, I did not designate the Memorandum Opinion for publication. Nevertheless, the Court's Memorandum Opinion was selected for publication in the Federal Supplement. In the course of reviewing the Memorandum Opinion for purposes of print publication, I made a handful of minor, non-substantive corrections. *See* ECF 91; *compare* ECF 86 *with* ECF 92. The Order was unchanged.

Accordingly, I cite to the revised version of the Memorandum Opinion, docketed at ECF 92. In addition, I refer to ECF 92 as the Memorandum Opinion of November 6, 2020, although it was not docketed until February 5, 2021.

[8] The Relator conceded that the federal conspiracy claim (Count III) and claims under New Hampshire's FCA were subject to dismissal. *See* ECF 79 at 43 n.16; ECF 92 at 25.

for the Court to address Allergan's alternate argument that Relator did not meet the heightened pleading standard under Rule 9(b). *Id.*

Plaintiff noted an appeal to the Fourth Circuit. ECF 88. For nearly three years thereafter, the suit worked its way through the appellate process. The judgment of dismissal was affirmed twice by the Fourth Circuit, first by a divided panel on January 25, 2022, *see Sheldon II*, 24 F.4th 340,[9] and then, after a rehearing *en banc*, "by an equally divided court" on September 23, 2022. *Sheldon III*, 49 F.4th at 874. Relator petitioned the Supreme Court for a writ of certiorari. *See* ECF 99. On June 1, 2023, while that petition was pending, the Supreme Court decided *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023).

*Schutte* addressed the FCA's scienter requirement. The Court determined that under the FCA, 31 U.S.C. § 3729(b)(1)(A)(i)–(iii), "either actual knowledge, deliberate ignorance, or recklessness will suffice" for liability under the FCA. *Schutte*, 598 U.S. at 750. According to the Court, this "three-part test largely tracks the traditional common-law scienter requirement for claims of fraud." *Id.* (citations omitted). Therefore, the Court determined that scienter under the FCA, like scienter under common law fraud, "ordinarily 'depends on a subjective test' and the defendant's 'culpable state of mind.'" *Id.* at 752 (quoting Restatement (Third) of Torts § 10, Comment *a*). In other words, "[t]he FCA's scienter element refers to [a defendant's] knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *Schutte*, 598 U.S. at 749.

Less than a month after *Schutte* was decided, the Supreme Court granted certiorari in *Sheldon*, vacated the Fourth Circuit's judgment of dismissal, and remanded the case to the Fourth

[9] In *Sheldon II*, 24 F.4th at 348, the Fourth Circuit majority applied an objective standard to determine scienter.

Circuit for consideration in light of *Schutte*. *Sheldon IV*, 143 S. Ct. 2686. About two months later, on August 2, 2023, the Fourth Circuit remanded the case to this Court to reconsider plaintiff's allegations in light of *Schutte*. *See Sheldon V*, ECF 100, ECF 101.

On remand, Allergan filed its second motion to dismiss the Amended Complaint. ECF 112. By Memorandum Opinion and Order of July 23, 2024, I again dismissed the Amended Complaint for failure to state a claim. ECF 130; ECF 131; ECF 135; *Sheldon VI*, 754 F. Supp. 3d 615.[10]

In *Sheldon VI*, the District Court considered the sufficiency of the Relator's allegations concerning scienter, applying a subjective standard, as required by *Schutte*, 598 U.S. at 749. *See Sheldon VI,* 754 F. Supp. 3d at 645. The Court also considered whether the plaintiff had sufficiently alleged falsity under the FCA. *Id.* at 656.

Specifically, I determined that, "to evaluate the sufficiency of Sheldon's allegation that Forest acted with culpable 'subjective beliefs,' I must conduct an unmistakably *objective* inquiry into the meaning of the Rebate Statute, Rebate Agreement, and related regulations." *Id.* at 645–46 (citation omitted; emphasis in original). After applying the tools of statutory interpretation, I concluded that the "Best Price" provisions of the Rebate Statute and the Rebate Agreement are ambiguous. *Id.* at 649. Therefore, I found that the allegation that Allergan was familiar with the terms of the Rebate Statute, the Rebate Agreement, and related regulatory pronouncements did not provide a basis on which to ascribe to Allergan a culpable mental state under *Schutte*. *Id.* at

[10] The Court's Memorandum Opinion dismissing Relator's suit for a second time was also selected for publication in the Federal Supplement. Therefore, I made several minor, non-substantive corrections. *See* ECF 135-1; *compare* ECF 130 *with* ECF 135. The Order remained the same.

I shall cite to the revised version of the Memorandum Opinion, docketed at ECF 135. In addition, I refer to ECF 135 as the Memorandum Opinion of July 23, 2024, although it was not docketed until October 22, 2024.

651. Nor did the Court find that Sheldon had alleged scienter based on the various documents presented regarding the company's own understanding of the Rebate Statute and the Rebate Agreement. *Id.* at 651–54. In sum, the Court determined that Relator had failed to allege that defendant acted with the requisite scienter. *Id.* at 654.

Turning to the question of falsity, the District Court concluded that "there is considerable ambiguity in the definitions of 'Best Price' contained in the materials that have been brought to the Court's attention." *Id.* at 656. Accordingly, the Court determined that defendant "did not act in violation of the Rebate Statute," because the "Rebate Statute, as interpreted, does not affirmatively establish that Forest was required to aggregate price concessions to different entities in the distribution chain." *Id.* Therefore, I was of the view that Allergan's "failure to aggregate price concessions to different entities in the chain of distribution did not render false its price reports to the government." *Id.* at 657.

In sum, the District Court concluded that the Relator failed to plead the existence of scienter or falsity. In view of those rulings, the Court did not address Allergan's alternative argument for dismissal under Fed. R. Civ. P. 9(b). *Id.* at 658.

Relator noted another appeal to the Fourth Circuit. ECF 132. In a two-to-one decision issued in March 2026, the Fourth Circuit reversed and remanded. *Sheldon VII*, 170 F.4th 227. The Fourth Circuit stated, in part: "Under the FCA, the scienter standard is a subjective one that focuses on the defendant's thoughts and beliefs. Ambiguities in the law are therefore not dispositive." *Id.* at 241 (citation omitted). Nevertheless, the Court recognized the "complexity of the Medicaid statute" and also observed that "the requirements for the Best Price calculation are 'less than perfectly clear.'" *Id.* at 242 (quoting *Schutte*, 598 U.S. at 752).

Applying "the subjective standard," the Fourth Circuit said that "'ambiguity' in the language of a statute 'does not preclude [a company] from having learned [the statute's] correct meaning—or, at least, becoming aware of a substantial likelihood of the terms' correct meaning.'" *Sheldon VII,* 170 F.4th at 241 (quoting *Schutte,* 598 U.S. at 753) (alterations in *Sheldon VII*). The Court also stated: "Companies should not be held liable for making honest mistakes in interpreting ambiguous statutory language." *Sheldon VII,* 170 F.4th at 242. But, it added: "*Schutte* counsels . . . that a company cannot exploit such ambiguities by relying on an objectively reasonable interpretation if the company is subjectively aware of the risk that such an interpretation is incorrect." *Id.* (citing *Schutte*, 598 U.S. at 753–54). Indeed, the Court's majority said: "The subjective scienter standard prevents wrongdoers from taking advantage of arguable ambiguity in a statute to exploit the public fisc for private gain." *Sheldon VII,* 170 F.4th at 245.

With respect to the sufficiency of Sheldon's pleading, the Fourth Circuit said: "To survive a motion to dismiss, Sheldon need only have plausibly alleged facts to support an inference that Forest possessed such a scienter." *Id.* at 243. And, said the Court, *id.*: "We find that Sheldon has done so." Indeed, the Court made clear: "The allegations contained in Sheldon's amended complaint ably allege what is required." *Id.* at 244.

In particular, the Court determined that Sheldon plausibly alleged that Allergan "was subjectively aware of a substantial risk that CMS interpreted the Rebate Statute to require drug manufacturers to aggregate rebates and other discounts provided to multiple entities on the same drug in reporting Best Price." *Id.* at 243. Further, Sheldon plausibly alleged that defendant "acted with reckless disregard under the FCA scienter requirement in continuing to report its Best Price pursuant to its own interpretation." *Id.*

Regarding the issue of statutory ambiguity, the Fourth Circuit explained that although "the ambiguity of a statute may be a defense to scienter," it is not "generally appropriate to consider such defenses at the motion to dismiss stage . . . unless the plaintiff fails to allege facts beyond the plain text of the statute to support an inference of the requisite scienter." *Id.* at 245. But, said the Court, "[t]hat is not the case here." *Id.* The Fourth Circuit concluded that plaintiff had cleared the pleading hurdle for scienter. *Id.*

The Court then turned to the issue of falsity, "a distinct element of an FCA claim." *Id.* It recognized that "ambiguity in a statute is not a defense to the falsity of the claim." *Id.* Explaining that "falsity is an objective inquiry," *id.* (citation omitted), the Court stated, *id.*: "When considering whether a plaintiff sufficiently alleges the element of falsity, the district court must determine whether the claims were objectively false by interpreting the relevant statute. Because the district court has yet to reach this issue, we remand for consideration in the first instance.[]"

In its conclusion, the Fourth Circuit provided the following summation, *id.*:

> The subjective scienter standard prevents wrongdoers from taking advantage of arguable ambiguity in a statute to exploit the public fisc for private gain. Sheldon adequately alleged that his former employer Forest acted with reckless disregard when it reported its Best Prices without aggregating rebates and other discounts after becoming aware that CMS interpreted the Rebate Statute to require such aggregation. These allegations suffice to withstand [defendant's] motion to dismiss.

The mandate issued on April 22, 2026. ECF 142. On that date, I asked counsel to submit a joint status report, including a proposed schedule to govern the case. ECF 143; *see United States v. Montgomery*, 262 F.3d 233, 239 (4th Cir. 2001) ("'A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals.'") (quoting *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996)).

The parties subsequently submitted a joint status report, presenting opposing positions as to how the case should proceed. ECF 147. Relator argued that the case should proceed to

discovery. *Id.* at 1. In contrast, Allergan sought to file a third motion to dismiss. *Id.* at 5.[11] Allergan argued, in part, that "the Fourth Circuit's recent opinion remanded specifically for 'the district court [to] determine whether the claims were objectively false by interpreting the relevant statute.'" *Id.* (citing *Sheldon VII*, 170 F.4th at 245) (alteration in ECF 147).

In particular, Allergan contended that "this Court must now decide the purely legal question of what the Rebate Statute actually requires—because if discount aggregation is *not* required, Allergan's pricing submissions could not have been false and Relator's Amended Complaint must be dismissed." ECF 147 at 6. Allergan also sought to pursue the "outstanding" argument that Relator failed to plead fraud with the requisite particularity required under Fed. R. Civ. P. 9(b). *Id.* at 11.

Upon review of the parties' positions, I issued an Order on May 7, 2026 (ECF 148), declining to entertain a third motion to dismiss. I also asked counsel to confer regarding a proposed scheduling order so as to begin discovery in this case. *See id.* The Court entered a Scheduling Order on July 23, 2026 (ECF 162), and the parties advised that they have "started discovery[.]" ECF 151 at 1; *see also* ECF 154 at 2; ECF 155 at 2.

In the interim, pursuant to Fed. R. Civ. P. 54(b), defendant asked the Court to reconsider its Order of May 7, 2026 (ECF 150), in which the Court declined to entertain a third motion to dismiss. Allergan argued that this Court's decision to proceed with discovery "was both clearly erroneous and manifestly unjust[.]" ECF 150-1 at 3. Moreover, defendant represented that the third motion to dismiss would be "limited to arguing that the Amended Complaint [Dkt. 16] fails

[11] As noted, this Court previously ruled on two motions to dismiss filed by the defendant. *See* ECF 86; ECF 87; ECF 92, *i.e.*, *Sheldon I*, 499 F. Supp. 3d 184, decided in 2020; ECF 130; ECF 131; ECF 135, *i.e.*, *Sheldon VII*, 754 F. Supp. 3d 615, decided in 2024.

to (i) allege falsity as a matter of law; and (ii) adhere to Federal Rule of Civil Procedure 9(b)." ECF 150 at 1.

In particular, defendant contended that the Fourth Circuit "directed this Court to determine as a matter of law whether Relator's argument that 'the Medicaid Rebate Statute obligates a manufacturer to report stacked discounts to multiple entities' is correct." ECF 150-1 at 3 (quoting *Sheldon VII*, 170 F.4th at 245 n.9); *see* ECF 150-1 at 7. According to defendant, "the correct course is to decide the statute's meaning—and to evaluate Relator's compliance with Rule 9(b)—before permitting discovery." ECF 150-1 at 3. Defendant asserted: "Deferring the statutory interpretation question to the summary judgment stage is not a fair substitute, as a Rule 56 motion tests the sufficiency of a plaintiff's claim based on the facts developed in discovery, not the sufficiency of her allegations." *Id.* at 6.

Allergan added that it would be manifestly unjust for it to be forced to undertake discovery at this juncture. *Id.* Defendant asserted: "Motions to dismiss are particularly important in the False Claims Act ('FCA') context, so that a party is not required to face potentially punitive liability without first having a court determine that the claims against it are legally viable and do not represent an improper fishing expedition." *Id.* at 3. Further, defendant argued: "Permitting Allergan to file a renewed motion to dismiss would . . . promote judicial economy and have substantial benefits for the many entities that could otherwise be dragged into wide-ranging discovery." *Id.* at 7.

In a Memorandum Opinion and Order dated June 29, 2026 (ECF 157; ECF 158; *Sheldon VIII*, 2026 WL 1868781), I denied defendant's motion to reconsider my ruling (*i.e.*, ECF 150), in which I declined to consider a third motion to dismiss as to whether the Relator adequately

pleaded falsity and satisfied Rule 9(b).[12] The Court reasoned that "a third motion to dismiss would unduly delay and prolong this case." *Sheldon VIII*, 2026 WL 1868781, at *12. The Court added, *id.* at *13: "Interpretation of the Rebate Statute at summary judgment will allow the parties to present their arguments, while also allowing the Court to consider all relevant sources that shed light on the meaning of this complex statute, without the evidentiary constraints referenced by the Fourth Circuit that pertain to the adjudication of a motion to dismiss."

In response, defendant has moved to certify an interlocutory appeal with respect to the Court's Order dated June 29, 2026. ECF 160. Allergan asserts that the Order concerns two controlling questions of law: (1) "Whether the Medicaid Rebate Statute requires a manufacturer, when reporting Best Price, to aggregate discounts provided to different entities" ("Question 1"); and (2) "Whether, in a False Claims Act case that turns on the objective meaning of a federal statute, the district court must decide the threshold question of statutory interpretation as a matter of law before permitting the case to proceed to discovery" ("Question 2"). *Id.* at 1.

## II. Legal Standards

### A.

Under 28 U.S.C. § 1291, the federal courts of appeal "have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." Interlocutory appeals, governed by 28 U.S.C. § 1292, are an exception to the grant of jurisdiction to appellate courts to hear appeals only from "final decisions" of district courts. *Johnson v. Jones*, 515 U.S. 304, 309 (1995); *see Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 626 (D. Md. 2013).

---

[12] I signed both ECF 157 and ECF 158 on June 29, 2026, and ECF 157 was docketed on that date. However, for unknown reasons, the Clerk did not docket the Order (ECF 158) until June 30, 2026.

Section 1292 of 28 U.S.C. is titled "Interlocutory decisions." It "'provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals.'" *Bradley v. Dentalplans.com*, BAH-20-1094, 2024 WL 5158791, at *3 (D. Md. Dec. 18, 2024) (quoting *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 451 (D. Md. 2015)). Section 1292(b) states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [s]he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

As reflected in 28 U.S.C. § 1292(b), "[a] party seeking review of a nonfinal order must first obtain the consent of the trial judge." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978); *see Boyd v. Coventry Health Care Inc.*, 828 F. Supp. 2d 809, 820 (D. Md. 2011). A trial judge may certify an interlocutory order for appeal only if the party seeking the appeal shows that (1) the desired appeal "'involves a controlling question of law'"; (2) "'there is substantial ground for difference of opinion'"; and (3) "'immediate appeal . . . may materially advance the ultimate termination of the litigation.'" *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011) (quoting 28 U.S.C. § 1292(b)) (alteration in *St. Joseph's Ministries*).

Notably, an "interlocutory appeal under § 1292(b) is the exception, not the rule." *Coal. For Equity & Excellence In Maryland Higher Educ. v. Maryland Higher Educ. Comm'n*, CCB–06–2773, 2015 WL 4040425, at *2 (D. Md. June 29, 2015). Indeed, an interlocutory appeal "is intended to be an extraordinary remedy." *United States ex rel. Fitzer v. Allergan, Inc.*, SAG-17-

0668, 2022 WL 9974736, at *1 (D. Md. Oct. 17, 2022). Among other reasons, "piecemeal review" is "avoided," because "one appeal" at the conclusion of the litigation is more efficient. *James v. Jacobson*, 6 F.3d 233, 237 (4th Cir. 1993); *see Clark v. Bank of America, N.A.*, SAG-18-3672, 2020 WL 3868990, at *2 (D. Md. July 9, 2020) ("Interlocutory appeal should not be sought to provide early review of difficult rulings in hard cases."). Accordingly, certification under § 1292(b) is granted "'sparingly,'" and, to that end, the statute's requirements must be "'strictly construed.'" *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)).

In *Johnson*, 515 U.S. at 309, the Supreme Court explained the rationale for circumscribing the use of interlocutory appeals:

> An interlocutory appeal can make it more difficult for trial judges to do their basic job—supervising trial proceedings. It can threaten those proceedings with delay, adding costs and diminishing coherence. It also risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeals that, had the trial simply proceeded, would have turned out to be unnecessary.

The party moving for certification of an interlocutory order "bears the burden of proving that the prospective appeal satisfies each of the statutory prerequisites for certification." *Boyd*, 828 F. Supp. 2d at 820. "Failing to meet even one of the statutory requirements will defeat a litigant's request for an interlocutory appeal." *District of Columbia v. Trump*, 344 F. Supp. 3d 828, 833 (D. Md. 2018).

The Fourth Circuit has recognized that district courts have considerable discretion to determine whether the § 1292(b) criteria are met. *In re Trump*, 958 F.3d 274, 283 (4th Cir. 2020) (en banc) (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 46 (1995)), *vacated sub nom. as moot*, *Trump v. District of Columbia*, 592 U.S. 1233 (2021); *see Feinberg v. T. Rowe Price Grp., Inc.*, JKB-17-0427, 2021 WL 2784614, at *2 (D. Md. July 2, 2021) ("The District of

Maryland has emphasized that "'[t]he decision to certify an interlocutory appeal is firmly in the district court's discretion.'") (citation omitted); *Randolph v. ADT Sec. Servs., Inc.*, DKC-09-1790, 2012 WL 273722, at *5 (D. Md. Jan. 30, 2012) ("The decision to certify an interlocutory appeal is firmly in the district court's discretion."). However, unless "*all* of the statutory criteria are satisfied . . . 'the district court may not and should not certify its order . . . for an immediate appeal under section 1292(b).'" *Butler*, 307 F.R.D. at 452 (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)) (emphasis in *Butler*).

**B.**

As mentioned, the first factor in the analysis concerns a controlling question of law. This is defined as a "'pure question of law,'" that is, "'an abstract legal issue that the court of appeals can decide quickly and cleanly.'" *Michaels*, 848 F.3d at 340 (quoting *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016)).

A pure question of law does not require the appellate court "'to delve beyond the surface of the record in order to determine the facts.'" *Michaels*, 848 F.3d at 341 (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)). In contrast, a question is not a controlling question of law where the appellate court is asked to consider "'whether the district court properly applied settled law to the facts or evidence of a particular case.'" *Michaels,* 848 F.3d at 341 (quoting *McFarlin*, 381 F.3d at 1259); *see also International Refugee Assistance Project ("IRAP") v. Trump*, 404 F. Supp. 3d 946, 950 (D. Md. 2019).

To illustrate, a controlling question of law is a question as to the "'meaning of a statutory or constitutional provision, regulation, or common law doctrine,'" not "'questions of law heavily freighted with the necessity for factual assessment.'" *Butler*, 307 F.R.D. at 452 (citation omitted); *see Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, at *5 (4th Cir. 1989) (table)

("Certainly the kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes."); *Coal. for Equity*, 2015 WL 4040425, at *5 (The "standard . . . generally recited to justify denying interlocutory appeal on a summary judgment ruling" is "a *pure* question of law, something the court of appeals could decide quickly and cleanly without having to study the record.") (emphasis in *Coal. For Equity*) (citation omitted).

A question of law may be controlling "'if interlocutory reversal might save time for the district court, and time and expense for the litigants.'" *Coal. for Equity*, 2015 WL 4040425, at *4 (quoting 16 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, Federal Practice & Procedure § 3930). But, "[a] question of law is not controlling if litigation will 'necessarily continue regardless of how that question [is] decided.'" *LaFleur v. Dollar Tree Stores, Inc.*, Civ. No. 2:12-cv-0363, 2014 WL 2121721, at *2 (E.D. Va. May 20, 2014) (alteration in *LaFleur*) (citation omitted).

Of relevance, the question need only be an issue "fairly included within the certified order." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). Although a court of appeals is not limited to the "particular question formulated by the district court," it may only review questions fairly included in the certified order, not other orders made in the case. *Id.* (citing *United States v. Stanley*, 483 U.S. 669, 677 (1987)). This is because appellate jurisdiction under § 1292(b) applies only to the particular order certified to the court of appeals. *Yamaha Motor Corp.*, 516 U.S. at 205.

The second requirement of § 1292(b) pertains to "substantial ground for difference of opinion." Notably, "[t]he threshold for establishing the 'substantial ground for difference of

opinion' with respect to a 'controlling question of law' required for certification pursuant to § 1292(b) is a high one." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 233 F. Supp. 2d 16, 19–20 (D.D.C. 2002).

For purposes of the second element, courts find substantial grounds for difference of opinion "where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citation omitted)*; see Bush v. Adams*, 629 F. Supp. 2d 468, 475 (E.D. Pa. 2009) (stating that this element is met "when there is genuine doubt or conflicting precedent as to the correct legal standard applied in the orders at issue"). The element is met when "courts, as opposed to parties, disagree on a controlling legal issue." *Randolph*, 2012 WL 273722, at *6.

For example, this requirement may be satisfied when there is a "dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits," or "where a court's challenged decision conflicts with decisions of several other courts." *APCC Servs., Inc. v. Sprint Commc'ns Co.,* 297 F. Supp. 2d 90, 97–98 (D.D.C. 2003). But, "[t]he level of uncertainty required . . . should be adjusted to meet the importance of the question in the context of the specific case." 16 WRIGHT ET AL., Federal Practice & Procedure § 3930.

Of import, lack of unanimity among courts and lack of relevant authority do not suffice. *See Union County v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 647 (8th Cir. 2008); *State of N.C. ex rel. Howes v. W.R. Peele, Sr. Trust*, 889 F. Supp. 849, 852 (E.D.N.C. 1995); *cf. Commonwealth of Va. ex rel. Integra Rec, LLC v. Countrywide Sec. Corp.*, MHL-14-0706, 2015 WL 3540473, at *5 (E.D. Va. June 3, 2015) ("A mere lack of unanimity, or opposing decisions outside of the governing circuit, need not persuade a court that a substantial ground for disagreement exists.")

(citation omitted). Moreover, the "'mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient'" to meet the requirement. *IRAP*, 404 F. Supp. 3d at 950 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)); *see also Lynn*, 953 F. Supp. 2d at 624 (same). "Similarly, a party's disagreement with the decision of the district court, no matter how strong, does not create substantial grounds." *IRAP*, 404 F. Supp. 3d at 950.

In addition, "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion." *Couch*, 611 F.3d at 633 (citing *Bush*, 629 F. Supp. 2d at 475). "In other words, for interlocutory appeals, 'it matters not whether the lower court simply got the law wrong,' but 'whether courts themselves disagree as to what the law is.'" *In re Nichols*, TDC-14-0625, 2014 WL 4094340, at *3 (D. Md. Aug. 15, 2014) (quoting *KPMG Peat Marwick, LLP v. Estate of Nelco, Ltd.*, 250 B.R. 74, 83 (E.D. Va. 2000)).

With respect to the material-advancement prong, certification of an interlocutory appeal is appropriate only "'in exceptional situations in which [doing so] would avoid protracted and expensive litigation.'" *Fannin*, 873 F.2d 1438, 1989 WL 42583, at *2 (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)) (alteration in *Fannin*); *see Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (concluding that an interlocutory appeal would materially advance resolution of litigation where reversal by the appellate court would dismiss one defendant and resolve multiple claims against all defendants, even though it would not resolve the entire case). In deciding whether certification will materially advance the ultimate termination of the litigation, "'a district court should consider whether an immediate appeal would: (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly.'" *Goodman v. Archbishop*

*Curley High Sch., Inc.*, 195 F. Supp. 3d 767, 773 (D. Md. 2016) (quoting *Coal. For Equity,* 2015 WL 4040425, at *6).

This requirement is understood to mean that the resolution of the controlling legal question "would serve to avoid a trial or otherwise substantially shorten the litigation." *Clark Constr. Grp., Inc. v. Allglass Sys., Inc.*, DKC-02-1590, 2005 WL 736606, at *4 (D. Md. Mar. 30, 2005). Material advancement "is more likely to occur at earlier stages in the litigation, when resolving a question on interlocutory appeal can obviate the need for a lengthy or costly discovery process." *Feinberg*, 2021 WL 2784614, at *4; *see also Est. of Giron Alvarez v. Johns Hopkins Univ.*, TDC-15-0950, 2019 WL 1779339, at *2 (D. Md. Apr. 23, 2019) (finding the material advancement requirement satisfied when "expert discovery is ongoing, discovery issues remain, and discovery motions remain to be resolved," and "[g]oing forward, the parties have signaled that extensive pre-trial dispositive motions will be filed").

Courts in this District have declined to grant interlocutory appeals "when a trial would still be required regardless of the outcome of the appeal." *Feinberg*, 2021 WL 2784614, at *4 (declining to grant interlocutory appeal when "an interlocutory appeal—regardless of its substantive outcome—would not materially advance the termination of this case because it would not remove the need for discovery, dispositive motions, or ultimately, a trial"); *see also Clark Constr.*, 2005 WL 736606, at *4 (denying interlocutory appeal when there was a controlling question of law with a substantial ground for difference of opinion, but an appeal would not materially advance the termination of the litigation because "a favorable ruling for Defendants on appeal would not eliminate the need for a trial").

## III. Discussion

As indicated, defendant asks the Court to certify an interlocutory appeal with respect to the Order dated June 29, 2026 (ECF 158), denying Allergan the opportunity to file a third motion to dismiss. *See* ECF 160. Defendant asks the Court "to amend its Order . . . by stating that the Court is 'of the opinion that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this Order may materially advance the ultimate termination of this litigation.'" *Id.* at 1 (citing 28 U.S.C. § 1292(b)).

Allergan contends that both Question 1 and Question 2 meet all three statutory requirements of § 1292(b), asserting: (1) both are controlling questions of law "fairly included" in the Order dated June 29, 2026; (2) there is "'substantial ground for difference of opinion'" as to both questions; and (3) an immediate appeal would "'materially advance the ultimate termination of the litigation.'" ECF 160-1 at 3–4 (citations omitted).

To be sure, this case has a long procedural history, which is a consideration for a potential interlocutory appeal. Allergan seeks to litigate an issue that it previously raised but which was not addressed by this Court, because this Court resolved the motions to dismiss on other grounds. *See* ECF 150; *see also* ECF 72-1 at 19–27; ECF 112-1 at 17–29.

As the procedural summary reflects, the Fourth Circuit has already considered appeals from this Court's disposition of the two motions to dismiss filed by Allergan. In both rulings, I had dismissed the suit. In the first appeal, this Court's dismissal was twice affirmed but was subsequently vacated and remanded. *See Sheldon I*, 499 F. Supp. 3d 184; *Sheldon II*, 24 F.4th 340; *Sheldon III*, 49 F.4th 873; *Sheldon IV*, 143 S. Ct. 2686; *Sheldon V*, ECF 100, ECF 101. The

second dismissal was reversed by a divided panel. *See Sheldon VI*, 754 F. Supp. 3d 615; *Sheldon VII*, 170 F.4th 227.

**A. Question 1**

Question 1 asks: "Whether the Medicaid Rebate Statute requires a manufacturer, when reporting Best Price, to aggregate discounts provided to different entities." ECF 160-1 at 3.

The Fourth Circuit recently left the issue embodied in Question 1 for this Court to resolve in the "first instance." *Sheldon VII*, 170 F.4th at 245 n.9. The Court said, *id.*: "We decline to exercise our discretion to reach this issue and leave this question in the district court's able hands for consideration in the first instance." Of import, the Court did not specify that, *before* undertaking any other action in the case, this Court must first resolve this issue.

Allergan contends that Question 1 satisfies the statutory requirements of 28 U.S.C. § 1292(b). ECF 160-1 at 3–4. Sheldon disagrees. ECF 170.

Beginning with the first requirement of § 1292(b), Allergan argues that Question 1 is a "paradigmatic" question of law because "it asks what [the Rebate Statute] means." ECF 160-1 at 5. Moreover, Allergan maintains that Question 1 is "squarely controlling" because this case "'turns on the objective meaning of'" the Rebate Statute. *Id.* at 6 (quoting *Sheldon VII*, 170 F.4th at 245 n.8). It adds that the question is "purely legal" and does not require discovery, any "credibility determinations," or an "evidentiary record." ECF 160-1 at 5.

According to Allergan, there is no "serious question that Question 1 is fairly included in the Order." *Id.* at 6. Appellate review of an order under § 1292(b), defendant explains, "is not confined to the precise formulation supplied by the district court." *Id.* (citing *Yamaha Motor Corp.*, 516 U.S. at 205). Rather, a certified appeal "may encompass" any "purely legal issues

within the order's scope," such as Question 1. ECF 160-1 at 6 (citing *Hamdi v. Rumsfeld*, 316 F.3d 450, 466 (4th Cir. 2003), *vacated on other grounds*, 542 U.S. 507 (2004)).

This Court has not yet ruled on the substantive issue defendant seeks to litigate by way of a third motion to dismiss. But, defendant posits that the Court's decision not to permit Allergan to file a third motion to dismiss, as reflected in the Order, "'is the functional equivalent of the denial of a Rule 12(b)(6) motion to dismiss.'" ECF 160-1 at 7 (quoting *Whitley v. BP, P.L.C.*, 838 F.3d 523, 526 (5th Cir. 2016)). Allergan reasons that this Court, in declining to consider a third motion to dismiss, "necessarily declined to adopt Allergan's interpretation of the statute, making that question eligible for review as part of the Order." ECF 160-1 at 7. But, Allergan does not provide any legal authority for the proposition that the Court's deferral of a ruling is the equivalent of an adverse ruling on the merits.

As for the second requirement of § 1292(b), Allergan posits that Question 1 is a "'novel and difficult question of first impression'" because "'[judges], as opposed to parties, disagree on a controlling legal issue.'" *Id.* at 11 (quoting *U.S. ex rel. Schnupp v. Blair Pharmacy*, ELH-17-2335, 2025 WL 1331906, at *12 (D. Md. May 7, 2025)) (alteration in ECF 160-1). Allergan points to the Fourth Circuit's decision in this case in 2022, affirming this Court's first dismissal of the case, where two members of a panel of the Fourth Circuit "supported Allergan's view that the statute does not require discount aggregation." ECF 160-1 at 11 (citing *Sheldon II*, 24 F.4th at 352). However, Allergan observes that Judge Wynn dissented, "suggest[ing] disagreement with Allergan's position." ECF 160-1 at 12 (citing *Sheldon II*, 24 F.4th at 373 (Wynn, J., dissenting)). Allergan also cites Judge Keenan's dissent in *Sheldon VII*. ECF 160-1 at 12. She stated that she "would conclude that 'best price' is the single lowest price available from the manufacturer to a single purchaser." *Sheldon VII*, 170 F.4th at 246 (Keenan, J., dissenting).

Given the disagreements among the judges, Allergan argues that there is a substantial ground for a difference of opinion. ECF 160-1 at 11–12.

Last, Allergan argues that an immediate appeal of Question 1 would "materially advance the ultimate termination of this litigation", the third factor of § 1292(b). *Id.* at 12. Defendant reasons that, were the Fourth Circuit to agree with defendant's interpretation of the Rebate Statute, the case would be subject to dismissal and the parties would avoid "the entirety of a complex discovery phase, dispositive motions, and trial." *Id.* at 13.

In the Opposition, the Relator notes at the outset that it would be "peculiar" to send Question 1 back to the Fourth Circuit just a few months "after the Fourth Circuit expressly decided to send this issue to this Court." ECF 170 at 5. Sheldon also emphasizes that "certification under § 1292(b) is granted sparingly and the statute's requirements must be strictly construed." *Id.* at 3 (citing *Ekstrom v. Cong. Bank*, ELH-20-1501, 2021 WL 119000, at *2 (D. Md. Jan. 13, 2021)) (emphasis omitted).

Relator observes, ECF 170 at 3: "Allergan cites no case law, statute, regulation, or rule that allows it to demand and control how and when the Court considers the statutory interpretation question and motion practice . . . ." According to Sheldon, no law supports defendant's position. *Id.* In Sheldon's view, it "is well within the Court's discretion" to defer ruling until dispositive motions are filed, and such a course is "consistent" with the remand. *Id.* at 5; *see id.* at 9.

Moreover, Sheldon contends that Question 1 is not a "pure, abstract legal issue," especially given the appellate history of this case. *Id.* at 5. According to Sheldon, this Court was "well within [its] discretion" to defer addressing the statutory interpretation question until there is "a more fulsome record." *Id.* Therefore, Relator maintains that Question 1 cannot be a controlling question of law and does not satisfy the first prong of § 1292(b). *Id.*

Regarding the second § 1292(b) prong, Sheldon disputes Allergan's reliance on a disagreement between Fourth Circuit judges. *Id.* at 6. Sheldon points out that a lack of unanimity, even among different courts, does not always suffice for an interlocutory appeal, and therefore a lack of unanimity among judges on the same panel in a single case should not suffice. *Id.* (citing *Ekstrom*, 2021 WL 119000, at *5). Further, Sheldon reiterates that "'the threshold for establishing the substantial ground for difference of opinion with respect to a controlling question of law required for certification pursuant to § 1292 is a high one.'" ECF 170 at 6 (quoting *Ekstrom*, 2021 WL 119000, at *3).

In addition, Relator contends that an interlocutory appeal of Question 1 would not materially advance this case. ECF 170 at 7. Sheldon reasons that this case is already in discovery, and an interlocutory appeal would "further delay a case that has been pending for more than twelve years." *Id.*

Undoubtedly, Question 1 presents an important issue. If Allergan was required to aggregate discounts provided to different entities, then it reported an incorrect Best Price calculation to the government. To address the issue, Allergan seeks to litigate the issue by way of a third motion to dismiss. *See* ECF 150-1. Question 1 presents an issue of statutory interpretation, which is primarily a question of law. This Court did not yet tackle the question.

As I see it, Question 1 is not fairly included in the Order. The actual question on appeal is more accurately set forth as follows: Did this Court err or abuse its discretion by deferring its ruling with regard to Question 1?[13]

Allergan correctly posits that the Fourth Circuit "is not confined to the precise formulation supplied by the district court." ECF 160-1 at 6. As defendant suggests, the Fourth Circuit could

[13] This is akin to Question 2, discussed *infra*.

consider issues within the order's "scope." *Id.* But, defendant seems to overlook that the Fourth Circuit could have addressed and resolved the very issue in *Sheldon VII*. Instead, it directed this Court to do so. Given these circumstances, it seems unlikely that the Fourth Circuit would now opt to address the merits of an issue it chose not to decide just a few months ago.

The fact that the Fourth Circuit expressly left Question 1 for this Court to resolve is significant. Also significant is the fact that the Fourth Circuit did not establish a timeline for this Court. In other words, it did not specify when the Court must answer the question. And, it certainly did not require the Court to resolve the issue before allowing the parties to conduct discovery.

Furthermore, the importance of Question 1 does not make it a "controlling question of law" under § 1292(b). The issue must be a pure question of law that "'the court of appeals can decide quickly and cleanly.'" *Michaels*, 848 F.3d at 340 (quoting *Mamani*, 825 F.3d at 1312).

As framed by defendant, Question 1 implicates a novel issue involving stacked rebates and "Best Price." As I stated in my Memorandum Opinion of June 29, 2026, a more fulsome record could assist the Court in analyzing the Rebate Statute in what is a largely untested context. *Sheldon VIII*, 2026 WL 1868781, at *12. Moreover, Question 1 is a "question[] of law heavily freighted with the necessity for factual assessment," *Butler*, 307 F.R.D. at 452, because a better understanding of how Allergan's stacked rebates actually work could aid this Court's task of interpreting the Rebate Statute.[14] Accordingly, it is not a controlling question of law within the meaning of § 1292(b).

---

[14] Allergan filed a Notice of Supplemental Authority (ECF 173), directing the Court to the Fourth Circuit's recent decision in *Piedra v. Blanche*, 188 F.4th 755 (4th Cir. 2026). Allergan cites *Piedra* for the proposition that, in light of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), courts should not analyze factual material when interpreting a statute. *See* ECF 173. *Piedra*, however, does not bar courts from doing so. Rather, it rejected the interpretation of an

The Fourth Circuit observed that this Court took judicial notice of several documents, beyond the amended complaint, in adjudicating Allergan's second motion to dismiss. *See Sheldon VII*, 170 F.4th at 244 n.7. This would generally convert a motion to dismiss into one for summary judgment. If this Court waits to adjudicate this issue at summary judgment, it will have the benefit of considering all relevant sources, and they may shed light on how rebates to different entities for the same drug function in practice. In turn, this could impact how this Court analyzes the Rebate Statute in this particular context.

The Court would still employ "every tool at [its] disposal" to interpret the statute. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Generally, the task of interpreting a statute begins with the statutory text. *Murphy v. Smith*, 583 U.S. 220, 223 (2018) ("As always, we start with the specific statutory language in dispute."); *see Groff v. Dejoy*, 600 U.S. 447, 468 (2023) (stating that "statutory interpretation must 'begi[n] with,' and ultimately heed, what a statute actually says") (citation omitted) (alteration in *Groff*); *Pharmaceutical Coal. for Patient Access v. United States*, 126 F.4th 947, 953 (4th Cir. 2025) ("Statutory interpretation begins with the text of the statute."); *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023) ("As always, an issue of statutory interpretation begins with the text."); *Redeemed Christian Church of God (Victory Temple) Bowie, Md. v. Prince George's Cnty., Md.*, 17 F.4th 497, 508 (4th Cir. 2021) ("When faced with a statutory provision, 'the starting point for any issue of statutory interpretation . . . is the language of the statute itself.'") (quoting *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016)) (alteration in original); *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 356 (4th

immigration statute by the Board of Immigration Appeals. *Piedra*, 188 F.4th at 766. The Board's interpretation created a rule that required courts to consider the "underlying criminal proceedings" in an immigrant's removal proceedings. *Id.* In my view, *Piedra* is too far removed from the proposition for which Allergan cites it.

Cir. 2020) ("'As in all statutory construction cases,' we start with the plain text of the provision.") (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 376 (2013)); accord *McAdams v. Robinson*, 26 F.4th 149, 156 (4th Cir. 2022); *United States v. Bryant*, 949 F.3d 168, 174–75 (4th Cir. 2020); *Othi v. Holder*, 734 F.3d 259, 265 (4th Cir. 2013); *Ignacio v. United States*, 674 F.3d 252, 254 (4th Cir. 2012).

Notably, a statute "means what it says." *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016); *see United States v. Cohen*, 63 F.4th 250, 253 (4th Cir. 2023). When the statutory text is clear, the "'judicial inquiry is complete.'" *Crespo v. Holder*, 631 F.3d 130, 136 (4th Cir. 2011) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). "'[A]bsent ambiguity or a clearly expressed legislative intent to the contrary,'" courts apply the "'plain meaning'" of the statute. *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) (quoting *United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993)); *see United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) ("When interpreting a statute, courts must 'first and foremost strive to implement congressional intent by examining the plain language of the statute.'") (quoting *Abdelshafi*, 592 F.3d at 607).

But, statutory interpretation is not necessarily a simple undertaking. Indeed, statutes can be complicated and difficult to decipher. In general, a court may "not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994); *see Raplee v. United States*, 842 F.3d 328, 332 (4th Cir. 2016) ("If the meaning of the text is plain . . . that meaning controls."). But, if the statute is ambiguous, legislative history may be useful. *Sec'y of Lab., Mine Safety and Health Admin. v. KC Transp., Inc.*, 173 F.4th 294, 311 (D.C. Cir. 2026) (stating that courts do not interpret statutes "'in a vacuum'" and that courts "may consider the text in light of its statutory and legislative history") (citations omitted). Moreover, "the text

and structure" of the statute are not analyzed in "a vacuum. . . . Rather, [a court] must interpret the statute with reference to its history and purpose as well." *Bryant*, 949 F.3d at 174–75 (citing *Abramski v. United States*, 573 U.S. 169, 179 (2014) and *Gundy v. United States*, 588 U.S. 128, 141 (2019)) (alteration added). However, this is not the kind of information that is generally considered in the context of a motion to dismiss.

The facts adduced through discovery may also provide additional information to help explain the manner in which stacked rebates operate. Therefore, a more fulsome factual record, not limited to the face of the pleadings, may well benefit the Court in its analysis.

Allergan disagrees and asserts in reply that "Relator's argument that Question 1 is not a controlling question of law is untenable." ECF 172 at 2. Specifically, Allergan contests Relator's assertion that "'in this particular case,' 'statutory interpretation . . . is not a pure, abstract legal issue.'" *Id.* (quoting ECF 170 at 5) (alteration in ECF 172).

According to defendant, the case of *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, "squarely supports certification." ECF 172 at 3. Allergan explains that, in that case, "the Fourth Circuit rejected a similar argument that a dispositive statutory question was too fact-bound to warrant consideration under Section 1292(b)." *Id.* at 2. In my opinion, Allergan stretches *St. Joseph's Ministries* too far.

In *St. Joseph's Ministries*, 657 F.3d 189, the plaintiff, Kennedy, sued her former employer, Villa St. Catherine, Inc. ("St. Catherine"), alleging religious discrimination and retaliation in violation of Title VII. St. Catherine "immediately moved for summary judgment," *id.* at 191, rather than moving to dismiss. *Id.* at 191 n.4. It argued that it was exempt from Title VII as a religious organization, and appended several documents to support its motion, indicating its religious character. *Id.* The district court agreed that St. Catherine was exempt as to the claim of

religious discrimination. *Id.* at 191. But, the court concluded that Kennedy's harassment and retaliation claims could proceed. *Id.* St. Catherine then moved to certify an interlocutory appeal. *Id.*

Although the plaintiff "opposed St. Catherine's request that the district court certify the order, she did not oppose St. Catherine's petition for permission to appeal" to the Fourth Circuit. *Id.* at 191 n.5. The parties did not challenge certification itself. *Id.* at 195 ("The district court; a panel of this court (comprised of Judge Agee, Judge Motz, and Judge King); two members of this panel; and (as noted above) both parties, agree that we have jurisdiction over this interlocutory appeal."). But, in dissent, Judge King maintained that the order granting the appeal "was improvident." *St. Joseph's Ministries*, 657 F.3d at 198 (King, J., dissenting).

Judge King urged decertification and dismissal of the appeal, so as to "leav[e] the district court to answer the much simpler questions of whether Kennedy has adequately pleaded . . . a Title VII violation." *Id.* at 196. In his view, it was "highly questionable" that plaintiff had adequately pleaded her claims. *Id.* at 199. And, he posited that the appellate court should exercise judicial restraint in ruling on a novel issue with "profound implications." *Id.* at 200.

The panel majority disagreed, stating, in part, that "even the Supreme Court has answered legal questions posed in § 1292(b) orders before the factual development of the record had occurred." *Id.* at 195. Further, and pertinent here, the panel majority noted that "Judge King's approach would also waste judicial resources . . . ." *Id.* at 196. The Court reasoned that "'[r]epetitive hearings, followed by additional appeals, waste judicial resources and place additional burdens on . . . district and appellate judges' while also siphoning those resources from more worthwhile cases." *Id.* (quoting *Doe v. Chao*, 511 F.3d 461, 465–66 (4th Cir. 2007)) (alterations in *St. Joseph's Ministries*).

Of import, the disagreement between Judge King and the majority in *St. Joseph's Ministries* centered on the Fourth Circuit's discretion to hear the appeal. *See St. Joseph's Ministries*, 657 F.3d at 195 ("We are faced with a pure question of law and our resolution of it terminates the case. *It was thus properly within our discretion to permit the appeal*.") (Emphasis added). As the panel majority noted, "[c]ourts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given to them.'" *Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) (first alteration added, second alteration in original). However, the Fourth Circuit did not discuss whether it was within the *district court's* discretion to certify the appeal.

Notably, the Fourth Circuit was satisfied that the facts were undisputed and that the requirements of § 1292(b) were met. *St. Joseph's Ministries*, 657 F.3d at 195. This Court is not satisfied as to the criteria having been met. *St. Joseph's Ministries* does not alter that conclusion.

As discussed, failure to meet even one of the statutory requirements of § 1292(b) is fatal. *Butler*, 307 F.R.D. at 452. As I see it, Question 1 fails at the first hurdle because it is not a "controlling question of law" fairly included in the Order, as required by the first prong of § 1292(b). *Yamaha Motor Corp.*, 516 U.S. at 204–05.

Moving to the second prong, if Question 1 were a controlling question of law fairly included in the Order, I am satisfied that there is a substantial ground for a difference of opinion. The parties disagree over whether disparate views must be between different courts or whether a difference among judges on the same case will suffice. *See* ECF 160-1 at 11; ECF 170 at 5–6. However, this second prong can also be satisfied where, as here, "novel and difficult questions of first impression are presented." *Couch*, 611 F.3d at 633. Although I am unaware of a circuit split as to Question 1, its novelty and difficulty support the conclusion that a substantial ground for

difference of opinion exists. The difference of opinion between Fourth Circuit judges earlier in this case bolsters this conclusion. *See Sheldon II*, 24 F.4th at 352, 373.

Last, Question 1 satisfies the third prong of § 1292(b), but only if resolution of the merits of the question is favorable to the defendant. Sheldon's FCA claim depends on the view that the Rebate Statute requires a manufacturer to aggregate rebates provided to different entities for the same drug. If this Court were to conclude that the Rebate Statute does not contain such a requirement, there is no FCA claim. Such a ruling would materially advance the termination of litigation, either by eliminating the need for a trial altogether or by simplifying the issues in dispute. *Goodman*, 195 F. Supp. 3d at 773. But, if this Court were to agree with plaintiff, then the case would proceed, and a further delay of the case will have ensued.

This case was filed in 2014, and it was unsealed in October 2019. ECF 44. Considerable time has already elapsed since the case was instituted, due to the government's lengthy investigation; the pendency of multiple motions; the time needed by the Court to address the motions; and the ensuing appeals process. An interlocutory appeal would inevitably cause further delay and consume additional judicial resources. *See Johnson*, 515 U.S. at 309 ("[An interlocutory appeal] can threaten . . . proceedings with delay, adding costs and diminishing coherence. It also risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeals that, had the trial simply proceeded, would have turned out to be unnecessary.")

District courts have considerable discretion when assessing the statutory requirements of § 1292(b). *In re Trump*, 958 F.3d at 283. Although Question 1 presents an important issue, and one or two of the three prongs for an interlocutory appeal may be satisfied, the procedural history

of this case decidedly disfavors an interlocutory appeal. Accordingly, the Court declines to certify the Order with regard to Question 1.

**B. Question 2**

Question 2 asks: "Whether, in a False Claims Act case that turns on the objective meaning of a federal statute, the district court must decide the threshold question of statutory interpretation as a matter of law before permitting the case to proceed to discovery." ECF 160-1 at 3. Allergan posits that this question meets the statutory requirements of 28 U.S.C. § 1292(b). *Id.* at 3–4.

Regarding the first factor of § 1292(b), Allergan maintains that Question 2 constitutes a controlling question of law because it "asks who decides what the statute means, when that legal question must be decided, and whether discovery can properly precede resolution of a threshold statutory issue that may dispose of the case." *Id.* at 8.

To support its argument, Allergan cites *Loper Bright*, 603 U.S. 369, claiming that "'*Loper Bright* changed the landscape' around how courts should interpret statutes administered by federal agencies." *Id.* (quoting *United States v. Kokinda*, 146 F.4th 405, 417 (4th Cir. 2025)). Allergan asserts that statutes "'have a single, best meaning'" which is "'necessarily discernable by a court deploying its full interpretative tool kit.'" ECF 160-1 at 8 (quoting *Loper Bright*, 603 U.S. at 400, 409). According to Allergan, post-*Loper Bright*, in an Administrative Procedure Act ("APA") action challenging an agency's interpretation of a statute, "courts are required . . . to decide the statutory interpretation question as a matter of law, without discovery." ECF 160-1 at 8. From that proposition, Allergan extrapolates that in this case, which is not an APA action, the decision to defer an issue of statutory interpretation until after discovery constitutes a question of law "appropriate for Section 1292(b) consideration." ECF 160-1 at 9.

Allergan contends that Question 2 is controlling because "its resolution would render unnecessary 'a grant of discovery [that] opens vast vistas of inquiry, so that immediate appeal may advance ultimate termination of the litigation.'" *Id.* at 9–10 (quoting 16 WRIGHT ET AL., Federal Practice & Procedure § 3931). Allergan cites *In re Text Messaging Antitrust Litigation*, 630 F.3d 622 (7th Cir. 2010), as an example of a case in which a court granted § 1292(b) review in part to avoid "'bulky, burdensome discovery'", if possible. ECF 160-1 at 10 (quoting *In re Text Messaging Antitrust Litigation*, 630 F.3d at 625).

In that case, the court explained that "an appeal seeking a clarifying decision that might head off protracted litigation is within the scope of section 1292(b)." *In re Text Messaging Antitrust Litigation*, 630 F.3d at 627. Allergan reasons that "[t]he same principle applies" to this case, because there is "an important threshold legal question about how a court should evaluate whether a defendant's alleged conduct violates a statute, which is a question of law, not of fact." ECF 160-1 at 10 (internal citation and quotation marks omitted).

Regarding the second § 1292(b) factor, Allergan maintains that Question 2 presents a novel and difficult question of law. *Id.* at 12. It claims that, following *Loper Bright*, "there are significant questions about what it means for 'courts [to] use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity.'" *Id.* (quoting *Loper Bright*, 630 F.3d at 400) (alteration in ECF 160-1). Moreover, Allergan posits that "'the traditional tools of statutory construction' . . . *must*, be applied based on the text alone," without discovery. ECF 160-1 at 12 (citation omitted; emphasis in ECF 160-1). Defendant adds that whether a court may "defer this question so it can rely on facts adduced in discovery" is a "controlling question of law [that] deserves immediate appellate consideration." ECF 160-1 at 12 (alteration added).

Allergan's analysis of the third § 1292(b) factor as to Question 2 mirrors its analysis of Question 1. *See id.* at 12–14. Allergan asserts that the resolution of this question has the potential to avoid substantial costs of discovery, including a set of twenty-eight document requests issued by plaintiff. *Id.* at 14. In its view, the fact that discovery has already begun is immaterial, because "[p]rompt review can . . . still avert the great bulk of the discovery burden" and therefore materially advance the ultimate termination of the litigation. ECF 172 at 7.

In response, Sheldon argues that Question 2 considers "the Court's discretionary decision not to entertain a third round of motion to dismiss briefing," which is not a question of law, much less a controlling one. ECF 170 at 7. Plaintiff posits: "The timing of motion practice is not a legal issue, it is a discretionary issue." *Id.* Under the second prong of § 1292(b), Sheldon argues there cannot be a "substantial grounds for difference of opinion" regarding Question 2 because Allergan fails to cite any conflicting authorities "related to the timing of motion practice and discovery." *Id.* at 8. Last, Relator posits that an interlocutory appeal would not materially advance the case at this stage, given that discovery has already begun and that this Court has already entertained two rounds of motions to dismiss. *Id.*

Question 2 asks whether this Court is required to decide a question of law before permitting discovery. Allergan's desired interlocutory appeal as to Question 2 resembles a mandamus action. There are no merits of a ruling for the Fourth Circuit to review; this Court has deferred ruling on the issues that defendant seeks to present in a third motion to dismiss. So, defendant seeks to compel this Court to rule now, not later. On appeal, the Fourth Circuit would necessarily determine whether this Court erred or abused its discretion by deferring its ruling on the issues for which defendant seeks an immediate resolution. And, potentially, the Fourth Circuit could direct the Court to decide the issue before permitting the parties to conduct discovery.

Notably, "mandamus relief is a drastic remedy and should be used only in extraordinary circumstances." *In re Paul Schultz*, 2026 WL 3169023, at *1 (4th Cir. Oct. 22, 2026) (per curiam); *see also Fed. Commc'ns Comm'n v. Brown*, 610 U.S. ___, 2026 WL 3080098, at *2 (Oct. 14, 2026) (per curiam); *Cheney v. United States Dist. Court*, 542 U.S. 367, 380 (2004); *In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018); *Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 52 (4th Cir. 2016). "Courts provide mandamus relief only when (1) petitioner 'ha[s] no other adequate means to attain the relief [it] desires'; (2) petitioner has shown a 'clear and indisputable' right to the requested relief; and (3) the court deems the writ 'appropriate under the circumstances.'" *In re Murphy-Brown, LLC*, 907 F.3d at 795 (quoting *Cheney*, 542 U.S. at 380–81).

In my view, an interlocutory appeal as to Question 2 would be inappropriate for several reasons. Allergan spends much of its briefing as to Question 2 explaining how statutes should be interpreted post-*Loper Bright* and why it makes sense to resolve questions of statutory interpretation before discovery commences. But, Allergan does not explain why the district court "must decide the threshold question of statutory interpretation as a matter of law before permitting the case to proceed to discovery," as Question 2 asks. ECF 160-1 at 3. Allergan cites no cases that support this proposition. Critically, *Loper Bright* explains how a federal court should interpret statutes, not when they should do so.

Allergan attempts to refute this point by explaining that the question "is whether the Court may treat factual discovery as bearing on the objective meaning of a federal statute and defer that threshold legal determination on that basis." ECF 172 at 5. But, that is an entirely different question. As I have previously acknowledged, district courts regularly consider purely legal questions on summary judgment. *See Snell v. Reid*, 2024 WL 2815061, at *1 (4th Cir. June 3,

2024) (per curiam) ("The district court was empowered to resolve these purely legal questions on summary judgment."); *Ray v. Roane*, 948 F.3d 222, 228 (4th Cir. 2020) ("[T]he purely legal question . . . is always capable of decision at the summary judgment stage or on a motion to dismiss[.]") (cleaned up); *Carter v. Shires*, 56 F.3d 60, 1995 WL 318604, at *2 (4th Cir. 1995) (per curiam) (table) ("As a pure question of law, the . . . issue is appropriately resolved at the summary judgment stage.").

As I see it, Question 2 does not present a controlling question of law. Allergan is correct that Question 2 considers the bounds of the district court's discretion, and that "'the definition of th[e] bounds [of a court's discretion] is a question of law.'" ECF 172 at 5 (quoting *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999)). However, Allergan cites no authority to support the conclusion that the Court's discretion is in any way limited as it relates to when the district court must decide a legal question. *Cherry*, cited by Allergan, involved the discretion of a district court to deny an award of costs under Fed. R. Civ. P. 54(d), which are usually awarded to the prevailing party "as a matter of course." *Cherry*, 186 F.3d at 446. The bounds of that discretion have been delineated by the courts. *See id.* Allergan cites no similar bounds concerning Question 2, and *Loper Bright* is flatly unhelpful.

Question 2 also fails under the substantial ground prong for many of the same reasons already discussed. Allergan may be correct that *Loper Bright* introduces difficult questions as to what it means for a court to "use every tool" at its "disposal to determine the best reading of the statute." *Loper Bright*, 630 F.3d at 400. But, that is not what Question 2 asks, as I discussed above. How a federal court should analyze a statute is entirely different from when a federal court should analyze a statute. And, what the district court can consider when deciding that

question of law is an entirely different inquiry that is not currently before this Court. Allergan otherwise cites no conflicting authorities on this issue.

Resolution of Question 2 could ultimately obviate the need for discovery. Plaintiff's point that discovery is underway is well taken, but courts have previously found the material advancement prong to be satisfied even when that is the situation. *See Est. of Giron Alvarez*, 2019 WL 1779339, at *2.

## IV. Conclusion

As stated, this Court is faced with an unusual procedural posture. This case has been pending for more than twelve years. In that time, the Court has twice considered, at length, two motions to dismiss filed by defendant. Twice, this Court dismissed this case, and twice, this case has come back to life. After a lengthy appeals process, which includes review by both the Fourth Circuit on several occasions, as well as by the Supreme Court, this case was remanded to this Court for further proceedings.

Because this Court declined to consider at this time issues that the defendant seeks to present in a third motion to dismiss, Allergan seeks an interlocutory appeal. In its view, this could lead to the termination of this litigation.

The Fourth Circuit had the opportunity to decide the meaning of the Rebate Statute in *Sheldon VII*. Instead, it opted to leave that question to this Court. In doing so, it did not specify, procedurally, when the Court must rule, but it certainly did not require the Court to rule before permitting discovery.

An interlocutory appeal "is intended to be an extraordinary remedy." *Fitzer*, 2022 WL 9974736, at *1. An extraordinary remedy is not warranted here, where defendant will have

another opportunity to raise its statutory interpretation questions on summary judgment. Therefore, I shall deny the Motion.

An Order follows.

Date: November 3, 2026

/s/
Ellen Lipton Hollander
United States District Judge